UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LESLIE JAMES PICKERING,

                          Plaintiff,

    v.

                                         14-CV-330

U.S. DEPARTMENT OF JUSTICE,

                          Defendant.

## SUPPLEMENTAL MEMORANDUM OF LAW ON BEHALF OF THE FEDERAL BUREAU OF INVESTIGATION

## INTRODUCTION

This case concerns requests made by Plaintiff to the Federal Bureau of Investigation ("FBI") and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), both of which are components of the Department of Justice, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  This Supplemental Memorandum of Law is submitted on behalf of the FBI in further support of its motion for summary judgment, pursuant to Fed. R. Civ. P. 56.

## SUMMARY OF PROCEDURAL HISTORY

The Declaration of David Hardy (Dkt. # 29) ("Hardy Dec.") and the accompanying Declaration of Joseph E. Bender, Jr. ("Bender Dec.") provide a complete and full recitation of the facts and procedural history relevant to this motion.  A brief summary is contained below.

**A.      Administrative History of Plaintiff's FOIA Request From January 16, 2014 to January 2, 2018**

By letter dated January 16, 2014, plaintiff submitted a FOIPA request to FBIHQ requesting:

> a complete and thorough search of all filing systems and locations for all records maintained by your agency pertaining to me, including but not limited to files and documents captioned in, or whose captions include my name in the title.  Please search the Central Records System (CRS), Electronic Surveillance Records (ELSUR), and Electronic Case File (ECF).  I specifically request that you conduct a text search of the ECF to identify all potentially responsive main and cross-reference files. This request includes "main" files and "see references," including but not limited to numbered and lettered subfiles, 1A envelopes, enclosures behind files (EBF's), Bulky Exhibits, control files, and "JUNE" files.
>
> In addition to the above, I am interested in receiving copies of records maintained by your agency's Field Offices in Anchorage, Alaska; Phoenix, Arizona; Los Angeles, California; Sacramento, California; San Francisco, California; Denver, Colorado; New Haven, Connecticut; Washington, District of Columbia; North Miami Beach, Florida; Honolulu, Hawaii; Chicago, Illinois; Indianapolis, Indiana; Boston, Massachusetts; Minneapolis, Minnesota; Los Vegas, Nevada; Albuquerque, New Mexico; Albany, New York; Buffalo, New York; New York, New York; Charlotte, North Carolina; Cincinnati, Ohio; Cleveland, Ohio; Portland, Oregon; Philadelphia, Pennsylvania; Pittsburg, Pennsylvania; San Juan, Puerto Rico; Columbia, South Carolina; El Paso, Texas; Salt Lake City, Utah and Seattle, Washington.

Hardy Dec., ¶ 5, Exh. A.

In a letter dated January 31, 2014, the FBI acknowledged receipt of plaintiff's request. The FBI informed Plaintiff it had assigned the request FOIPA Request Number 1251014-000 and was conducting a search of the indices to the Central Records System to locate responsive records.  Hardy Dec., ¶ 6, Exh. B.

By letter dated March 5, 2014, Plaintiff filed an appeal with the Department of Justice ("DOJ") Office of Information Policy ("OIP").  Hardy Dec., ¶ 7, Exh. C.  In a letter dated

2

March 28, 2014, OIP acknowledged receipt of plaintiff's appeal and assigned it appeal number AP-2014-02203. Hardy Dec., ¶ 8, Exh. D. By letter dated April 18, 2014, OIP advised plaintiff that since no adverse determination had yet been made by the FBI, there was no action to consider on appeal. Hardy Dec., ¶ 9, Exh. E. OIP advised Plaintiff the FOIA authorizes requesters to file a lawsuit when an agency takes longer than the statutory time period to respond. Hardy Dec., ¶ 9, Exh. E.

Per Court Scheduling Order filed October, 16, 2014, the Court ordered the FBI to release non-exempt documents responsive to Plaintiff's FOIA request through rolling production every 120 days commencing on November 30, 2014. Dkt. # 17. By letter dated October 28, 2014, Plaintiff provided privacy waivers, in the form of Certification of Identity forms (DOJ-361), for multiple third-party individuals. Hardy Dec., ¶ 11, Exh. F. By letter dated November 26, 2014, pursuant to court order, the FBI provided Plaintiff with a processing status update. The FBI also informed Plaintiff it was reprocessing records already processed, prior to receipt of Plaintiff's privacy waivers. Hardy Dec., ¶ 12, Exh. G. By letter dated March 30, 2015, pursuant to court order, the FBI provided Plaintiff with a processing status update. Hardy Dec., ¶ 13, Exh. H.

By letter dated July 30, 2015, the FBI made an interim release of records to Plaintiff. Hardy Dec., ¶ 14, Exh. I. The FBI advised it reviewed 554 pages of records and it was releasing 375 pages of records in full or in part. Hardy Dec., ¶ 14, Exh. I. The FBI withheld information pursuant to FOIA Exemptions (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Hardy Dec., ¶ 14, Exh. I. Additionally, the FBI informed Plaintiff it located cross-references wherein responsive material was located in files concerning another individual, organization, event, activity, or the like. Hardy Dec., ¶ 14, Exh. I. Within these documents,

the FBI only processed pages responsive to Plaintiff's subject and any pages providing context. Furthermore, the FBI informed Plaintiff two documents potentially responsive to his request could not be located.  Hardy Dec., ¶ 14, Exh. I.   The FBI advised Plaintiff he could appeal the FBI's determination by filing an administrative appeal with OIP within sixty (60) days. Hardy Dec., ¶ 14, Exh. I.

By letter dated November 30, 2015, pursuant to court order, the FBI provided Plaintiff with a processing status update.  Hardy Dec., ¶ 15, Exh. J.

By letter dated March 30, 2016, the FBI made an interim release of records to Plaintiff. Hardy Dec., ¶ 16, Exh. K.  The FBI advised it reviewed 601 pages of records and it was releasing 268 pages of records in full or part.  Hardy Dec., ¶ 16, Exh. K.  The FBI withheld information pursuant to FOIA Exemptions (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Hardy Dec., ¶ 16, Exh. K.  Additionally, the FBI informed Plaintiff it located cross-references wherein responsive material was located in files concerning another individual, organization, event, activity, or the like.  Hardy Dec., ¶ 16, Exh. K.  Within these documents, the FBI only processed pages responsive to Plaintiff's subject and any pages providing context. Hardy Dec., ¶ 16, Exh. K. The FBI advised Plaintiff he could appeal the FBI's determination by filing an administrative appeal with OIP within sixty (60) days.  Hardy Dec., ¶ 16, Exh. K.

By letter dated July 30, 2016, pursuant to court order, the FBI provided Plaintiff with a processing status update.  Hardy Dec., ¶ 17, Exh. L.  By letter dated November 30, 2016, pursuant to court order, the FBI provided Plaintiff with a processing status update.  Hardy Dec., ¶ 18, Exh. M.  By letter dated March 30, 2017, pursuant to court order, the FBI provided Plaintiff with a processing status update.  Hardy Dec., ¶ 19, Exh. N.  By letter dated July 28,

4

2017, pursuant to court order, the FBI provided Plaintiff with a processing status update. Hardy Dec., ¶ 20, Exh. O.  By letter dated November 30, 2017, pursuant to court order, the FBI provided Plaintiff with a processing status update.  Hardy Dec., ¶ 21, Exh. P.

By letter dated January 2, 2018, pursuant to court order, the FBI provided Plaintiff the final processing status update.  Hardy Dec., ¶ 22, Exh. Q.   The FBI informed Plaintiff it completed processing and all additional responsive material was exempt pursuant to FOIA Exemption (b)(7)(A), which pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings.  Hardy Dec., ¶ 22, Exh. Q.

**B.      Summary Judgment Motions in April and May 2018**

On April 27, 2018, the FBI moved for summary judgment.  Dkt. # 27-30.  On May 31, 2018, Plaintiff opposed the FBI's motion and he also moved for summary judgment.  Dkt. # 33-38.

**C.      Stay of Proceedings from August 2018 to January 2023**

Following the filing of the FBI's motion for summary judgment, the FBI determined that FOIA Exemption (b)(7)(A), previously asserted to protect pending investigative files, had lapsed.  Bender. Dec. ¶ 5.  The FBI then conducted a segregability review.  Bender. Dec. ¶ 5. That review revealed approximately thirteen thousand pages which could be processed in response to Plaintiff's request. Bender. Dec. ¶ 5.

Upon being alerted to this information by the FBI, undersigned counsel notified Plaintiff's counsel and the Court of same at a conference on August 6, 2018.  Dkt. #  41-42. At the conference, the Court stayed briefing on the pending motions for summary judgment for a period of 15 months and required the parties to file a status report by November 6, 2019.

Dkt. # 42.  The status report indicated that the FBI was processing the additional tranche of documents and requested a follow-up conference in November 2020.  Dkt. # 43.  At a status conference on November 10, 2020, the Court directed the Government to file a status report within 30 days.  Dkt. # 46.  On December 11, 2020, the Government filed a status report proposing a summary judgment deadline of September 30, 2021.  Dkt. # 47.  The FBI subsequently filed four motions for extension of the dispositive motion deadline.  Dkt. # 49-59.  On January 30, 2023, the Court set the current dispositive motion deadline of March 17, 2023.  Dkt. # 59.

**D.**    **Administrative History of Plaintiff's FOIA Request From September 28, 2018 to October 31, 2022**

After determining that FOIA Exemption (b)(7)(A) had lapsed, the FBI subsequently made twenty-nine additional releases to Plaintiff from September 28, 2018 to October 31, 2022.  Bender. Dec. ¶ 5.

<u>**ARGUMENT**</u>

<u>**Standard of Review**</u>

Under FOIA, "every federal agency is required . . . to make its records 'promptly available to any person' upon receipt of a reasonably articulated request."  <u>Kuzma v. U.S. Dep't of Justice</u>, No. 12-CV-807S, 2014 WL 4829315, at *2 (W.D.N.Y. Sept. 29, 2014) (quoting <u>Phillips v. Immigration & Customs Enforcement</u>, 385 F. Supp. 2d 296, 301 (S.D.N.Y. 2005) and 5 U.S.C. § 552(a)(3)).  "The FOIA embodies Congress's desire that an open government allow for 'an informed citizenry to hold the governors accountable to the governed.'"  <u>Kuzma</u>, 2014 WL 4829315, at * 2 (quoting <u>Grand Cent. P'ship, Inc. v. Cuomo</u>, 166 F.3d 473, 478 (2d Cir. 1999); <u>Phillips</u>, 385 F. Supp. at 301 ("FOIA reflects a strong Congressional policy of requiring full public disclosure of documents and records maintained

6

by federal agencies."). "To that end, the FOIA requires the fullest possible public disclosure of government-kept records yet at the same time maintains the confidentiality of sensitive information based on narrowly tailored exemptions intended to protect certain interests." Kuzma, 2014 WL 4829315, at * 2.

"Federal courts are required to conduct de novo review of an agency's decision to withhold requested records under the FOIA." Kuzma, 2014 WL 4829315, at * 2 (citing Massey v. FBI, 3 F.3d 620, 622 (2d Cir. 1993)). "The preferred method of doing so is by summary judgment." Kuzma, 2014 WL 4829315, at * 2 (citing Fox News Network, LLC v. U.S. Dep't of the Treasury, 739 F. Supp. 2d 515, 532 (S.D.N.Y. 2010); Jones-Edwards v. Appeal Bd. of NSA, 352 F. Supp. 2d 420, 423 (S.D.N.Y. 2005)).

In a FOIA case, a plaintiff is entitled to summary judgment "when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." New York Times Co. v. U.S. Dep't of Defense, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007). A federal agency is entitled to summary judgment "when it has thoroughly searched for responsive records and has articulated reasonably detailed explanations why any withheld documents fall within an exemption." Kuzma, 2014 WL 4829315, at * 2 (citing Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994); Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 69 (2d Cir. 2009)). "To carry its burden, the defending agency may rely on a *Vaughn* index, which consists of 'affidavits to the court that describe with reasonable specificity the nature of the documents at issue and the justification for nondisclosure; the description provided in the affidavits must show that the information logically falls within the claimed exemption.'" Kuzma, 2014 WL 4829315, at * 2 (quoting Lesar v. United States

Dep't of Justice, 636 F.2d 472, 481 (D.C. Cir. 1980); Halpern v. Fed. Bureau of Investigation, 181 F.3d 279, 291 (2d Cir. 1999) (citing Lesar).

The Vaughn index has three functions: "(1) it forces the government to analyze carefully any material withheld, (2) it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and (3) it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court." Kuzma, 2014 WL 4829315, at * 2 (quoting Halpern, 181 F.3d at 291; Keys v. United States Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987)). "Agency affidavits, including the *Vaughn* index, are presumed to have been made in good faith." Kuzma, 2014 WL 4829315, at * 2 (citing Carney, 19 F.3d at 812). "This presumption is not rebutted by bare allegations or speculative claims that additional documents exist." Kuzma, 2014 WL 4829315, at * 2 (citing Grand Cent., 166 F.3d at 489). "If the agency's submissions are facially adequate, summary judgment is warranted unless the plaintiff can make a showing of bad faith on the part of the agency or present evidence that the exemptions claimed by the agency should not apply." Garcia v. United States Dep't of Justice, Office of Info. & Privacy, 181 F.Supp.2d 356, 366 (S.D.N.Y. 2002) (citing Carney, 19 F.3d at 812); Center for Constitutional Rights v. C.I.A., 765 F.3d 161, 166 (2d Cir. 2014).

## POINT I

### ARGUMENTS MADE IN THE 2018 BRIEF ARE INCORPORATED BY REFERENCE

The FBI incorporates herein by reference the arguments it made in support of summary judgment in its April 2018 motion concerning the documents processed from 2014 to 2018 and described in the Hardy Declaration. The remainder of this brief will address the documents processed from 2018 to 2023 as described in the Bender Declaration.

## POINT II

## PLAINTIFF HAS NO RIGHT OF ACCESS TO THE SOUGHT AFTER RECORDS UNDER THE PRIVACY ACT

The Privacy Act, 5 U.S.C. § 552a, generally provides individuals a right of access to records about them maintained in government files, unless the records are part of a system of records exempted from individual access. 5 U.S.C. § 552a(d). Exemption (j)(2) of the Privacy Act exempts from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals ...." 5 U.S.C. § 552a(j)(2). Under the Privacy Act, agencies may promulgate rules to exempt systems of records from various provisions of the Act, to include individual requests for access or amendment. 5 U.S.C. § 552a(d), (j) and (k). Pursuant to that statutory authority, DOJ promulgated regulations exempting certain systems of records from individual access under the Privacy Act, including FBI law enforcement investigative records. 28 C.F.R. § 16.96(a)(1); Majid v. Fed. Bureau of Investigation, No. CV 16-731 (GK), 2017 WL 1167199, at *4 (D.D.C. Mar. 28, 2017). In order to qualify for this exemption, the allegedly exempt document must be a law enforcement record. Doe v. F.B.I., 936 F.2d 1346, 1353-1354 (D.C. Cir. 1991). Once that initial burden is met by the agency, the burden shifts to the plaintiff "to produce evidence that the asserted law enforcement rationale for an investigation was in fact pretextual." Id. at 1354.

Per the Bender Declaration, in response to Plaintiff's requests, the FBI processed records from numerous investigative files. These investigative files were compiled per the FBI's primary law enforcement mission to investigative violations of federal law. Specifically, the files were compiled in the course of the FBI's investigation of Plaintiff. As relevant here,

9

these files are maintained in the FBI's Central Records System, a system of records specifically exempt from the access provisions of the Privacy Act as noted above.  In other words, the Plaintiff has no individual right of access to these investigative records about himself under the Privacy Act.  Bender Dec. ¶¶ 23-24.

<u>**POINT III**</u>

<u>**THE FBI IS ENTITLED TO SUMMARY JUDGMENT AS**</u>
<u>**ITS SEARCH WAS ADEQUATE**</u>

In response to FOIA requests, federal agencies are obligated to conduct searches that are reasonably calculated to locate all responsive records.  <u>Weisberg v. U.S. Dep't of Justice</u>, 705 F.2d 1344, 1351 (D.C. Cir. 1983) ("Weisberg I"); <u>Kennedy v. U.S. Department of Justice</u>, 03-CV-6077, 2004 WL 2284691, at *2 (W.D.N.Y. 2004); <u>Pub. Investors Arbitration Bar Ass'n v. U.S. Sec. & Exch. Comm'n</u>, No. 11-2285, 2013 WL 987769 at *4 (D.D.C. Mar. 14, 2013). Under this reasonableness standard, an agency does not need to search every record system. <u>Oglesby v. U.S. Dep't of the Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990) ("There is no requirement that an agency search every record system.").  Nor is the adequacy of a search judged by its results.  <u>Iturralde v. Comptroller of the Currency</u>, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."); <u>Meeropol v. Meese</u>, 790 F.2d 942, 952-53 (D.C. Cir. 1986) ("[A] search is not unreasonable simply because it fails to produce all relevant material[.]"); <u>Mobley v. CIA</u>, 924 F.Supp.2d 24, 36 (D.D.C. 2013).  Rather, an agency's search is measured against a standard of reasonableness applied to the specific FOIA request, i.e., did the agency search all places where responsive records were reasonably likely to be found.  <u>Weisberg v. U.S. Dep't of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("Weisberg II"); <u>Scaff-Martinez v. DEA</u>, 770 F. Supp. 2d 17, 21-22

(D.D.C. 2011).  Accordingly, an agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." Wilbur v. CIA, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam).

To justify its search for purposes of summary judgment, an agency needs only to provide affidavits explaining the scope and method of the search in reasonable detail.  Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) ("[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA.").  Those agency affidavits are entitled to a presumption of good faith.  SafeCard Servs., Inc., v. Sec. Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991); Mobley, 2013 WL 452932 at *33 ("The only situation in which the Court would withhold a presumption of good faith as to a sworn agency declaration is if the plaintiffs were able to present contrary evidence of bad faith.").  Once the agency has shown "that it conducted 'reasonably calculated' searches, the burden is on [plaintiff] to identify specific additional places the agency should now search."  Hodge v. FBI, 703 F.3d 575, 580 (D.C. Cir. 2013).  In short, where affidavits establish that an agency's FOIA search was reasonably calculated to find all responsive records, the agency has satisfied its obligation to conduct an adequate search.  Perry, 684 F.2d at 127; Cooper v. Stewart, 763 F. Supp. 2d 137, 141-42 (D.D.C. 2011), aff'd, 2011 WL 6758484 (D.C.Cir. Dec 15, 2011); see also Fed. R. Civ. P. 56(c).

As stated in the accompanying Bender Declaration, the FBI's search for responsive records was comprehensive, reasonably calculated to locate responsive documents, and did, in fact, result in the processing of a total of 14,007 responsive pages.  Bender Dec. ¶ 21.  Of

these pages, 574 were released in full, 2,856 were released in part, and 10,577 were withheld in full.  Bender Dec. ¶ 158.  Therefore, the FBI is entitled to summary judgment with respect to the adequacy of its search.

### POINT IV

### THE FBI'S FOIA RESPONSE WAS PROPER AND PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED

FOIA generally requires disclosure of government records unless the requested information falls within an enumerated FOIA exemption.   5 U.S.C. § 552(b).  Notwithstanding the FOIA's "liberal congressional purpose," the statutory exemptions must be given "meaningful reach and application."  John Doe Agency v. John Doe Corp., 493 U.S. 146, 152, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989).  "Requiring an agency to disclose exempt information is not authorized."  Minier v. CIA, 88 F.3d 796, 803 (9th Cir. 1996) (quoting Spurlock v. FBI, 69 F.3d 1010, 1016 (9th Cir. 1995)).  Agency decisions to withhold information under the FOIA are reviewed de novo, and the agency bears the burden of proving its claim for exemption.  5 U.S.C. § 552(a)(4)(B); Kennedy, 2004 WL 2284691, at * 2; A. Michael's Piano. Inc. v. FTC, 18 F.3d 138, 143 (2d Cir. 1994).

### A.    Segregability

FOIA requires that government agencies disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "Non-exempt portions of a record may be withheld only if they are 'inextricably intertwined' with the exempt portions."  Kuzma, 2014 WL 4829315, at * 5 (quoting Inner City Press/Cmty. on the Move v. Bd. of Governors of the Fed. Reserve Sys., 463 F.3d 239, 249 n. 10 (2d Cir. 2006)).  "If an agency determines that non-exempt portions of a record are not segregable, it must justify that determination in detail."  Kuzma, 2014 WL 4829315, at * 5 (citing Mead

Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977)). "In this regard, an agency is entitled to a presumption that it complied with the FOIA's segregability requirements." Kuzma, 2014 WL 4829315, at * 5 (citing Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007)). "A district court 'must make specific findings of segregability regarding the documents to be withheld' before ruling that an asserted FOIA exemption is applicable." Kuzma, 2014 WL 4829315, at * 5 (quoting Sussman at 1116). (100)

Here, following the segregability review, the FBI determined that 574 pages could be released in full without redaction as there was no foreseeable harm to an interest protected by a FOIA exemption. Bender Dec. ¶ 158. The FBI also determined that 2,856 pages could be released in part with redactions per the identified FOIA exemptions herein. Bender Dec. ¶ 158. These pages comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages. Bender Dec. ¶ 158. Lastly, the FBI determined that 10,577 pages were required to be withheld in their entirety. Bender Dec. ¶ 158. Of these 10,577 pages, 8,975 pages were exempt in full pursuant to one or more applicable FOIA Exemptions. Bender Dec. ¶ 158. The FBI determined that all information on these pages was either fully covered by one or more of the cited FOIA exemptions, or determined that any non-exempt information on these pages was so intertwined with exempt material, no information could be reasonably segregated for release. Bender Dec. ¶ 158. Any further segregation of this intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content. Bender Dec. ¶ 158. Additionally, the FBI withheld 305 pages

because they were deemed to be sealed per United States Court order.  Bender Dec. ¶¶ 146, 158. Also, the FBI withheld 1,297 pages because they were duplicates of pages accounted for elsewhere in the FBI's production. Bender Dec. ¶ 158.  It is the FBI's standard practice not to process duplicate pages, as doing so expends finite processing resources with a net result of no additional information being released to requesters.  Bender Dec. ¶ 158.  Accordingly, the Court should find that defendant conducted an appropriate segregability review.

**B.      The FBI's FOIA Response Was Proper Under FOIA Exemption 1**

FOIA Exemption 1, 5 U.S.C. § 552(b)(1), protects records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).  Exemption 1 thus "establishes a specific exemption for defense and foreign policy secrets, and delegates to the President the power to establish the scope of that exemption by executive order."  Military Audit Project v. Casey, 656 F.2d 724, 737 (D.C. Cir. 1981).

To invoke Exemption 1, the agency must provide, with sufficient "detail and specificity," information demonstrating both why the material has been kept secret and why such secrecy is allowed by the terms of an existing Executive Order. Campbell v. Dep't of Justice, 164 F.3d 20, 30 (D.C. Cir. 1998).   The proper procedures in classifying the information must also be followed.  Salisbury v. United States, 690 F.2d 966, 970-73 (D.C. Cir. 1982); Military Audit Project, 656 F.2d at 737-38.  If an agency satisfies these elements, it is entitled to summary judgment.  Carney v. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994); Abbots v. NRC, 766 F.2d 604, 606 (D.C. Cir. 1985).

In order for information to be properly classified, and thus properly withheld from disclosure pursuant to Exemption (b)(1), the information must meet the requirements set forth in Executive Order ("E.O.") 13526 § 1.1 (a): (i) an original classification authority is classifying the information; (ii) the information is owned by, produced by or for, or is under the control of the United States Government; (iii) the information falls within one or more of the categories of information listed in § 1.4 of E.O. 13526; and the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.  Bender Dec. ¶ 32.

Here, the FBI has determined that the information withheld pursuant to Exemption (b)(1) is under the control of the United States Government, is classified, and requires a classification marking at the Secret level since the unauthorized disclosure of this information reasonably could be expected to cause serious damage to national security.  Bender Dec. ¶ 33 (citing See E.O. 13526 § 1.2(a)(2)).  Also, the FBI ensured that the procedural requirements of E.O. 13256 were followed.  Bender Dec. ¶ 33.  The FBI examined the information withheld pursuant to Exemption (b)(1) and determined that all of the substantive, procedural, and administrative requirements set forth above have been satisfied.  Bender Dec. ¶ 34.  As a result, the FBI concluded that the information protected pursuant to Exemption (b)(1) was properly classified, continues to warrant classification at the "Secret" level, and is exempt from disclosure pursuant to E.O. 13526, § 1.4(b) - "foreign government information;" E.O. 13526 § 1.4(c) - "intelligence activities (including covert action), intelligence sources or methods, or cryptology and;" E.O. 13526 § 1.4(d) - "foreign relations or foreign activities."

Bender Dec. ¶¶ 34-50.  Accordingly, the FBI's motion should be granted with respect to FOIA Exemption 1.

**C.     The FBI's FOIA Response Was Proper Under FOIA Exemption 3**

FOIA Exemption 3, 5 U.S.C. § 552(b)(3), protects records that are

> specifically exempted from disclosure by statute . . . if that statute  -- (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).  In reviewing an agency's invocation of Exemption 3, "the Supreme Court [has] engaged in a two-prong review.  First, is the statute in question a statute of exemption as contemplated by exemption 3?  Second, does the withheld material satisfy the criteria of the exemption statute?"  Fitzgibbon v. CIA, 911 F.2d 755, 761-62 (D.C. Cir. 1990).  As the D.C. Circuit has explained, "'Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'"  Fitzgibbon, 911 F.2d at 761-62 (quoting Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd., 830 F.2d 331, 336 (D.C. Cir. 1987)).  "Fed R. Crim P. 6(e) represents such a statute and, thus, documents related to the grand jury process are exempt from disclosure under Exemption 3."  Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy, 181 F. Supp. 2d 356, 378 (S.D.N.Y. 2002)

Here, the FBI asserted Exemption 3 to protect pen register information specifically exempted pursuant to 18 U.S.C. § 3123(d), the Pen Register Act, which protects from disclosure information pertaining to certain court "order(s) authorizing or approving the installation and use of a pen register or a trap and trace device;" and information pertaining

16

to "the existence of the pen register or trap and trace device or the existence of the investigation." Bender Dec. ¶ 52. A pen register is a device that records phone numbers dialed to or from a target telephone. Bender Dec. ¶ 52. The statute mandates that a court order be obtained prior to installing or using a pen register unless the user of the telephone consents to the device. Bender Dec. ¶ 52. Orders for pen registers are sealed unless otherwise ordered by the court. Bender Dec. ¶ 52. Exemption (b)(3) protects the court order in its entirety; the identity of the individual on whom it is placed; the location of the device; information obtained from the device; and any other specifics regarding the pen register/trap and trace device. Bender Dec. ¶ 52. Where documents at issue contain information that, if disclosed, would reveal the existence or use of a pen register or trap and trace device, or reveal the existence of an investigation involving a pen register or trap and trace device, that information is protected from disclosure by Exemption 3. Bender Dec. ¶ 52. As relevant to 5 U.S.C. § 552 (b)(3)(B), the Pen Register Act is a statute enacted before the date of enactment of the OPEN FOIA Act of 2009.

The information withheld from disclosure here consists of the identities and phone numbers of the individuals targeted by the pen registers as well as individuals whose information was collected due to their contact with the targets of the pen registers during the timeframe in which they were being conducted. Bender Dec. ¶ 53. Additionally, contained within withheld records are the location, time and duration of the pen registers, as well as information gathered by the devices. Bender Dec. ¶ 53. Accordingly, since such information is specifically exempted pursuant to 18 U.S.C. § 3123, the FBI properly asserted FOIA Exemption 3 to withhold this information from disclosure. Bender Dec. ¶ 52.

17

In this case, the FBI has also asserted Exemption (b)(3) in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure to withhold federal grand jury information. Bender Dec. ¶ 54. As relevant to 5 U.S.C. § 552(b)(3)(B), Rule 6(e) is a statute enacted before the date of enactment of the OPEN FOIA Act of 2009. Bender Dec. ¶ 54. It is well established that Rule 6(e) embodies a broad, sweeping policy of preserving the secrecy of grand jury material regardless of the substance in which the material is contained. Bender Dec. ¶ 54. Records responsive to Plaintiff's requests detail information about one or more federal grand juries empaneled in relation to the investigations at issue. Bender Dec. ¶ 54. Specifically, the investigative files contain information about the names of recipients of federal grand jury subpoenas; information that identifies specific records subpoenaed by a federal grand jury; and copies of specific records provided to a federal grand jury in response to federal grand jury subpoenas. Bender Dec. ¶ 54. Wherever the FBI protected this information, it found a clear nexus to federal grand jury proceedings on the face of the responsive documents, and any disclosure of this information would clearly violate the secrecy of the grand jury proceedings and could reveal the inner workings of a federal grand jury, which the FBI is precluded from disclosing. Bender Dec. ¶ 54. Thus, the FBI properly withheld this information pursuant to Exemption (b)(3), in conjunction with Rule 6(e).

The FBI also asserted Exemption 3 to withhold information pursuant to Section 102A(i)(1) of the National Security Act of 1947 (NSA), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"). Bender Dec. ¶ 55. This statute provides that the Director of National Intelligence ("DNI") "shall protect from unauthorized disclosure intelligence sources and methods." As relevant to U.S.C. § 552(b)(3)(B), the National Security Act of 1947 was enacted before the date of enactment of the OPEN FOIA

Act of 2009. On its face, this federal statute leaves no discretion to agencies about withholding from the public information about intelligence sources and methods. Bender Dec. ¶ 55. Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(i)(1) is absolute. See CIA v. Sims, 471 U.S. 159 (1985). In order to fulfill its obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC") for the classification of information under applicable laws, Executive Orders, and other Presidential Directives, and for access to and dissemination of intelligence. 50 U.S.C. § 3024(i)(1). Bender Dec. ¶ 56. In implementing this authority, the DNI promulgated Intelligence Community Directive 700, which provides that IC elements shall protect "national intelligence and intelligence sources and methods and activities from unauthorized disclosure." Bender Dec. ¶ 56. The FBI is one of 18 member agencies comprising the IC, and as such must protect intelligence sources and methods. Bender Dec. ¶ 56. Given the plain Congressional mandate to protect the IC's sources and methods of gathering intelligence, the FBI has determined that intelligence sources and methods would be revealed if any of the withheld information is disclosed to Plaintiffs. Bender Dec. ¶¶ 57-58. Therefore, the FBI is prohibited from disclosing such information under 50 U.S.C. § 3024 (i)(1).

The FBI further asserted Exemption (b)(3) to protect information concerning juvenile criminal records, which is specifically exempt pursuant to 18 U.S.C. § 5038, a statute enacted as part of the Juvenile Justice and Delinquency Act of 1974. Bender Dec. ¶ 59. This law protects from disclosure the juvenile's name, date of adjudication, court, offenses, and sentence, along with any notations that the matters were juvenile adjudications. For purposes of this law, a "juvenile" is a person who has not attained his/her eighteenth birthday, or for

the purposes of proceedings and disposition for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday. 18 U.S.C. § 5031. For purposes of this law, "juvenile delinquency" is a violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult. Id. As relevant to 5 U.S.C. § 552(b)(3)(B), the Juvenile Justice and Delinquency Act was originally passed in 1974, see Pub. L. No. 93-415, Title V, § 508, Sept. 7, 1974, 88 Stat. 1137, and has been amended and/or reauthorized numerous times since 1974. The disclosure protections in 18 U.S.C. § 5038 were added in 1974 and are still in effect. This statute clearly requires this type of juvenile related material not be publicly disclosed. Bender Dec. ¶ 59. The law states during the course of any juvenile delinquency proceedings, all information and records relating to the proceeding, which are obtained and/or prepared as the official duty of an employee of the court or an employee of any other government agency, shall not be disclosed directly or indirectly to anyone other than the judge, counsel for the juvenile, and the Government, or others entitled to receive juvenile records pursuant to this Act. Furthermore, throughout and upon completion of the juvenile delinquency proceedings, the records shall be safeguarded from disclosure to unauthorized persons. As relevant here, in the documents at issue, the FBI withheld information pertaining to the arrest, dates, locations and charges, of the juvenile criminal acts of several individuals. Bender Dec. ¶ 59. Pursuant to 18 U.S.C. § 5038, the FBI has properly asserted FOIA Exemption (b)(3) to withhold this information from disclosure, in conjunction with underlying FOIA Exemption (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E).

Lastly, the FBI has asserted Exemption (b)(3) to protect information specifically exempted pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968,

20

18 U.S.C. §§ 2510-2520 ("Title III").  Bender Dec. ¶ 60.  Title III concerns the Court-ordered lawful interception and recording of telephone communications and vocal communications recorded by electronic microphone surveillance by a federal law enforcement agency in criminal investigations. As relevant to 5 U.S.C. § 552 (b)(3)(B), Title III is a statute enacted before the date of enactment of the OPEN FOIA Act of 2009.  Title III specifically exempts from disclosure certain criteria of information concerning Court-ordered interceptions and recordings by federal law enforcement agencies, including the identities of targeted individuals, targeted locations of microphones, the identities of participants in intercepted and/or recorded conversations, and the content of these intercepted and recorded conversations. Essentially, Title III protects from release the "who, what, when, where, and how" of the intercept.  Bender Dec. ¶ 60.  Specifically, the information withheld from disclosure pursuant to the provisions of Title III consists of the identities of the individuals targeted for interception through wiretap, information obtained via the Title III wiretap as well as the target, location, timeframe, and results of other electronic surveillance conducted during the investigation of Federal crimes.  Bender Dec. ¶ 60.  Accordingly, since such information is specifically exempted pursuant to 18 U.S.C. §§ 2510-2520, the FBI properly asserted FOIA Exemption (b)(3) to withhold this information from disclosure.

**D.      The FBI's FOIA Response Was Proper Under FOIA Exemption 4**

Exemption 4 of the FOIA protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). "For Exemption 4 to apply, (1) the information must be a trade secret or commercial or financial in character, (2) must be obtained from a person, and (3) must be privileged or confidential." Intell. Prop. Watch v. U.S. Trade Representative, 134 F. Supp. 3d 726, 743

(S.D.N.Y. 2015) (quoting Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Rsrv. Sys., 463 F.3d 239, 244 (2d Cir. 2006) and 5 U.S.C. § 552(b)(4)) (internal quotation marks omitted). "To determine whether information is confidential for the purposes of Exemption 4, this Circuit has adopted a two-part test formulated by the District of Columbia Circuit in National Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C.Cir.1974)." Inner City Press, 463 F.3d at 244 (citations omitted)). "The test states that information is confidential for the purposes of Exemption 4 if its disclosure would have the effect either: (1) of impairing the government's ability to obtain information—necessary information—in the future, or (2) of causing substantial harm to the competitive position of the person from whom the information was obtained." Id. (citations and internal quotation marks omitted).

Here, in reviewing the records at issue, the FBI located information that originated with private commercial institutions. Bender Dec. ¶ 63. Specifically, the FBI located proprietary and financial information, as well as personal and identifying information pertaining to a portion of the company consumer base. Bender Dec. ¶ 63. The documents at issue were provided in response to a Federal Grand Jury subpoena. Bender Dec. ¶ 63. Along with said documents, the company included a cover sheet, which read, "The information contained in the following message is proprietary and confidential information ... any dissemination, distribution, or copying of this communication is strictly prohibited." Bender Dec. ¶ 63. The FBI relied upon this information, provided by the company which owns the records, in making its determination that the information contained therein indeed was proprietary and financial information and was provided to the FBI under an assurance of privacy, and is exempt pursuant to Exemption 4.

**E.     The FBI's FOIA Response Was Proper Under FOIA Exemption 5**

FOIA § 552(b)(5) exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This exemption has been construed to exempt those documents or information normally privileged in the civil discovery context, including, as is the case within the pending investigative documents at issue, the Attorney-Client Privilege, the Attorney Work Product Privilege and the Deliberative Process Privilege. See e.g., Amnesty Int'l USA v. C.I.A., 728 F. Supp. 2d 479, 519 (S.D.N.Y. 2010).

Here, the FBI asserts the Attorney-Client Privilege to protect confidential communications between FBI and DOJ counsel and FBI employees (their clients), that reflect the seeking and/or providing of legal advice. Bender Dec. ¶ 68. Specifically, FBI personnel were developing a proposal for an investigation. Bender Dec. ¶ 68. It was necessary to seek legal counsel throughout the phases of development of the proposal. Bender Dec. ¶ 68. Discussions regarding the legal parameters of the investigation as well as legal issues that may arise throughout the investigation are topics of conversation between agents and counsel. Bender Dec. ¶ 68. Counsel additionally reviewed and suggested edits to the proposal. Bender Dec. ¶ 68. Agents additionally sought the advice of counsel to develop itinerary for meetings and for assistance in applications for permission to schedule meetings with law enforcement partners. Bender Dec. ¶ 68. The communications between clients and attorneys were made in confidence, were not shared with or circulated to individuals outside the attorney-client relationship, and were made for the purpose of securing legal assistance or advice in relation to government legal positions. Bender Dec. ¶ 68. Release of this information would call into question the FBI's commitment to withhold confidential information shared between agency

clients and attorneys and could dissuade agency attorneys and clients from fully sharing such information and endanger agency attorneys' ability to provide the best possible legal representation of their clients.  Bender Dec. ¶ 68.  Furthermore, it would provide advantage to individuals seeking legal action against the government and/or those targeted for prosecution by the government if details of processes and procedures in the development of investigations were to be made public.  Bender Dec. ¶ 68.  In this instance as well as many others, the particular details of the investigation and those involved are tightly intertwined with the details and discussions of the investigation and development, which would be harmful to personnel whose job it is to work closely with counsel in working out the minute details of law enforcement processes. It would provide information traditionally privileged in a legal context and disrupt the adversarial process of litigation by providing access to information related to the government's potential legal and investigative strategies.  Bender Dec. ¶ 68.  Accordingly, the FBI properly withheld these privileged communications pursuant to Exemption 5.

The FBI also asserts Exemption (b)(5) to protect privileged deliberative materials to protect internal deliberative communications, email communications and deliberative information located within FOIA processing records.  Bender Dec. ¶ 70.  These materials reflect deliberations integral to reaching final agency decisions, or were key to a decision-making process aimed at developing policy/best agency decisions. Bender Dec. ¶ 70.  The deliberative communications and deliberative information located within FOIA processing records are pre-decisional.  Bender Dec. ¶ 70.  Additionally, in compliance with the FOIA Improvement Act of 2016, all of this material was created less than 25 years before the submission of Plaintiff's request.  Bender Dec. ¶ 70.  On the basis of the foregoing, the FBI

specifically asserted Exemption 5 with respect to deliberative communications, draft materials, talking points, and handwritten interview notes.    Bender Dec. ¶¶ 70-71. Accordingly, this information is exempt from disclosure pursuant to FOIA Exemption (b)(5).

**F.     The FBI Has Met the Threshold Requirement Under Exemption 7**

FOIA Exemption 7 exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (A) could reasonably be expected to interfere with enforcement proceedings … (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(A) and (C).  Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes.  Voinche v. F.B.I, 46 F.Supp.2d 26, 30 (D.D.C. 1999).

Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. Bender Dec. ¶ 72.  Under this investigative authority, the responsive records herein were compiled for the following specific law enforcement purpose.  Bender Dec. ¶ 72.  The records at issue were compiled in furtherance of the FBI's investigation of acts of domestic terrorism, racketeering, and other related criminal offenses. Bender Dec. ¶ 73. These documents contain law enforcement techniques, procedures, and guidelines, the details

25

of which are integral to the law enforcement mission of the FBI.   Bender Dec. ¶ 73. Additionally, details of the investigations protected herein, may be tied to other investigations, which are not related to Plaintiff's request at issue.  Bender Dec. ¶ 73.  Thus, these records were compiled for a law enforcement purpose,  squarely fall within the law enforcement duties of the FBI,  and readily meets the threshold requirement of Exemption (b)(7).

### 1. FBI's FOIA Response Was Proper Under FOIA Exemption 7(A)

FOIA Exemption 7(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (A) could reasonably be expected to interfere with enforcement proceedings …."  5 U.S.C. § 552(b)(7)(A).  The burden is on the government to "demonstrate that (1) a law enforcement proceeding is pending or prospective, and (2) release of the information could reasonably be expected to cause some articulable harm to the proceeding." Voinche v. F.B.I, 46 F.Supp.2d 26, 31 (D.D.C. 1999).

Application of this exemption requires: the existence of law enforcement records; a pending or prospective law enforcement proceeding; and a determination that release of the information could reasonably be expected to interfere with the enforcement proceeding. Bender Dec. ¶ 75.  Often, the FBI asserts Exemption 7(A) categorically to withhold a variety of different documents in an investigative file, which the FBI then groups into functional categories and describes in greater detail.  Bender Dec. ¶ 75.  In this case, however, the FBI asserted Exemption 7(A) in a limited fashion to protect matters contained in investigative files that, while responsive to Plaintiff's request and related to investigation of domestic terrorism, do not involve Plaintiff directly, but have some continuing investigative value to the FBI.

26

Bender Dec. ¶ 75.  The release of this information would reveal unknown information concerning pending enforcement procedures, to include the existence of unknown investigations or proceedings.  Bender Dec. ¶ 75.  The FBI determined release of any of this material would alert criminals to otherwise unknown ongoing investigations, provide criminals with information about the government's investigation/enforcement strategies in ongoing matters, allow them predict and potentially thwart these strategies, and/or allow them to discover/tamper with witnesses and/or destroy evidence.  Bender Dec. ¶ 75.  As such, revealing this information could reasonably be expected to interfere with pending enforcement proceedings.  Bender Dec. ¶ 75.  Thus, this information is exempt from disclosure pursuant to FOIA Exemption (b)(7)(A).

> 2.    **The FBI's FOIA Response Was Proper Under FOIA Exemptions 6 and 7(C)**

FOIA Exemption 6, 5 U.S.C. § 552(b)(6), permits the government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute an unwarranted invasion of personal privacy."  The Supreme Court, in U.S. Dept. of State v. Washington Post Co., 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982), held that all information that "applies to a particular individual" satisfies the requirements for protection under Exemption 6.  Id. at 602.  Thus, information that applies to any particular, identifiable individual comes within Exemption 6.

"The next step under Exemption 6 involves identifying the relevant privacy interests in non-disclosure and the public interests in disclosure, and determining 'whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.'"  Reed v. National Labor Relations Board, 927 F.2d 1249, 1251 (D.C. Cir. 1991).  FOIA Exemption 6 requires the courts to balance the right of the public to gain access to government records

against the privacy right of individuals identified in those records.  "The phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information."  Dept. of the Air Force v. Rose, 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); FLRA v. United States Dep't of Veterans Affairs, 958 F.2d 503, 505 (2d Cir. 1992).

FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy."  Where privacy interests are implicated and no public interest is served by the disclosure, Exemption 7(C) may be invoked.  U.S. Dept. of Justice v. Reporters Committee For Freedom of Press, 489 U.S. 749, 775, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).  "[D]isclosure of records containing personal details about private citizens can infringe significant privacy interests."  Reporter's Committee, 489 U.S. at 766.

When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure.  Bender Dec. ¶ 78.  In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue.  Bender Dec. ¶ 78.  When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure.  Bender Dec. ¶ 78.  For purposes of these exemptions, a public interest exists only when information about an individual, their

28

name, or their identifying information would shed light on the FBI's performance of its mission to protect the American People and uphold the constitution of the United States, and its function to: protect the United States from Terrorist attack; protect the United States against foreign intelligence, espionage, and nefarious cyber operations; combat significant criminal cyber activity, public corruption, transnational criminal enterprises, white-collar crime, and violent crime; and protect civil rights.  Bender Dec. ¶ 78.  In each instance wherein information was withheld pursuant to Exemptions 6 and 7(C), in this case, names, social security numbers, driver's license numbers and dates of birth, the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure.  Bender Dec. ¶ 78.

Furthermore, considering privacy concerns are typically obviated once an individual is deceased, when processing FOIPA requests, the FBI takes several steps to ascertain the current life/death status of the individuals whose names are withheld.  Bender Dec. ¶ 79.  The FBI uses the birth date and/or the date of the investigation to determine whether an individual is living or deceased, to the extent either or both of these pieces of information are discernable from the file.  Bender Dec. ¶ 79.  The date of birth is used to apply the judicially-recognized "100-year rule," i.e., if the individual was born more than 100 years ago, the FBI presumes that he or she is dead and the name is released.  Bender Dec. ¶ 79.  The FBI also uses institutional knowledge gained from prior FOIA requests or internal records.  Bender Dec. ¶ 79.  By using institutional knowledge, the FBI can identify with sufficient certainty the life/death status of certain individuals.  Bender Dec. ¶ 79.  If the FBI is unable to determine the life/death status of an individual through the use of these methods, the name of the individual is withheld pursuant to Exemptions 6 and 7(C), when it finds disclosure would constitute an unwarranted invasion of those individuals' privacy should they still be living and

29

no public interest would be served in releasing the names. Bender Dec. ¶ 79. It is also the FBI's policy to release all names of high-ranking FBI officials in policy-making positions, as well as individuals in public positions, as they do not have privacy rights while acting in their official capacity. Bender Dec. ¶ 79. This policy is applied to the individual's position at the time of the document, and not the present. Bender Dec. ¶ 79.

Here, per the Bender Declaration, the FBI properly withheld, pursuant to Exemptions 6 and 7(C), names and identifying information of third parties merely mentioned, names and/or identifying information of third parties of investigative interest, names and identifying information of FBI Special Agents and professional staff, names and identifying information of third parties who provided information, names and identifying information of local law enforcement personnel, names and identifying information of non-FBI, federal government personnel, names of commercial institution personnel, names and identifying data regarding third-party victims, names and identifying data of third parties with criminal records/rap sheets, and names and identifying information of foreign law enforcement personnel. Bender Dec. ¶¶ 80-93. Accordingly, the Court should find that the FBI's designation of these exemptions was proper.

## G.    FBI's FOIA Response Was Proper Under FOIA Exemption 7(D)

FOIA Exemption 7(D) exempts from disclosure:

> [R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

30

5 U.S.C. § 552(b)(7)(D).  Where the requested records concern a criminal investigation conducted by the FBI, the second clause of Exemption 7(D) applies.  Ferguson v. F.B.I., 957 F.2d 1059, 1069 (2d Cir. 1992).  Thus all information furnished by a "confidential source" may be withheld. Id. ("Once it is shown that information was provided by a confidential source, the information itself is protected from disclosure...").  Under Exemption 7(D), "[a] source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes."  United States Dep't of Justice v. Landano, 508 U.S. 165, 174, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993).  Exemption 7(D) ensures that confidential sources are protected in order to prevent harm to them and loss of a source of information.  United Techs. v. NLRB, 777 F.2d 90, 94 (2d Cir.1985).  A source is deemed confidential if he "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."  Landano, 508 U.S. at 172, 113 S.Ct. 2014 (citation and internal quotation marks omitted).

Numerous confidential sources report to the FBI on a regular basis; they provide information under express assurances of confidentiality and are "informants" within the common meaning of the term.  Bender Dec. ¶ 95.  Others are interviewed and/or provide information under implied assurances of confidentiality (i.e., under circumstances from which assurances of confidentiality may be inferred).  Bender Dec. ¶ 95.  In either situation, these sources are considered to be confidential because they furnish information only with the understanding that their identities and the information they provided will not be divulged outside the FBI.  Bender Dec. ¶ 95.  Information provided by these sources is singular in nature, and if released, could reveal their identities.  Bender Dec. ¶ 95.  The FBI has learned

31

through experience that sources assisting, cooperating with, and providing information to the FBI must be free to do so without fear of reprisal. Bender Dec. ¶ 95. The FBI has also learned that sources must be free to furnish information to the FBI with complete candor and without the understandable tendency to hedge or withhold information because of fear that their cooperation with the FBI will later be made public. Bender Dec. ¶ 95. Sources providing information to the FBI should be secure in the knowledge that their assistance and their identities will be held in confidence. Bender Dec. ¶ 95.

The release of a source's identity would forever eliminate that source as a future means of obtaining information. Bender Dec. ¶ 96. In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources. Bender Dec. ¶ 96. Such a result undermines one of the FBI's most important means of collecting information and could thereby severely hamper law enforcement efforts to detect and apprehend individuals engaged in the violation of federal criminal laws. Bender Dec. ¶ 96.

Here, the FBI has withheld, pursuant to FOIA Exemption 7(D), names, identifying data and information provided by individuals under an express assurance of confidentiality, information provided by source symbol numbered informants, confidential source file numbers, confidential source symbol numbers, names, identifying information of, and information provided by local law enforcement, names, identifying information of, and information provided by individuals under implied assurance of confidentiality, names, identifying information of, and information provided by foreign law enforcement personnel under an express assurance of confidentiality, and foreign government agency information under implied assurance of confidentiality. Bender Dec. ¶¶ 97-119. Accordingly, for the

reasons stated in the Bdner Declaration, this Court should find that the FBI's assertion of Exemption 7(D) was appropriate.

**H.    FBI's FOIA Response Was Proper Under FOIA Exemption 7(E)**

Exemption 7(E) protects "records or information compiled for law enforcement purposes," that, if disclosed, "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  Exemption 7(E) "excludes documents from FOIA's disclosure requirement if an agency satisfies two conditions.  Knight First Amend. Inst. at Columbia Univ. v. United States Citizenship & Immigr. Servs., 30 F.4th 318, 327 (2d Cir. 2022).  "First, the agency must show that the records were "compiled for law enforcement purposes."  Knight First Amend. Inst., 30 F.4th at 327 (quoting 5 U.S.C. § 552(b)(7)). "Second, the agency must show that the records either (1) 'would disclose techniques and procedures for law enforcement investigations or prosecutions'; or (2) 'would disclose guidelines for law enforcement investigations or prosecutions' and 'such disclosure could reasonably be expected to risk circumvention of the law.'" Knight First Amend. Inst., 30 F.4th at 327 (quoting 5 U.S.C. § 552(b)(7)(E)).

Exemption (b)(7)(E) has been asserted to protect information from these records, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.  Bender Dec. ¶ 121.  Within the responsive documents, the FBI applied Exemption (b)(7)(E) to non-public investigative techniques and procedures utilized

33

by the FBI to pursue its law enforcement mission, and also to non-public details about techniques and procedures that are otherwise known to the public. Bender Dec. ¶ 122. Specifically, the FBI asserted Exemption 7(E) to protect 14 different categories of information exempted from disclosure under Exemption 7(E). Bender Dec. ¶¶ 123-148. For the reasons stated in the Bender Declaration, the Court should find that Exemption 7(E) was properly asserted.

**POINT V**

**DOCUMENTS SEALED BY COURT ORDER ARE PROTECTED FROM DISCLOSURE**

"It is beyond question that a court may issue orders prohibiting disclosure of documents or information." F.D.I.C. v. Ernst & Ernst, 677 F.2d 230, 232 (2d Cir. 1982) (citing Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978). A federal court's order sealing documents generally prohibits disclosing such documents under FOIA. Hartford v. Chase, 942 F.2d 130, 135 (2d Cir. 1991) (citations omitted).

Here, the FBI withheld responsive records/information pursuant to a court sealing order issued by the United States District Court for the Western District of New York in Case Number 03-MISC CR 13 and 03 MISC CR 14. Bender Dec. ¶ 149. The FBI confirmed through the Public Access to Court Electronic Records (PACER) system that the records/information are/is currently sealed, to include the application for the order and the order itself. Bender Dec. ¶ 149. The FBI has no discretion to release the records/information. Bender Dec. ¶ 149. Accordingly, the FBI withheld responsive records/information it determined to be subject to the court's sealing order as referenced in the exemption index. Bender Dec. ¶ 149. Although the FBI is prohibited from disclosing the contents of the records, the FBI has determined that should the sealing order be lifted during the pendency of this

litigation, the following exemptions apply: (b)(3), (b)(6), (b)(7)(c), (b)(7)(e).  Bender Dec. ¶ 149.

**POINT VI**

**THE FBI HAS COMPLIED WITH FOIA'S FORESEEABLE HARM STANDARD**

The FOIA Improvement Act of 2016 generally adopted the foreseeable harm standard and made it statutory, advising that agencies shall withhold information under the FOIA only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law. Accordingly, the FBI's analysis of records responsive under the FOIA is a two-part process.  Bender Dec. ¶ 157.  First, the FBI determines whether a record (or a portion of a record) is exempt pursuant to one or more FOIA exemptions.  Bender Dec. ¶ 157.  Second, if the record (or portion thereof) is exempt pursuant to one or more FOIA exemptions, the FBI then considers whether foreseeable harm would result from disclosure of the record (or portion thereof).  Bender Dec. ¶ 157.  In each of the withheld records at issue here (or portions of withheld records), the FBI conducted this two-part analysis and only withheld records (or portions of records) where it determined the withheld record (or portion) met both of these criteria.  Bender Dec. ¶ 157.

**POINT VII**

**THE FBI'S *GLOMAR* RESPONSE**

An agency's decision to neither confirm nor deny the existence of responsive records is "called a 'Glomar response,' taking its name from the Hughes Glomar Explorer, a ship built (we now know) to recover a sunken Soviet submarine, but disguised as a private vessel for mining manganese nodules from the ocean floor."  Bassiouni v. CIA, 392 F.3d 244, 246 (7th Cir. 2004).  A Glomar response is appropriate where, as here, confirming or denying

35

whether responsive records exist would itself cause harm implicated by the FOIA's exemptions. <u>Wilner v. National Sec. Agency</u>, 592 F.3d 60 (2d Cir. 2009) (endorsing validity of a Glomar response); <u>Bassiouni</u>, 392 F.3d at 246 ("Every appellate court to address the issue has held that the FOIA permits the [agency] to make a 'Glomar response' when it fears that inferences ... or selective disclosure could reveal classified sources or methods of obtaining foreign intelligence."); <u>Minier</u>, 88 F.3d at 800 ("[A] government agency may issue a 'Glomar Response,' that is, refuse to confirm or deny the existence of certain records, if the FOIA exemption would itself preclude the acknowledgment of such documents."); <u>Gardels v. CIA</u>, 689 F.2d 1100, 1103 (D.C. Cir. 1982) ("[A]n agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception.").

The FBI relies on a Glomar response to FOIPA requests when acknowledging the existence or non-existence of certain categories of responsive records would result in harm to an interest protected by one or more FOIA exemptions. Bender Dec. ¶ 159. To be credible and effective, the FBI must assert a Glomar response regardless of whether responsive records exist (i.e., including when the FBI does not possess responsive records). Bender Dec. ¶ 159. If the FBI invoked a Glomar response only when it possesses responsive records, the Glomar response would be interpreted as an admission that responsive records exist. Bender Dec. ¶ 159. This is especially important because the FBI serves dual functions as the country's main internal intelligence agency and a federal law enforcement agency. Bender Dec. ¶ 159.

To the extent a request for records on organization may implicate classified or unclassified intelligence records and acknowledging the existence or non-existence of such records would harm an interest protected by the FOIA, a Glomar response pursuant to

Exemptions 1 and/or 3, in conjunction with the National Security Act of 1947 [5 U.S.C. §§ 552(b)(1), (b)(3) and/or 50 U.S.C. § 3024(i)(1)], as applicable, is asserted.  Bender Dec. ¶ 160.

To the extent a request for records implicates unacknowledged records concerning an individual, the FBI also asserts the above Glomars pursuant to Exemptions 1 and 3, in conjunction with the National Security Act of 1947 [5 U.S.C. §§ 552(b)(1), (b)(3) and/or 50 U.S.C. § 3024(i)(1)], as applicable. Bender Dec. ¶ 161.  The FBI also asserts several other Glomar responses to requests on individuals.  Bender Dec. ¶ 161. First, pursuant to Exemption 3, in conjunction with 18 U.S.C. § 3521(b)(1)(G), the FBI can neither confirm nor deny the existence of records which could identify a participant in the Witness Security Program.  Bender Dec. ¶ 161.  Second, pursuant to Exemption 7I the FBI can neither confirm nor deny the existence of an individual's name on a watch list.  Bender Dec. ¶ 161. Finally, pursuant to Exemptions 7(D), 7(E), and 7(F), the FBI can neither confirm nor deny the existence of unacknowledged records or information concerning the use of confidential human sources in the context of a specific investigation.  Bender Dec. ¶ 161.

As previously noted, to be credible and effective, the FBI must assert a Glomar response regardless of whether responsive records exist (i.e., including when the FBI does not possess responsive records).  Bender Dec. ¶ 162.  If the FBI invoked a Glomar response only when it possesses responsive records, the Glomar response would be interpreted as an admission that responsive records exist.  Bender Dec. ¶ 162. The FBI includes an addendum with each response letter which informs the requester of the FBI's standard Glomar position as to certain types of records, and further advises that the inclusion of the standard addendum is not an indication that records do or do not exist.  Bender Dec. ¶ 162. Consistent with this process, the FBI incorporates by reference the standard justification for these Glomar

responses as an exhibit to the FBI's public declarations, whether such records do or do not exist.  Bender Dec. ¶ 162.

## **CONCLUSION**

Defendant's motion for summary judgment should be granted and plaintiff's complaint should be dismissed in its entirety with prejudice.

DATED:  Buffalo, New York, March 17, 2023

TRINI E. ROSS
United States Attorney


BY:    s/MICHAEL S. CERRONE
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5851
michael.cerrone@usdoj.gov