UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LESLIE JAMES PICKERING,                                        REPORT
                                                                                and
                                        Plaintiff,             RECOMMENDATION
                        v.
                                                               14-CV-330RJA(LGF)
U.S. DEPARTMENT OF JUSTICE,

                                        Defendant.
_____

APPEARANCES:          HISCOCK & BARCLAY LLP
                      Attorneys for Plaintiff
                      JOSEPH M. FINNERTY, of Counsel
                      1100 M&T Center
                      Three Fountain Plaza
                      Buffalo, New York  14203-1486

                      MICHAEL KUZMA, ESQ.
                      Attorney for Plaintiff
                      1893 Clinton Street
                      Buffalo, New York  14206

                      TRINI E. ROSS
                      UNITED STATES ATTORNEY
                      Attorney for Defendant
                      MICHAEL S. CERRONE
                      Assistant United States Attorney, of Counsel
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York  14202

## **JURISDICTION**

On July 2, 2014, this case was referred to the undersigned by Hon. Richard J.

Arcara for pretrial matters including preparation of a report and recommendation on

dispositive motions.  The matter is presently before the court on motions for summary

judgment filed by Defendant on April 27, 2018 (Dkts. 23 and 27), and Plaintiff on May

31, 2018 (Dkt. 33), as well as on supplemental motions for summary judgment filed by Defendant on March 17, 2023 (Dkts. 62 and 63), and Plaintiff on May 8, 2023 (Dkt. 67).

## BACKGROUND

Plaintiff Leslie James Pickering ("Plaintiff" or "Pickering"), commenced this action pursuant to the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552 *et seq*., on May 1, 2014, seeking injunctive and other relief, including the disclosure and release of agency records pertaining to Plaintiff and withheld by Defendant United States Department of Justice ("DOJ" or "Defendant"), and its components Federal Bureau of Investigation ("FBI"), and Bureau of Alcohol, Tobacco and Firearms ("ATF"), responsive to FOIA requests made by Plaintiff.  The information Plaintiff seeks includes copies of all records pertaining to himself.  Defendant filed its answer on July 2, 2014 (Dkt. 6) ("Answer").  In the October 16, 2014 Scheduling Order ("SO") (Dkt. 17) ("First SO"), ATF was directed both to release non-exempt documents responsive to Plaintiff's FOIA Request and to file the relevant *Vaughn* Index[1] for the documents withheld either in full or in part by December 31, 2014.  First SO ¶¶ 2-3.  The FBI was directed both to release non-exempt documents responsive to Plaintiff's FBI FOIA request through rolling production every 120 days commencing November 30, 2014, with the final release of non-exempt documents by December 31, 2017, First SO ¶ 4, and the relevant *Vaughn* Index was also to be filed by December 31, 2017.  *Id*. ¶ 5.  Dispositive

---

[1] The "*Vaughn* Index" refers to an index prepared by the agency upon whom a FOIA request is made setting forth all materials otherwise responsive to the FOIA request but which the agency withholds as exempt from disclosure as well as the exemptions asserted as justifying the withholdings.  *See Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977 (1974) (requiring government agency, in responding to FOIA request, prepare a list of documents withheld as exempt, either in full or in part, and furnish detailed justification for the asserted exemptions).

motions were to be filed by February 28, 2018.  *Id.* ¶ 6.  On February 3, 2015, ATF filed a *Vaughn* Index relative to Plaintiff's ATF FOIA request.  (Dkt. 18) ("ATF's *Vaughn* Index").  On December 27, 2017, FBI filed a Vaughn Index relative to Plaintiff's FBI FOIA Request (Dkt. 20) ("FBI's Initial *Vaughn* Index").  Each of the *Vaughn* Indices lists the documents and Bates-stamped page numbers of information located by each agency responsive to Plaintiff's respective FOIA request, as well as the specific FOIA Exemption asserted for withholding information either in full or in part.

At Defendant's request, on February 8, 2018, the deadline for filing dispositive motions was extended to April 30, 2018.  Dkt. 22.  On April 28, 2018, DOJ filed a motion for summary judgment on behalf of ATF (Dkt. 23) ("ATF's Motion"), supported by the Memorandum of Law on Behalf of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (Dkt. 24) ("ATF's Memorandum"), Statement of Undisputed Facts (Dkt. 25) ("ATF's Statement of Facts"); and the Declaration of Peter J. Chisholm, Acting Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives with exhibits A through I (Dkt. 26) ("Chisholm Declaration").[2]  DOJ also filed on April 28, 2018, a motion for summary judgment on behalf of FBI (Dkt. 27) ("FBI's Motion"), supported by the Memorandum of Law on Behalf of the Federal Bureau of Investigation (Dkt. 28) ("FBI's Memorandum"), the Declaration of David M. Hardy (Dkt. 29) ("Hardy Declaration"), attaching a volume of exhibits A through Q (Dkt. 29-1) ("Hardy Dec. Exh(s). __"), and the Statement of Undisputed Facts (Dkt. 30) ("FBI's Statement of Facts").  On May 31, 2018, Plaintiff, in responding to Defendants' Motions, filed a motion for summary judgment (Dkt. 33) ("Plaintiff's Motion"), along with the

---

[2] The Chisholm Declaration and the attached exhibits are filed under seal, and on May 31, 2018, were re-filed in redacted form (Dkt. 32), pursuant to the court's direction.  *See* May 9, 2018 E-Filing Notification.

Memorandum of Law in Support of Motion for Summary Judgment (Dkt. 34) ("Plaintiff's Memorandum"),[3] attaching exhibit A (Dkt. 34-1) ("Plaintiff's Exh. A"), Plaintiff's Statement of Material, Undisputed Facts and Response to ATF's and FBI's Statement of Undisputed Facts Pursuant to Local Rule 56 (Dkt. 35) ("Plaintiff's Statement of Facts"), the Affidavit of Adam Federman (Dkt. 36) ("Federman Affidavit"), the Affidavit of Michael Kuzma[, Esq.][4] (Dkt. 37) ("Kuzma Affidavit"), and the Affidavit of Leslie James Pickering (Dkt. 38) ("Pickering Affidavit"), attaching exhibit A (Dkt. 38-1) ("Pickering Affidavit Exh. A").

Because the FBI was still processing documents responsive to Plaintiff's FOIA Request, summary judgment motions then pending were held in abeyance until all responsive documents had been produced and a supplemental *Vaughn* Index filed as to any further responsive documents that were either released in part ("RIP") or withheld in full ("WIF").  After several extensions of time, jointly or unopposed by the parties, a scheduling order filed January 30, 2023 (Dkt. 59), set March 17, 2023 as the final date to file such supplemental *Vaughn* Index as well as any further dispositive motions.

Accordingly, on March 17, 2023, Defendant filed a supplemental motion for summary judgment on behalf of the FBI (Dkt. 62) ("FBI's Supplemental Motion"), attaching the Declaration of Joseph E. Bender, Jr. (Dkt. 62-1) ("Bender Declaration"), a volume of exhibits A through KK (Dkt. 62-2) ("FBI's Supplemental Exhibits"), a supplemental Declaration of Joseph E. Bender, Jr. (Dkt. 62-3) ("Supplemental Bender Declaration"), the Supplemental Statement of Undisputed Facts (Dkt. 62-4) ("FBI's

---

[3] Plaintiff's Memorandum contains both arguments in opposition to Defendants' Motions, as well as in support of Plaintiff's Motion.
[4] Unless otherwise indicated, all bracketed material has been added.

Supplemental Facts"), and the Supplemental Memorandum of Law on Behalf of the Federal Bureau of Investigation (Dkt. 62-5) ("FBI's Supplemental Memorandum").  The FBI's Supplemental Motion incorporates the arguments raised in the FBI's Motion, thereby rendering the FBI's Motion moot.  The FBI's Supplemental *Vaughn* Index is filed as FBI's Supplemental Exhibit EE (Dkt. 62-2 at 142-647), and lists the documents and Bates-stamped page numbers of information the FBI located responsive to Plaintiff's FBI FOIA Request, as well as the specific FOIA Exemptions asserted for withholding information either in full or in part.  Defendant also filed on March 17, 2023, a supplemental motion for summary judgment on behalf of ATF (Dkt. 63) ("ATF's Supplemental Motion"), but does not request further relief nor did ATF file any papers in support; rather, Defendant merely advises of its intent to file further papers in support of ATF's Motion.  A text order entered March 17, 2023 (Dkt. 64), set April 17, 2023 as the deadline for Plaintiff's response to Defendant's summary judgment motions, with any replies to be filed by May 23, 2023.  By text order entered April 7, 2023 (Dkt. 66), Plaintiff's motion to respond was extended by to May 8, 2023, with replies due by May 23, 2023.

On May 8, 2023, Plaintiff filed a supplemental motion for summary judgment (Dkt. 67) ("Plaintiff's Supplemental Motion"), attaching Plaintiff's Response to Defendant's Supplemental Statement of Undisputed Facts (Dkt. 67-1) ("Plaintiff's Supplemental Motion"), the Second Affidavit of Leslie James Pickering (Dkt. 67-2) ("Plaintiff's Supplemental Affidavit"), the Declaration of Michael Kuzma (Dkt. 67-3) ("Kuzma Supplemental Declaration"), and Plaintiff's Supplemental Memorandum of Law in Support of His Motion for Summary Judgment (Dkt. 67-4) ("Plaintiff's Supplemental

Memorandum").  A text order entered May 17, 2023 (Dkt. 69), extended the deadline for replies to July 21, 2023, and on that date, Defendant filed the Reply Memorandum of Law (Dkt. 70) ("Defendant's Reply"), attaching the Second Declaration of Joseph E. Bender, Jr. (Dkt. 70-1) ("Second Bender Declaration"), attaching exhibits A through ____ ("Second Bender Dec. Exh(s). ____"), and the Supplemental Declaration of Adam C. Siple, Chief, Information and Privacy Government Division, Bureau of Alcohol, Tobacco, Firearms and Explosives (Dkt. 70-2) ("Siple Declaration").  Second Bender Dec. Exh. C is an updated *Vaughn* index which includes some information missing from the original *Vaughn* Index.  (Dkt. 70-1 at 38-548) ("FBI's *Vaughn* Index").[5]  Oral argument was deemed unnecessary.

Based on the following, ATF's Motion should be GRANTED in part and DENIED in part; FBI's Motion should be DISMISSED as MOOT; Plaintiff's Motion should be GRANTED in part and DENIED in part; ATF's Supplemental Motion should be DISMISSED as MOOT; FBI's Supplemental Motion should be GRANTED in part, DENIED in part, and DISMISSED as MOOT in part; Plaintiff's Supplemental Motion should be GRANTED in part, DENIED in part, and DISMISSED as MOOT in part.

## **FACTS**[6]

Plaintiff Leslie James Pickering ("Plaintiff" or "Pickering"), and one Nathaniel J. Buckley ("Buckley") are proprietors of Burning Books, a book store ("the book store") located in Buffalo, New York ("Buffalo"), Complaint ¶ 3, Pickering Affidavit ¶ 10, which Plaintiff describes as "specializing in social justice struggles and state repression."

---

[5] The FBI's *Vaughn* Index is comprised of several parts which accompanied the respective interim releases of documents responsive to Plaintiff's FBI FOIA Request.
[6] Taken from the pleadings and motion papers filed in this action.

Pickering Affidavit ¶ 2.  Plaintiff asserts he "has a long, documented history of free speech activity revolving around environmental and social justice issues."  Complaint ¶ 3.  Plaintiff maintains that because of his involvement in First Amendment protected activities, for more than 20 years he has been the target of more than three dozen investigations by the Federal Bureau of Investigation ("FBI"), and other unidentified state law enforcement organizations.  Plaintiff particularly references a federal eco-terrorism conspiracy investigation based on profiling and "false testimony presented by two informants with extensive mental health histories."  Pickering Affidavit ¶ 3. ("conspiracy investigation").  Plaintiff identifies the informants as Amy Upham ("Upham") and Selena K. Lloyd ("Lloyd") (together, "the informants"), who were tenants in an apartment located above the bookstore from April through November 2011.  *Id*. ¶¶ 9-10. The FBI assertedly closed the conspiracy investigation in 2014 to preserve Plaintiff's civil liberties.  *Id*.  This action pertains to Plaintiff's attempts to obtain documents pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 ("§ 552 __"), relating to the conspiracy investigation which Plaintiff maintains will assist Plaintiff with his books and lectures and increase the public's awareness of how the FBI handles investigations into political dissidents.  Pickering Affidavit ¶ 7.

**ATF FOIA Request**

By letter dated August 9, 2013 and received by ATF Disclosure Division on August 16, 2013, Plaintiff, pursuant to pursuant to FOIA, requested from the ATF copies of all records pertaining to himself.  ("ATF FOIA Request").[7]  Included with the ATF FOIA Request was the required Certification of Identity, FORM DOJ-361 ("DOJ-361

---

[7] Chisholm Declaration at 12-13.

form"), signed by Plaintiff authorizing the ATF to release information about himself to his attorney, Michael Kuzma, Esq. ("Kuzma").  On October 18, 2013, Stephanie M. Boucher, Chief, Disclosure Division, ATF ("Boucher"), acknowledged receipt of the ATF FOIA Request advising the request was assigned number 13-1413.  By letter dated October 22, 2013, Boucher advised Plaintiff the records requested in the ATF FOIA Request were exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A).

By letter dated November 14, 2013, Kuzma, acting on Plaintiff's behalf, filed with the DOJ, Office of Information Policy ("OIP"), an administrative appeal, the receipt of which was acknowledged in a letter by Priscilla Jones (Jones), Supervisory Administrative Specialist, OIP, dated December 5, 2013, advising the appeal was assigned number AP-2014-00734.  By letter dated January 24, 2014, Sean R. O'Neill, Chief, Administrative Appeals Staff, OIP, advised Plaintiff the ATF's decision to withhold the documents Plaintiff requested in the ATF FOIA Request was affirmed.

Following Plaintiff's commencement of the instant action, on December 23, 2014, ATF located and processed 187 pages of documents to determine if they were responsive to Plaintiff's ATF FOIA Request.  Of the 187 pages, 62 pages were released in full ("RIF") to Plaintiff, 66 pages were released in part ("RIP"), and 59 pages were determined to be non-responsive to the ATF FOIA Request and not released. Audiotapes were also located but the voices on the audiotapes were too intertwined to be segregated and the audiotapes were withheld in full ("WIF"), pursuant to FOIA exemptions.

By letter dated February 5, 2015, Kuzma stated ATF redacted or withheld the names of certain individuals, including Elaine Dale Close ("Close"), Jeffrey Michael

Luers ("Luers"), Daniel Gerard McGowan ("McGowan"), and Craig Scott Rosebraugh ("Rosebraugh"), for which individuals Kuzma provided original DOJ-361 forms.  Kuzma also provided a copy of an obituary for one Bruce Harlan Clark ("Clark"), and requested the ATF release information pertaining to these five additional individuals.  By letter to Kuzma dated March 31, 2015, the ATF's Disclosure Division acknowledged Clark's obituary, and explained that the DOJ-361 forms were properly completed as to Close and Rosebraugh, but not as to Luers and McGowan.  Based on Clark's obituary and the properly completed DOJ-361 forms for Close and Rosebraugh, an additional page was RIF, some redactions from the 66 pages previously RIP were removed, and the other 59 responsive pages remained WIF.  In total, Defendant released pursuant to the ATF FOIA Request 63 pages RIF and 66 pages RIP, and 58 pages were WIF ("ATF FOIA Response").

**FBI FOIA Request**

By letter dated January 16, 2014, Plaintiff, pursuant to FOIA § 552, requested from the FBI copies of all records related to himself.  ("FBI FOIA Request").[8]  On January 31, 2014, David M. Hardy ("Hardy"), Section Chief, Record/Information Dissemination Section, Records Management Division, FBI, acknowledged receipt of the FBI FOIA Request and advised it was being processed at FBI Headquarters and assigned Freedom of Information/Privacy Act ("FOIPA")[9] Request Number 1251014-000.

---

[8] Hardy Dec. Exh. A (Dkt. 29-1 at 1-4).
[9] Because requests are generally made pursuant to both FOIA and the Privacy Act, the term "FOIPA" is often used to refer to such requests.

By letter dated March 5, 2014, Plaintiff advised OIP that Plaintiff was treating as a denial the FBI's failure to produce records responsive to the FBI FOIA Request within the twenty days set forth by 5 U.S.C. §§ 552(a)(6)(A)(i), and 552(a)(6)(C)(i), and filed an administrative appeal.  By letter dated March 28, 2014, Jones advised Plaintiff the administrative appeal dated March 5, 2014 was received March 20, 2014, and assigned number AP-2014-02203.  By letter dated April 18, 2014, Anne D. Work, Senior Counsel, Administrative Appeals Staff, OIP ("Work"), informed that DOJ regulations provide for an administrative appeal to OIP only after there has been an adverse determination by the relevant DOJ component, *i.e.*, the FBI.  Because the FBI had yet to render an adverse determination to Plaintiff's FBI FOIA Request, there was no action for the OIP to consider on appeal and Plaintiff has thus exhausted administrative remedies for his FBI FOIA Request.

This court's October 16, 2014 scheduling order (Dkt. 17), orders the FBI to release non-exempt documents responsive to the FBI FOIA Request through rolling production every 120 days commencing November 30, 2014.  By letter dated October 28, 2014, Plaintiff provided the DOJ with DOJ-361 forms for numerous additional persons for whom Plaintiff seeks information in connection with the FBI FOIA Request, including Plaintiff's wife Theresa Louise Baker-Pickering ("Baker-Pickering"), Herman Bell ("Bell"), Bruce L. Beyer ("Beyer"), Anthony Bottom ("Bottom"), Buckley, Close, Robert Joseph Czernik ("Czernik"), Garrett Fitzgerald ("Fitzgerald"), David Joseph Gilbert ("Gilbert"), Luce Guillén-Givins ("Guillén-Givins"), Robert Seth Hayes ("Hayes"), Daire Brian Irwin ("Irwin"), Geoff Kelly ("Kelly"), Kuzma, Luers, Eric Taylor McDavid ("McDavid"), McGowan, Marie Jeanette Mason ("Mason"), Rosebraugh, Ryan Noah

Shapiro ("Shapiro"), Joshua Ryan Smith ("Smith"), Mark Sommer ("Sommer"), and Vanessa Villareal ("Villareal").  Hardy Declaration ¶ 11, and Exh. F (Dkt. 29-1 at 13-37).

By letter dated November 26, 2014, Hardy provided an interim response to the FBI FOIA Request advising Plaintiff that records already located in processing the FBI FOIA Request were being reprocessed with regard to the recently received additional privacy waivers.  By letter dated March 30, 2015, Hardy provided another interim response to the FBI FOIA Request advising Plaintiff the FBI continued to process the request.

On July 30, 2015, the FBI made its first interim release of records responsive to Plaintiff's FBI FOIA Request advising of 554 pages reviewed, 375 pages were being either RIF or RIP.  Plaintiff was further advised that cross-referencing other files revealed two additional documents potentially responsive to the FBI FOIA Request which were not found in their expected location and could not be located after a reasonable search, and a subsequent attempt to locate the documents after a reasonable waiting period was also unsuccessful.  The FBI informed Plaintiff he could appeal the determination by filing an administrative appeal with OIP within 60 days. The FBI's fourth interim response, released November 30, 2015, advised Plaintiff the FBI FOIA Request was still being processed.

On March 30, 2016, the FBI made a second interim release of records to Plaintiff, advising that of 601 records reviewed, 268 were being RIF or RIP.  Plaintiff was advised to file any administrative appeal within 60 days.  Plaintiff was further advised that cross-referencing other files revealed no additional documents potentially responsive to the FBI FOIA Request.

Additional interim responses from the FBI, including on July 30, 2016, November 30, 2016, March 30, 2017, July 28, 2017, and November 30, 2017, advised Plaintiff his FBI FOIA Request was still being processed, but no additional pages were then released.  On January 2, 2018, the FBI released its tenth and final interim response advising Plaintiff the rest of the materials responsive to Plaintiff's FBI FOIA Request were exempt from disclosure.

Subsequent to the filing of the FBI's Motion on April 27, 2018, and Plaintiff's Motion on May 31, 2018, the FBI determined FOIA Exemption 7(A)[10] pursuant to which many of the documents responsive to the FBI FOIA Request were withheld, had lapsed and the FBI has undertaken a segregability review which revealed approximately 13,000 pages which could be reprocessed in response to the request ("the supplemental review").  Defendant's counsel then notified Plaintiff's counsel and the court at a status conference on August 6, 2018, and the court stayed the briefing schedule applicable to the then pending summary judgment motions for 15 months to permit the supplemental review, and required a further status report be filed by November 6, 2019.

By letter to the undersigned dated November 5, 2019, Defendant advised that since August 6, 2018, in furtherance of the supplemental review, the FBI was processing the additional documents at the rate of 500 a month and providing Plaintiff with regular interim responses including status updates and additional documents.  At the processing rate of 500 per month, the FBI anticipated completing its supplemental

---

[10] 5 U.S.C. § 552(b)(7)(A).

review between July and November 2020 at which time a status conference should be scheduled.

At a November 10, 2020 status conference, the undersigned directed Defendant to advise within 30 days of Defendant's progress on the supplemental review and release of documents and propose a date for filing a supplemental *Vaughn* Index and supplemental briefing.  By letter to the undersigned date December 11, 2020, Defendant advised the FBI and Kuzma proposed September 30, 2021 as the deadline for filing the supplemental *Vaughn* Index and supplemental summary judgment motion. Accordingly, a December 11, 2020 scheduling order (Dkt. 48) set September 30, 2021 as the deadline for Defendant to file the supplemental *Vaughn* Index and supplemental summary judgment motions.  Motions for an extension of time to file the supplemental *Vaughn* Index and summary judgment motions were granted on September 22, 2021 (Dkts. 49-51), June 3, 2022 (Dkts. 52-53), August 26, 2022 (Dkts. 54-56), and January 30, 2023 (Dkts. 57-59).  In the January 30, 2023, the undersigned set March 17, 2023 as the final deadline for filing the supplemental *Vaughn* Index and supplemental summary judgment motions.

In total, the FBI identified 14,007 pages responsive to Plaintiff's FBI FOIA Request, of which the FBI determined 10,577 were required to be WIF.  Of the 10,577 pages WIF, 8,975 were fully exempt from disclosure pursuant to at least one FOIA exemption, or it was determined that any information on the pages that was not subject to a FOIA exemption was so inextricably intertwined with the exempt material on the same page that the employment of finite resources to segregate the non-exempt portions would yield only disjointed words, phrases, or sentences which, taken together

or separately, would provide minimal or no informational content.  Also WIF were 305

pages that were sealed pursuant to a court order entered in another district, and 1,297

pages that were duplicates of pages elsewhere accounted for in the FBI's production.

Of the remaining 3,430 pages, 2,856 were RIP with redactions, and 574 were RIF.

## DISCUSSION

### 1.    Summary Judgment

Both Plaintiff and Defendant move for summary judgment on Plaintiff's

challenges to the adequacy of the FBI's FOIA Responses and ATF's FOIA Responses.

Summary judgment of a claim or defense will be granted when a moving party

demonstrates that there are no genuine issues as to any material fact and that a moving

party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a) and (b); *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.

2003).  The court is required to construe the evidence in the light most favorable to the

non-moving party, *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011), and summary

judgment may not be granted based on a credibility assessment.  *See Reyes v. Lincoln

Automotive Financial Services*, 861 F.3d 51, 55 (2d Cir. 2017) ("Adverse parties

commonly advance conflicting versions of the events throughout a course of litigation.

In such instances on summary judgment, the court is required to resolve all ambiguities

and draw all permissible factual inferences in favor of the party against whom summary

judgment is sought." (citations, quotation marks, and brackets omitted)).  The party

moving for summary judgment bears the burden of establishing the nonexistence of any

genuine issue of material fact and if there is any evidence in the record based upon any

source from which a reasonable inference in the non-moving party's favor may be

drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322;

*see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a

material fact is "genuine," that is, if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party").  "A fact is material if it 'might affect the

outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35

(2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

     "[T]he evidentiary burdens that the respective parties will bear at trial guide

district courts in their determination of summary judgment motions."  *Brady v. Town of

Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary

judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit

a reasonable juror to return a verdict in his or her favor on'" an essential element of a

claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec.

Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379

(2d Cir. 1992)).  Once a party moving for summary judgment has made a properly

supported showing of the absence of any genuine issue as to all material facts, the

nonmoving party must, to defeat summary judgment, come forward with evidence that

would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes

Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "[F]actual issues created solely

by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues

for trial." *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

"An issue of fact is genuine and material if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  *Cross Commerce Media, Inc. v.*

*Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133,137 (2d Cir. 2009)).

2.    **FOIA Overview**

"The Freedom of Information Act adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies." *Halpern v. F.B.I.*, 181 F.3d 279, 286 (2d Cir. 1999) (citing cases).  "As noted by the Supreme Court, under FOIA, 'federal jurisdiction is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.''"  *Grand Cent. Partnership, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quoting *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1980) (quoting *Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 150 (1980))).  "Only when each of these criteria is met may a district court 'force an agency to comply with the FOIA's disclosure requirements.'"  *Id*.

"[T]he strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents."  *United States Dep't of State v. Ray,* 502 U.S. 164, 173 (1991).  The agency has the initial burden to show it conducted an adequate search for responsive records.  *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir.), *cert. denied*, 513 U.S. 823 (1994).  A search is considered adequate if it was reasonably calculated to uncover all relevant documents, yet reasonableness does not demand perfection, and a reasonable search need not uncover every document extant.  *Grand Cent. Partnership, Inc.,* 166 F.3d at 489.

"The FOIA requires that agency records be made available promptly upon a request that 'reasonably describes such records and ... is made in accordance with

published rules stating the time, place, fees (if any), and procedures to be followed.'"

*Ruotolo v. Dep't of Justice, Tax Division*, 53 F.3d 4, 9 (2d Cir. 1995) (quoting 5 U.S.C.

§ 552(a)(3)).  FOIA, however, exempts from disclosure nine categories of information.

5 U.S.C. § 552(b)(1) through (9) ("Exemption (b)(__)").  "Accordingly, to prevail on a

summary judgment motion in a FOIA case, an agency must demonstrate 'that each

document that falls within the class requested either has been produced, is

unidentifiable, or is wholly exempt from the Act's inspection requirements.'"  *Ruotolo*, 53

F.3d at 9 (quoting *Nat'l Cable Television Ass'n Inc. v. FCC*, 479 F.2d 183, 186 (D.C. Cir.

1973)).  Furthermore, "'to prevail on a motion for summary judgment in a FOIA case, the

defending agency has the burden of showing that its search was adequate.'"  *Id.*

(quoting *Carney*, 19 F.3d at 812).

      "'Affidavits submitted by an agency are accorded a presumption of good faith;

accordingly, discovery relating to the agency's search and the exemptions it claims for

withholding records generally is unnecessary if the agency's submissions are adequate

on their face.'"  *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 36 F. Supp. 3d 384,

398 (S.D.N.Y. 2014) (quoting *Carney,* 19 F.3d at 812 (citation omitted)).  "In order to

justify discovery once the agency has satisfied its burden, the plaintiff must make a

showing of bad faith on the part of the agency sufficient to impugn the agency's

affidavits or declarations, or provide some tangible evidence that an exemption claimed

by the agency should not apply or summary judgment is otherwise inappropriate."  *Id.*

(citations omitted).

      "Summary judgment is the preferred procedural vehicle for resolving FOIA

disputes."  *Bloomberg, L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 649 F.Supp.2d

262, 271 (S.D.N.Y. 2009).  "In order to prevail on a motion for summary judgment in a

FOIA case, the defending agency has the burden of showing that its search was

adequate and that any withheld documents fall within an exemption to the FOIA."

*Carney*, 19 F.3d at 812.  In contrast, "'[s]ummary judgment in favor of [a] FOIA plaintiff

is appropriate when an agency seeks to protect material which, even on the agency's

version of the facts, falls outside the proffered exemption.'"  *Nat. Res. Def. Council, Inc.*,

36 F.Supp.3d at 398 (quoting *NY. Times Co. v. U.S. Dep't of Def.*, 499 F.Supp.2d 501,

509 (S.D.N.Y. 2007)).  In resolving a summary judgment motion in a FOIA action, the

district court conducts a *de novo* review of an agency's response to a FOIA request

including any government records which the agency claims are exempt from disclosing.

*See Lee v. F.D.I.C.*, 923 F.Supp.  451, 453 (S.D.N.Y. 1996) (citing 5 U.S.C. §

552(a)(4)(B); and *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361-62 (1976)).  Such

"*de novo* review requires the court to reweigh the evidence compiled by the agency to

determine whether the agency's findings are correct, not just whether they are

reasonable."  *Id*. at 453-54.  Although FOIA authorizes *in camera* inspection of the

documents in question, it is not required.  *Id*. (citing 5 U.S.C. § 552(a)(4)(B)).

At issue here is whether ATF and FBI properly withheld records based on

segregability as well as based on various FOIA exemptions.  Briefly, to assist the reader

with some understanding of the to the FOIA exemptions invoked by the ATF and the

FBI in the instant case, 5 U.S.C. § 552(b)(1) ("Exemption 1") exempts from disclosure

information classified according to Executive Order 13,526 protecting information that

must be "kept secret in the interest of national defense or foreign policy . . . ."  Pursuant

to 5 U.S.C. § 552(b)(3) ("Exemption 3"), information is "specifically exempted from

disclosure by statute . . . ."  "[T]rade secrets and commercial or financial information obtained from a person and privileged or confidential" constitute information exempt under 5 U.S.C. § 552(b)(4) ("Exemption 4").  Pursuant to 5 U.S.C. § 552(b)(5) ("Exemption 5"), privileged information, including "inter-agency or intra-agency memorandum or letters which would not be available by law to a party other than an agency in litigation with the agency" is exempt.  "[P]ersonnel and medical files . . . the disclosure of which would constitute a clearly unwarranted invasion of privacy" are exempt under 5 U.S.C. § 552(b)(6) ("Exemption 6").  Under 5 U.S.C. § 552(b)(7), information compiled for law enforcement purposes is exempt from disclosure provided the information, as relevant, "could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A) ("Exemption 7(A)"); "could reasonably be expected to constitute an unwarranted invasion of privacy," 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"); "could reasonably be expected to disclose the identity of a confidential source," 5 U.S.C. § 552(b)(7)(D) ("Exemption 7(D)"); "would disclose techniques and procedures for law enforcement investigations or prosecutions" which "could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)"); or "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F) ("Exemption 7(F) ").  ATF withheld records based on FOIA Exemptions 6, 7(A) 7(C), 7(E), and 7(F).  FBI withheld records based on FOIA Exemptions 1, 3, 4, 5, 6, 7(A), 7(C), 7(D), and 7(E).  Plaintiff further asserts he is eligible for an award of attorney fees and litigation costs incurred in connection with this action.

With few exceptions, neither Plaintiff nor Defendant specifies in their memoranda for which of the 14,007 pages of documents listed on the FBI's *Vaughn* Index each challenged FOIA Exemption is asserted.  Further, for almost all of the withheld information, more than one FOIA Exemption is asserted as the basis for such withholding.  As such, any of the court's recommendations in Plaintiff's favor that a specific FOIA Exemption has not been properly supported will not necessarily require the information be released as it may remain subject to another properly supported FOIA Exemption.

**3.     FOIA Requests**

Defendant argues in support of summary judgment on the ATF FOIA Request that the ATF's search for responsive records was adequate, ATF Memorandum at 7-8, Plaintiff has no right of access to the requested records under the Privacy Act, 5 U.S.C. § 552a ("Privacy Act" or "§ 552a__"), particularly records exempt from disclosure as law enforcement investigative records pursuant to 5 U.S.C. § 552a(j)(2), ATF Memorandum at 9-10, and the ATF's FOIA Response was proper with regard to the records withheld based on segregability, *id*. at 10-11, as well as pursuant to FOIA Exemptions 6, 7(A), and 7(C), *id*. at 11-16, Exemption 7(E), *id*. at 16, and Exemption 7(F), *id*. at 16-17.  In response to ATF's Motion and in support of Plaintiff's Motion, Plaintiff argues the court should reject the ATF's withholding of records pursuant to Exemptions 5, 6, 7(C), 7(D), and 7(F), Plaintiff's Memorandum at 5-11, the ATF failed to establish the non-exempt portions of records withheld are so inextricably intertwined with the exempt portions requiring the court make specific findings regarding the segregability of such documents, *id*. at 11-13, and the ATF's search of records responsive to the ATF FOIA

Request was inadequate.  *Id*. at 13-14.  Plaintiff also argues he is eligible for an award of attorney fees and costs.  *Id*. at 15.

As regards the FBI FOIA Request, Defendant argues in support of summary judgment the FBI's search for responsive records was adequate, FBI Memorandum at 7-8, Plaintiff has no right of access to the requested records under the Privacy Act, 5 U.S.C. § 552a ("Privacy Act" or "§ 552a__"), particularly records exempt from disclosure as law enforcement investigative records pursuant to 5 U.S.C. § 552a(j)(2), FBI Memorandum at 9-10, the FBI's FOIA Response was proper with regard to the records withheld based on segregability, *id*. at 11-12, as well as pursuant to FOIA Exemption 3, *id*. at 13-14, Exemption 5, *id*. at 15-16, Exemptions 6 and 7(C), *id*. at 16-19, Exemption 7(A), *id*. at 19-20, Exemption 7(D), *id*. at 20-21, and Exemption 7(E), *id*. at 22-23.  In opposition to FBI's Motion and in support of Plaintiff's Motion, Plaintiff argues the court should reject the FBI's withholding of records pursuant to the various FOIA Exemptions, Plaintiff's Memorandum at 2-11, the FBI failed to establish the non-exempt portions of records withheld are so inextricably intertwined with the exempt portions requiring the court make specific findings regarding the segregability of such documents, *id*. at 11-13, and the FBI's search of records responsive to the FBI FOIA Request was inadequate. *Id*. at 13-14.  Plaintiff also argues he is eligible for an award of attorney fees and costs. *Id*. at 15.

In support of the FBI's Supplemental Motion, Defendant incorporates its arguments asserted in the FBI Memorandum, FBI Supplemental Memorandum at 8, and argues with regard to the documents upon completion of the supplemental review that Plaintiff has no right of access to any additional requested records under the Privacy

Act, including records exempt from disclosure as law enforcement investigative records

pursuant to 5 U.S.C. § 552a(j)(2), FBI Supplemental Memorandum at 9-10, the FBI's

search was adequate, FBI Supplemental Memorandum at 10-12, the FBI's FOIA

Response was proper with regard to the records withheld based on segregability, *id*. at

12-14, as well as pursuant to FOIA Exemption 1, *id*. at 14-16, Exemption 3, *id*. at 16-21,

Exemption 4, *id*. at 21-22, Exemption 5, *id*. at 23-25, and Exemption 7 including 7(A), *id*.

at 25-27, Exemptions 6 and 7(C), *id*. at 27-30, Exemption 7 (D), *id*. at 30-33, and

Exemption 7(E), *id*. at 33-34.   Defendant further argues that documents sealed by court

order are protected from disclosure, *id*. at 34-35, the FBI complied with FOIA's

foreseeable harm standard in withholding information, *id*. at 35, and the FBI's so-called

*Glomar* responses[11] were proper.  *Id*. at 35-38.  In opposition to FBI's Supplemental

Motion and in support of Plaintiff's Supplemental Motion, Plaintiff argues Defendant has

waived the right to assert any *Glomar* response, Plaintiff's Supplemental Memorandum

at 1-2, the FOIA Improvement Act of 2016 mandates the disclosure of all requested

records, *id*. at 2-3, the FBI failed to justify its claimed exemptions pursuant to Exemption

1, *id*. at 3-4, Exemption 3, *id*. at 4-5, Exemption 4, *id*. at 5-6, Exemption 5, *id*. at 6-7,

Exemption 7(A), *id*. at 7-8, Exemptions 6 and 7(C), *id*. at 8, Exemption 7(D), *id*. at 9, and

Exemption 7(E), *id*. at 9-10, the FBI failed to ascertain the status of all documents

sealed by court orders, *id*. at 22, and non-exempt portions of documents met be

released.  *Id*. at 11-13.

---

[11] The *Glomar* doctrine which devices from a FOIA case, *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976), concerning records pertaining to the Glomar Explorer, an oceanic research vessel, provides "that an agency may, pursuant to FOIA's statutory exemptions, refuse to confirm or deny the existence of certain records in response to a FOIA request . . .," where such confirmation or denial would reveal the existence of an investigation, a fact exempted from disclosure.  *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 67 (2d Cir. 2009).

In reply to Plaintiff's Supplemental Motion and in further support of Defendant's Motions, Defendant relies on the statements in the Second Bender Declaration (Dkt. 70-1), and Siple Declaration (Dkt. 70-2).  Defendant's Reply at 1-2.  Defendant further reiterates that it is premature to litigate Plaintiff's request for attorney fees.  *Id*. at 2-3.

### A.    Privacy Act

The parties dispute whether Plaintiff has a right pursuant to the Privacy Act to the records regarding the FBI's investigation of Plaintiff.  ATF's Memorandum at 9-10; FBI's Memorandum at 9-10; Defendant's Supplemental Memorandum at 9-10; Plaintiff's Supplemental Memorandum at 2-3.  As relevant, the Privacy Act provides that a person has a right of access to records about him maintained in government files unless the records are part of a system of record exempted from individual access.  5 U.S.C. § 552a(d).  Significantly, records within a system maintained by a law enforcement agency are exempt from disclosure under the Privacy Act.  5 U.S.C. § 552a(j)(2).  So long as the requested agency establishes that requested records are law enforcement records, the agency need not disclose such records unless the requesting party "produce[s] evidence that the asserted law enforcement rationale for an investigation was pretextual."  *Doe v. F.B.I.*, 936 F.2d 1346, 1353-54 (D.C.Cir. 1991).

In the instant case, Defendant, by the Chisholm, Hardy, Bender, Second Bender, and Siple Declarations, has established that the subject records qualify as law enforcement records.  Plaintiff does not argue otherwise.

Summary judgment should thus be GRANTED in favor of Defendant and DENIED as to Plaintiff on the issue of whether the withheld information qualifies as law enforcement records that need not be disclosed under the Privacy Act.

**B.    Adequacy of Search**

Defendant maintains the ATF and the FBI's searches of their respective records were adequate because ATF searched its files using the term "Leslie Pickering" to identify investigative files responsive to the ATF FOIA Request which returned 187 pages of documents, of which initially 62 were RIF, 66 RIP, and 59 that were non-responsive, ATF's Memorandum at 4, 6-7, and the FBI searched its files using the terms "Leslie James Pickering," "Leslie J Pickering," and Leslie Pickering" to identify investigative files responsive to the FBI FOIA Request which returned 1,155 responsive pages of which 219 were RIF, 424 were RIP, and 512 were WIF.  FBI's Memorandum at 5, 7-9.  With respect to the further review of the previously withheld documents, the FBI argues the search revealed 14,007 responsive pages of which 574 were RIF, 2,856 were RIP, and 10,577 were WIF.  FBI's Supplemental Memorandum at 10-12.

In challenging the adequacy of Defendant's search for documents responsive to Plaintiff's FBI and ATF FOIA Requests, Plaintiff argues the Defendant "must demonstrate beyond material doubt" that the ATF and FBI "conducted a search reasonably calculated to uncover all relevant documents," Plaintiff's Memorandum at 13, that a requested agency may not limit its search to only one record system if other systems are likely to reveal responsive records, *id*., and any doubt about the adequacy of a search should be resolved in favor of the requester.  *Id*.  Plaintiff maintains the ATF and FBI failed to demonstrate its searches, both in response to the ATF and FBI's FOIA Requests, as well as in connection with this lawsuit, were reasonably calculated to uncover all relevant documents.  *Id*. at 13-14.

"To secure summary judgment in a FOIA case, the defending agency must show through reasonably detailed affidavits or declarations that it conducted an adequate search and that any withheld documents fall within a FOIA exception." *Adamowicz v. I.R.S.*, 402 Fed.Appx. 648, 650 (2d Cir. 2010) (citing *Carney*, 19 F.3d at 812).  *See Hodge v. F.B.I.*, 703 F.3d 575, 579 (D.C. Cir. 2013) ("In general, the adequacy of a search is 'determined not by the fruits of the search, but by the appropriateness of [its] methods.'" (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003))).  Such affidavits are accorded "'a presumption of good faith,'" *id*. (quoting *Wilner v. NSA*, 592 F.3d 60, 69 (2d Cir. 2009)), "which 'cannot be rebutted by purely speculative claims about the evidence and discoverability of other documents.'"  *Id*. (quoting *Grand Cent. P'Ship, Inc.*, 166 F.3d at 489.  Significantly, "[a]n affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search."  *Carney*, 19 F.3d at 814.  Nor does the fact that additional records responsive to a FOIA request are not located and produced until after the plaintiff commences a FOIA action render the initial search insufficient.  *Hodge*, 703 F.3d at 580 ("it does not matter than an agency's *initial* search failed to uncover certain responsive documents so long as subsequent searches captured them" (italics in original)).  Furthermore, "the law demands only a 'relatively detailed and nonconclusory' affidavit or declaration."  *Adamowicz*, 402 Fed.Appx. at 650-51 (quoting *Grand Cent. P'Ship, Inc.*, 166 F.3d at 488-89).

The court first addresses the adequacy of the search for documents responsive to the ATF FOIA Request.  Here, Defendant provides the Chrisholm Declaration and the

Siple Declaration to satisfy the fundamental requirement that ATF conducted an adequate search.[12]

Specifically, Siple avers that, as Chief of the Information and Privacy Governance Division ("IPGD"), at the ATF, DOJ, Siple is responsible for all FOIA requests made of ATF under FOIA and the Privacy Act, as well as requests referred to ATF by other agencies processing their own FOIA requests.  Siple Declaration ¶ 1.  In his capacity with IPGD, Siple is familiar with all procedures followed by IPGD in processing the ATF FOIA Request.  *Id*. ¶ 2.  Upon receiving the ATF FOIA Request, which included a properly completed DOJ-361 form authorizing ATF to release information pertaining to Plaintiff directly to Kuzma, ATF conducted a search of "NFORCE" which is ATF's official case file of record for documenting investigative activity and information.  *Id*. ¶¶ 3-6. "NFORCE acts as a single-point of data entry and enables users to store, utilize, and query investigative information, and to prepare investigative documents."  *Id*. ¶ 6.  Each criminal investigation opened by an NFORCE case user is assigned a unique case number on which a user can run queries within the system by using an individual's name, date of birth, or social security number.  *Id*. ¶ 7.  In response to the ATF FOIA Request, on October 13, 2013, the Disclosure Division conducted an NFORCE search by entering Plaintiff's first and last name, *i.e.*, "Leslie Pickering," and located case file 787030-01-0015 ("Case 787030-01-0015"), that originated in the Seattle Field Division. Siple Declaration ¶ 8.  ATF IPGD then transmitted to the Special Agent in Charge, Seattle Field Division a search request for Case 787030-01-0015, *id*. ¶ 8, and on

---

[12] Siple's averments are essentially identical to those of Chisholm whose declaration was prepared when Chisholm was Acting Chief of the ATF's Disclosure Division.  Chisholm Declaration ¶ 1.  In the interest of judicial efficiency, and given the Chisholm Declaration, which is filed under seal, does not address the supplemental review, the court references only the Siple Declaration.

October 20, 2013, the Seattle Field Division alerted IPGD that the investigation into Case 787030-01-0015 was still open. *Id*. ¶ 9.  On October 22, 2013, IPGD Chief Stephanie Boucher ("Boucher") informed Kuzma that because the investigation into Case 787030-01-0015 remained open, the ATF FOIA Request seeking access to information pertaining to Pickering was denied pursuant to Exemption 7(A), *id*. ¶¶ 10-11, and the OIP affirmed that decision on January 24, 2014.  *Id*. ¶ 12.  On December 23, 2014, those records that IGPD processed that were not determined to be exempt were released to Plaintiff.  *Id*. ¶ 13.  This detailed description of ATF's efforts in responding to Plaintiff's ATF FOIA Request and the presumption of good faith to which agency affidavits are entitled point toward finding ATF's search of its records was adequate. *See Grand Cent. Partnership, Inc.*, 166 F.3d at 489 (affirming district court's finding that agency's search was adequate based on affidavit detailing the search undertaken by the agency for responsive documents and "the presumption of good faith to which agency affidavits are entitled").

Despite Siple's detailed description of the ATF's search undertaken in responding to the ATF FOIA Request, Plaintiff argues the inadequacy of the ATF's search is demonstrated by the ATF's failure to search different variations of Plaintiff's name as well as the failure to process McGowan's DOJ-361 dorm and then search for responsive records for McGowan's name.  *Id*. at 13-14.  Insofar as Plaintiff maintains ATF failed to search for records pertaining to Plaintiff by using variations of Plaintiff's name, Defendant explains that in in connection with the supplemental search, the ATF FOIA Request was reprocessed and included a search using only Plaintiff's last name, *i.e.*, Pickering.  Siple Declaration ¶ 18.  Siple further explains that the entry of Plaintiff's

last name into an NFORCE search was broad enough to locate any records using any variation of Plaintiff's name.  *Id*. Plaintiff does not argue otherwise.  Accordingly, there is no merit to Plaintiff's argument.

Regarding Plaintiff's argument that ATF erroneously determined the DOJ-361 form for McGowan was improperly completed, Defendant ATF argues a search for records relating to McGowan was included in the supplemental search which yielded responsive records, yet the records were determined to be exempt from disclosure pursuant to Exemptions 6, 7C, and 7F and, as such, were not released.  Siple Declaration ¶¶ 15-16.  There thus is no merit to this argument by Plaintiff.

As such, summary judgment regarding the adequacy of the ATF's search for records responsive to the ATF FOIA Request should be GRANTED as to Defendant and DENIED as to Plaintiff.

With regard to the adequacy of the search for documents responsive to the FBI FOIA Request, Defendant provides the Hardy Declaration and the Bender Declaration to satisfy the fundamental requirement that FBI conduct an adequate search.  Hardy explains that as then Section Chief of the FBI's Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), he supervised the employees staffing 12 FBI Headquarters ("FBIHQ") units and two field operational service center units whose mission included, *inter alia*, responding to FOIA requests directed to the FBI.  Hardy Declaration ¶¶ 1-2.  Similarly, Bender, as Acting Section Chief of RIDS since March 6, 2023, supervises nine FBIHQ units and two field operational service units charged with responding to FOIA requests directed to the FBI.  Bender Declaration ¶¶ 1-2.  As Section Chief and Acting Section Chief, both Hardy and

Bender are familiar with all FBI procedures followed in responding to requests for information pursuant to FOIA and the Privacy Act including Plaintiff's FBI FOIA Request. Hardy Declaration ¶ 3; Bender Declaration ¶ 3.

According to Hardy and Bender, in fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency, the FBI compiles and maintains in the Central Records System ("CRS"), "an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files . . . ."  Hardy Declaration ¶ 23; Bender Declaration ¶ 6.  The CRS maintains records for the entire FBI organization including FBIHQ, FBI Field Offices, and FBI Legal Attached Officers ("Legats") worldwide.  *Id*.  CRS files are numerically sequenced and organized according to designated subject categories referred to as "FBI classifications."  Hardy Declaration ¶ 24; Bender Declaration ¶ 7.

As each FBI case file is opened, the file is assigned a Universal Case File Number ("UCFN") consisting of three sequential components including (1) the CRS file classification number; (2) the abbreviation of the FBI Office of Origin ("OO") initiating the file; and (3) the assigned individual case file number for that particular subject matter. Hardy Declaration ¶ 24; Bender Declaration ¶ 7.  Within each case file, certain documents of interest are "serialized," *i.e.*, assigned a document number in the order in which the document is added to the file, typically in chronological order, referred to as "serials."  *Id*.

Records are located within the CRS through its general indices with the files alphabetized according to subject matter including individuals, organizations, events and subjects of investigative interest.  Hardy Declaration ¶ 25; Bender Declaration ¶ 8.

Entries in the general indices fall into two categories including (1) a main entry created for each individual or non-individual, *i.e.*, an organization or other entity, that is the subject or focus of an investigation, and (2) a reference or "cross-reference" entry created for individuals or non-individuals associated with a case, but not the main subject or focus of an investigation. *Id*. Reference subjects typically are not identified in the case title of a file. *Id*. CRS indexing information is done by FBI investigators who have the discretion to deem information sufficiently significant to warrant indexing for future retrieval. *Id*. Thus, not every individual name, organization, event, or other subject matter is separately indexed in the general indices. *Id*.

Initially, the indices for CRS files were manually maintained on paper index cards, filed alphabetically based on subject matter. Bender Declaration ¶ 11 & n. 11. Later, many of the FBI's manual indices for FBIHQ and FBI field offices were automated into electronic databases. Not all indexed data, however, was captured by automation; rather, automation of FBIHQ manual indices captured indexed data on individuals born on or after January 1, 1958, and on organizations and events created or occurring on or after January 1, 1973. Automation of FBI field offices' manual indices captured indexed data for individuals born on or after January 1, 1958, and for organizations and events created or occurring on or after January 1, 1973. *Id*.

In 1995, Automatic Case Support ("ACS"), an electronic integrated case management system, was implemented with CRS records converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices. Hardy Declaration ¶ 26; Bender Declaration ¶ 10. ACS searches were conducted through use of the Universal Index ("UNI") which

provides an electronic means to search by indexing pertinent investigative information including such identifying information as name, date of birth, race, sex, locality, social security number, address, and date of an event.  Hardy Declaration ¶ 27; Bender Declaration ¶ 11.  On July 1, 2012, the Sentinel system ("Sentinel") became the effective FBI-wide case management system, includes the same automated applications used in ACS, and also provides a web-based interface for FBI users. Hardy Declaration ¶ 28; Bender Declaration ¶ 12.  Sentinel, however, did not replace ACS until August 1, 2018, when ACS data was migrated into Sentinel, including the ACS indices data and digitalized investigative records.  Hardy Declaration ¶ 28; Benderson Declaration ¶ 13.  Sentinel also retains the index search methodology and function whereby the CRS is queried via Sentinel for pertinent indexed main or reference entries in case files.  *Id*.  As such, CRS index data from the UNI application previously searched via ACS is now searched within Sentinel using the "ACS Search" function.  *Id*.

Because ACS was still operational when Plaintiff's FBI FOIA Request was received, the FBI's RID commenced its searching efforts for documents responsive to FOIA requests by conducting an index search using the ACS/UNI searching applications, as well as a Sentinel index search to confirm any records identified as a result of the ACS/UNI search in addition to any cross-referenced records.  Hardy Declaration ¶ 31; Bender Declaration ¶ 14.  In particular, upon receiving Plaintiff's FOIA Request, RIDS conducted CRS index searches for potentially responsive records employing the ACS and the Sentinel indices using as search terms "Pickering, Leslie, James, Jr.," "Pickering, Leslie J," "Pickering, Leslie," "Pickering, L, J," and "Pickering,

Leslie, James," which terms were most likely to locate responsive files.  Hardy Declaration ¶¶ 31-32; Bender Declaration ¶ 21.  These searches returned 14,007 pages of responsive documents that were backlogged for processing.  Bender Declaration ¶¶ 4, 21.  Of the 14,007 pages processed by the FBI, 574 were RIF, 2,856 were RIP, and the remaining 10,577 were WIF.  Bender Declaration ¶ 4.  Of the 10,577 pages WIF, 8,975 pages were determined to be exempt in full pursuant to one or more applicable FOIA exemptions, 1,297 were determined to be duplicative of other pages elsewhere accounted for in the FBI's production, and 305 were WIF pursuant to a court sealing order pertaining to pen registers in another district.  *Id*.  Plaintiff was also provided a *Vaughn* Index providing the FBI's justification for withholding information either in full or in part.  *Id*.

Despite the FBI's detailed explanation of its searching process for records responsive to Plaintiff's FBI FOIA Request, Plaintiff argues the inadequacy of the FBI's search is demonstrated by the fact two FBI documents potentially responsive to Pickering's request could not be located, and the FBI failed to note when these missing documents were last in the FBI's possession.  Plaintiff's Memorandum at 13-14 (citing Hardy Declaration ¶ 14).  This argument pertains to the July 30, 2015 letter[13] in which Hardy advised Plaintiff that the FBI's CRS search showed two documents potentially responsive to Plaintiff's FBI FOIA Request which the FBI attempted to obtain to review but which were not in their expected location after a reasonable search, as well as an additional search after a reasonable waiting period.  Defendant does not address this argument.

---

[13] Bender Declaration Exh. I (Dkt. 29-1 at 42-44).

A requested agency is not required by FOIA "to account for documents which the requester has in some way identified [by reference to the released documents] if it has made a diligent search for those documents in places in which they might be expected to be found." *Conti v. U.S. Dept. of Homeland Sec.*, 2014 WL 1274517, at * 14 (S.D.N.Y. Mar. 24, 2014) (quoting *Miller v. U.S. Dept. of State*, 779 F.3d 1378, 1385 (8th Cir. 1985) (brackted material in *Conti*)).  *See also Grand Cent. Partnership, Inc.*, 166 F.3d at 489 (affirming district court's finding that agency's search was adequate based on affidavit detailing the search undertaken by the agency for responsive documents and "the presumption of good faith to which agency affidavits are entitled").  Further, "[t]he fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it."  *Id*.

Relevantly, the Second Circuit has held that despite failing to locate the documents, the FBI's efforts in twice searching all appropriate locations establish the FBI's search was "reasonably calculated to discover" the missing pages.  *Kuzma v. United States Department of Justice*, 692 Fed.Appx. 30, 33 (2d Cir. 2017) (citing *Miller*, 779 F.3d at 1385)).  Further, FOIA does not require the requested agency to account for documents which the requester has in some way identified if it has made a diligent search for those documents in the places in which they might be expected to be found, nor is it necessary "to create a document that does not exist in order to satisfy a [FOIA] request."  *Yeager v. Drug Enforcement Administration,* 678 F.2d 315, 321 (D.C.Cir. 1982).  A requested agency also is not required to restructure its entire records searching system to satisfy a FOIA request but need only make a diligent effort

calculated to uncover documents responsive to the request. *McGehee v. Central Intelligence Agency,* 697 F.2d 1095, 1100 (D.C.Cir.1983), *modified in part on reh'g,* 711 F.2d 1076 (D.C.Cir.1983). Summary judgment on an argument that a search was inadequate is proper only if the requester demonstrates circumstances indicating further search procedures were available without the Department's having to expend more than reasonable effort. *Founding Church of Scientology v. National Security Agency,* 610 F.2d 824, 834 (D.C.Cir.1979). In the instant case, Plaintiff has not made any such showing. Accordingly, summary judgment on the adequacy of the FBI's search for records responsive to the FBI FOIA Request should be GRANTED in favor of Defendant and DENIED as to Plaintiff.

### C.     Segregability

Both ATF and FBI withheld information that they admit is not specifically exempt from disclosure under a FOIA exemption, but which is "intextricably intertwined" with the exempt portions of the responsive documents. Under FOIA, any "reasonably segregable" information in a responsive record must be released. *Ramaci v. Federal Bureau of Investigation*, 568 F.Supp.3d 378, 396 (S.D.N.Y. 2021) (citing 5 U.S.C. § 552(b)). "Non-exempt information is not reasonably segregable, however, when it is 'inextricably intertwined' with the exempt information in a record 'such that disclosure would compromise the confidentiality of [exempt] information that is entitled to protection.'" *Id*. (quoting *Hopkins v. U.S. Dep't of Housing and Urban Dev.*, 929 F.2d 81, 85 (2d Cir. 1991) (bracketed material in *Hopkins*)). *See also Doherty v. United States Dep't of Justice*, 775 F.2d 49, 52–53 (2d Cir. 1985) (in responding to a FOIA request, a requested party need not provide "[d]isclosable information that cannot be

easily separated from that which is exempt without compromising the secret nature of the information."). "Moreover, 'disclosure is not required when, after segregation, all that is left is 'a few nuggets of non-intertwined' information.'" *Ramaci*, 568 F.Supp.3d at 396 (quoting *ACLU v. U.S. Dep't of Justice*, 252 F. Supp. 3d 217, 227 (S.D.N.Y. May 2, 2017) (collecting cases), and citing *Doherty*, 775 F.2d at 53 ("The fact that there may be some nonexempt matter in documents which are predominantly exempt does not require the district court to undertake the burdensome task of analyzing approximately 300 pages of documents, line-by-line.") (citation omitted). Further, in analyzing segregability issues, an agency is "entitled to a presumption that it complied with its obligation to disclose reasonably segregable material." *Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 393-94 (S.D.N.Y. 2014).

Here, Defendant asserts that after conducting a segregability review, the ATF exempted from disclosure audiotapes from 2001 ("the audiotapes")[14] for which the ATF was unable to segregate the voices of the persons speaking on such tapes. ATF's Memorandum at 11 (citing Chisholm Declaration ¶ 40). Chisholm further explains that the identifying feature of each person on the tapes is his or her voice, and although ATF does not have the ability to segregate out the voices of those persons whose identity is exempt from disclosure under FOIA, Plaintiff would be able to identify such voices. Chisholm Declaration ¶ 40. Chisholm also speculates the condition of the audio recordings may have degraded and become fragile since the tapes were made and the equipment necessary to begin a segregation process for the tapes may no longer exist. *Id*. Plaintiff maintains the ATF must make a greater effort to segregate and release the

---

[14] Although the parties refer to the audiotapes as dated "2001," the ATF's Vaughn Index identifies 18 audio tapes with "various dates from approximately 1/15/2002 to 4/16/2002." Dkt. 18 at 23-24.

non-exempt portions of the audiotapes, arguing ATF neither specifies the format of such tapes or whether any attempt was made to transfer the recording to another medium that would allow for editing out the voices of those other than Plaintiff.  Plaintiff's Memorandum at 13.

Insofar as Defendant maintains the audiotapes were withheld in their entirety because Plaintiff would be able to identify the voices of the persons speaking, Defendant has not explained why the audiotapes, which Defendant equivocally states "may" be degraded and fragile and for which the equipment needed to begin to segregate voices "may" no longer exist, ATF's Memorandum at 11 (citing Chisholm Declaration ¶ 40), cannot be copied or transferred to another medium that would allow for the segregation of any voices belonging to persons whose identity is exempt from disclosure under FOIA, nor why the audiotapes cannot be transcribed.  *See Washington Post Company v. Special Inspector General for Afghanistan Reconstruction*, 483 F.Supp.3d 141, 163 (D.D.C. 2020) (requested party's conclusory assertion that providing audio recordings would permit the plaintiff to identify interviewees by their voices failed to establish the requested party had performed its duty to segregate and produce releasable information from the audio recordings).  Defendant should thus be directed to either fully explain why the asserted exempt voices cannot be segregated either by transferring the audiotapes to another medium that would permit such segregation, or provide a transcript of the audiotapes on which the exempt portions are redacted.

With regard to the FBI FOIA Request, of the 14,007 pages responsive, 574 were RIF, 2,856 were RIP, and 10,577 were WIF.  Defendant argues that with regard to the

pages of information responsive to Plaintiff's FBI FOIA Request that were WIF, and the portions of pages that were RIP, the information was withheld either because the information was fully covered by FOIA exemptions, or any non-exempt information on the pages was so intertwined with exempt material that no non-exempt information could be reasonably segregated for release as well as that further attempts at segregation would require use of finite resources only to result in the release of disjointed words, phrases, or sentences which, either separately or together, would provide minimal or no informational content.  FBI's Memorandum at 12 (citing Hardy Declaration ¶ 112); FBI's Supplemental Memorandum at 13-14 (citing Bender Declaration ¶ 158).

In contrast, Plaintiff argues Defendant failed to "'describe the documents' it has withheld and the 'justifications for nondisclosure with reasonably specific detail'" as required thus precluding summary judgment in favor of Defendant as to the propriety of withholding the information.  Plaintiff's Memorandum at 12-13.  In particular, Plaintiff challenges the withholding of numerous Bates-stamped pages containing redacted information Plaintiff maintains is publicly available, redacted dates for no readily discernable reason, redacted information pertaining to Buckley for whom Plaintiff provided a properly completed DOJ-361 form, or failed to provide any FOIA exemption supporting the withheld information.  Plaintiff's Supplemental Memorandum at 12-13.  To remedy what Plaintiff maintains is the improper withholding of information, Plaintiff urges the court to conduct an *in camera* review of a random sampling of withheld records, suggesting the court consider as guidance the random sampling ordered by this court in *Kuzma v. United Stats DOJ*, 2023 U.S. Dist. LEXIS 64535, at * 12

(W.D.N.Y. Apr. 12, 2023) ("*Kuzma*"), wherein the defendant was directed to produce for *in camera* inspection every tenth page withheld.  Plaintiff's Supplemental Memorandum at 13.  In support of this request, Plaintiff identifies on the FBI's Supplemental Vaughn Index several pages withheld for what Plaintiff maintains are inadequate reasons.  *Id*. at 12-13.  In reply, Defendant relies on averments in the Second Bender Declaration to "clear up what may be confusion or mishandling of the indices provided to Plaintiff . . . ."  Second Bender Declaration ¶ 41.

As Plaintiff asserts, Plaintiff's Supplemental Memorandum at 11, almost 76% of the pages of information responsive to the FBI FOIA Request were WIF either because all of the information was exempt from disclosure under FOIA, or any non-exempt information on the withheld pages was so intertwined with exempt information that no information can reasonably be segregated for release.  In contrast, in *Kuzma*, 90% of the responsive pages were withheld because of an asserted inability to segregate disclosable information from information exempt from disclosure pursuant to a FOIA exemption.  *Kuzma*, 2023 U.S. Dist. LEXIS 64535, at * 11.

To demonstrate his challenge to the FBI's segregability review, Plaintiff references 10 groups of pages for which Plaintiff maintains there exist reasons calling into question the FOIA exemption asserted in the FBI's *Vaughn* index and supporting the need for *in camera* inspection, Plaintiff's Supplemental Memorandum at 11-13, yet Defendant counters each challenge with a plausible explanation which negates the need for an *in camera* inspection.  Second Bender Declaration ¶ 41.  Specifically, with regard to the first group, Plaintiff asserts Bates-stamped pages 159-64, 234-35, and 240-41 were RIP although the information was "gleaned" from a publicly accessible

website, Plaintiff's Supplemental Memorandum at 12, but Defendant explains that although "derived" from a public website, all information on such pages falls under FOIA Exemptions 6 and 7(C) pertaining to the identity of FBI personnel.  Second Bender Declaration ¶ 41.A.  The FBI specifically describes the documents as "EC dated 11/12/2003; details information regarding the Media Services Department off of the Arissa[15] website."  FBI's *Vaughn* Index Bates 159-64 (Dkt. 70-1 at 45).  This description is consistent with Defendant's explanations.  Accordingly, the court will not inspect these pages *in camera*.

Plaintiff second group challenge is to the redactions on the FBI's *Vaughn* Index's Bates-stamped pages 264, 388-89, 391, 422-24, 519, 3043-44, 3047, 3050-51, 3054, 3056, 3058, 3062-63, 3067, 3070, and 3073, despite the information on such pages relating to articles in public newspapers.  Plaintiff's Supplemental Memorandum at 12. Defendant asserts that although the information on such pages relates to newspaper articles, no public source information was withheld; rather, the redactions on the pages are handwritten information including file numbers and names of FBI personnel which are exempted under FOIA Exemptions 3, 6 and 7(C).  Second Bender Declaration ¶ 41.B.  *In camera* review of these pages thus is not warranted.

Plaintiff maintains the third group includes Bates-stamped pages 7004-17 which are from an Earth Liberation Front ("ELF") newsletter that is publicly available, Plaintiff's Supplemental Memorandum at 12, but Defendant explains these pages were WIF because the information was sourced from a confidential informant whose identity as well as the information provided is exempt pursuant to FOIA Exemptions 6, 7(C) and

---

[15] The parties provide no explanation or description of "Arissa."

7(D).  Second Bender Declaration ¶ 41.C.  Insofar as Plaintiff maintains the ELF newsletter is publicly available, "[t]he burden of establishing prior public disclosure is on the requester."  *Knight First Amend. Inst. at Columbia Univ. v. United States Citizenship & Immigr. Servs.*, 30 F.4th 318, 332–33 (2d Cir. 2022) (citing *Inner City Press/Cmty. On the Move v. Bd. of Governors of the Fed. Rsrv. Sys.*, 463 F.3d 239, 249 (2d Cir. 2006)).  Further, "'[t]he Supreme Court has limited the public domain exception to information that is 'freely available.'"  *Id*. (quoting *Inner City Press*, 463 F.3d at 244) (further quotation marks and citation omitted).  "In the FOIA context, information is in the public domain if it is generally available to the public at large, not simply if it happens to be known by select members of the public."  *Id*. (citing *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 764 (1989) (distinguishing between information "restricted to ... a particular person or group of class of persons" and information "freely available to the public")).  In the instant case, Plaintiff has not met his burden of establishing the ELF newsletter is in the public domain at large, rather than merely known by select members of the public.  Similarly, Plaintiff challenges the withholding of Bates-stamped pages 7249-50 which pertain to an ELF video, Plaintiff's Supplemental Memorandum at 12, which Defendant maintains was properly determined exempt from production pursuant to Exemptions 6 and 7(C) because the pages contain identifying information of FBI personnel.  Second Bender Declaration ¶ 41.D.  Not only has Defendant plausibly asserted the relevant FOIA exemptions, but Plaintiff has not demonstrated that the subject ELF video is in the public domain, rather than available to only select members such that no *in camera* review is required.

Plaintiff baldly questions the validity of the redacting of dates on Bates-stamped pages 7289-93 and 7366-68 pursuant to Exemption 7(D), Plaintiff's Supplemental Memorandum at 12, and Defendant explains that the withheld information relates to a surveillance operation for which the release of dates, times, and details would reveal law enforcement techniques and procedures and thus is exempt pursuant to Exemption 7(E).  Second Bender Declaration ¶ 41.E.  No *in camera* inspection for these pages is warranted.

Plaintiff challenges that Bates-stamped pages 7574-84 were wrongly WIF because Plaintiff provided a properly completed DOJ-361 privacy waiver form for Buckley such that the redaction of information pertaining to Buckley was improper.  Plaintiff's Supplemental Memorandum at 12.  Defendant replies that in contrast to Plaintiff's argument, the FBI's *Vaughn* Index shows such pages were WIF based on Exemption 7(E) pertaining to the collection and analysis of information, pertaining to assertions of law enforcement techniques that could, if disclosed, create opportunities for circumvention of the law, and that no individual names on these pages were withheld.  Second Bender Declaration ¶ 41.F.  A plain review of the FBI's *Vaughn* Index confirms Defendant's explanation and establishes no *in camera* inspection of these pages is necessary.

Plaintiff points out that by failing to list any FOIA Exemption for the withholding of information, either in full or in part, on Bates-stamped pages 8284-95, Defendant has waived any claim of exemption for such pages, Plaintiff's Supplemental Memorandum at 12, to which Defendant responds by providing the asserted exemptions including Exemptions 3, 6, 7(A), 7(C) and 7(D), along with an updated the *Vaughn* Index, *i.e.*, the

FBI's *Vaughn* Index.[16]  Second Bender Declaration ¶ 41.G and Exh. C.  Significantly, Plaintiff points to no case law holding that a requested party's inadvertent failure to list on a *Vaughn* index the asserted FOIA Exemption pursuant to which information was withheld results in a waiver and the court's research reveals none.  *See, cf.*, *Ahmed v. U.S. Citizenship and Immigration Services*, 2013 WL 27697, at *4 n. 8 (E.D.N.Y. Jan. 2, 2013) (noting that the defendant's failure to assert a particular FOIA exemption in the *Vaughn* index did not result in a waiver of the application of such exemption because the exemption was raised prior to any oral argument on the motion such that its belated assertion did not result in any delay of the proceedings).  Similarly, Plaintiff argues Defendant's failure to include a description of the information listed as WIF on Bates-stamped page 10482 requires its release, Plaintiff's Supplemental Memorandum at 13, but Defendant included a description of the WIF information in the FBI's *Vaughn* Index. Second Bender Declaration ¶ 41.H and Exh. C.  The court finds the FBI's apparently inadvertent omission of the description for page 10482 did not result in any waiver of a FOIA exemption, nor does the omission, since corrected, required the court to review page 10482 *in camera*.

Plaintiff argues that Bates-stamped pages 11051-52 are described as a "public event poster and ought to be disclosed."  Plaintiff's Supplemental Memorandum at 13. Defendant argues in opposition that these pages were withheld pursuant to FOIA Exemption 7(E)-9 and 7(E)-10 for containing a collection and analysis of information regarding targets, dates, and scope of surveillance, and that images captured during surveillance can reveal the surveillance's date and time, as well as the location of the

---

[16] Dkt. 70-1 at 39-548.

surveillance team.  Second Bender Declaration ¶ 41.I.  The court's review of the FBI's *Vaughn* Index entry for pages 11051-52 demonstrates the pages are not described as a "public event poster" but, rather, as a "[f]lyer, undated, advertising interest group and movie showing," which were withheld pursuant to FOIA Exemptions 7(E)-9 and 7(E)-10.  FBI's *Vaughn* Index, Bates 11051-52 (Dkt. 70-1 at 463).  The asserted FOIA Exemptions protect from disclosure the collection and analysis of information regarding investigative techniques and procedures, including information about targets, dates, and the scope of surveillance.  Further, nothing in the description establishes these pages were ever publicly displayed, much less that they were displayed in a manner that reached more than "select members of the public."  *See Knight First Amend. Inst. at Columbia Univ.*, 30 F.4th at 332–33.  No *in camera* inspection of Bates 11051 and 11052 need be conducted.

Plaintiff's tenth challenge is to the FBI's withholding of Bates-stamped pages 1055, 1056, 11197, and 11210, described as surveillance photos, and WIF pursuant to FOIA Exemption 7(E), which Plaintiff maintains is "questionable."  Plaintiff's Supplemental Memorandum at 13.  Defendant responds the pages were WIF pursuant to FOIA Exemption 7(E) because to disclose them would reveal information about the FBI's investigative techniques and procedures.  Second Bender Declaration ¶ 41.J.  *In camera* inspection of these pages will not be ordered.

Insofar as Plaintiff urges the court to conduct an *in camera* review of the pages WIF to determine whether or not there are any segregable portions, Congress left it in the court's discretion to determine whether or not to undertake *in camera* review.  *Military Audit Project v. Bush,* 418 F.Supp. 876, 879 (D.D.C. 1976).  Where, as here, the

government agencies' affidavits on their face indicate the documents withheld logically fall within the claimed exemptions and there is no doubt as to the requested agency's good faith, the court should restrain its discretion to order *in camera* review.  *Lead Industries Ass'n, Inc. v. Occupational Safety and Health Administration,* 610 F.2d 70, 87-88 (2d Cir. 1979).  Moreover, with regard to the segregability of the documents or lack thereof, "an agency's justification . . . is sufficient if it appears 'logical' or 'plausible.'" *N.Y. Times Co. v. U.S. Dep't of Justice,* 756 F.3d 100, 119 (2d Cir. 2014) (quoting *Wolf v. CIA,* 473 F.3d 370, 374-75 (D.C. Cir. 2007)).  Here, both the ATF's and the FBI's asserted justification for failing to further segregate information for release, *i.e.*, that the withheld information is so inextricably intertwined with exempt information that its release would requires finite resources to provide information with minimal or no informational content, appears both "logical" and plausible."  As such, there is no reason to put aside the good faith presumption afforded the explanations provided by Chisholm and Bender.  *See Ramaci,* 568 F.Supp.3d at 397 (holding FOIA plaintiff, by failing to counter affidavit by government agency that further segregability would yield only sentence fragments that provided no information, also failed to overcome the presumption of good faith afforded to such affidavit); *Mermerlstein v. U.S. Dep't of Justice, Fed. Bureau of Investigation*, 2021 WL 3455314, at *17 (E.D.N.Y. Aug. 4, 2021) (same).

In short, in the instant case, there simply is no reason to put aside the good faith presumption afforded the ATF's or the FBI's explanations, respectively provided by Hardy and Bender, for an *in camera* review. *See Ramaci*, 568 F.Supp.3d at 397 (holding FOIA plaintiff, by failing to counter affidavit by defendant government that

further segregability would yield only sentence fragments that provided no information, also failed to overcome the presumption of good faith afforded to such affidavit). Plaintiff's request for *in camera* review of pages either RIP or WIF by either ATF or FBI is DENIED. Further, summary judgment based on segregability with regard to the ATF FOIA Request should be GRANTED in favor of Plaintiff with regard to the audiotapes as discussed, *supra*, at 36, but otherwise DENIED as to Plaintiff and GRANTED as to Defendant. Summary judgment based on segregability with regard to the FBI FOIA Request should be GRANTED as to Defendant.

### D. FOIA Exemptions

The balance of Plaintiff's arguments regarding the FOIA Responses are predicated on the so-called "FOIA Exemptions" set forth in 5 U.S.C. § 552(b) as the basis for redacting information from responsive documents or withholding their release altogether and "'whether the agency has sustained its burden of demonstrating that the documents requested are . . . exempt from disclosure [ ] under FOIA.'" *Pub. Inv'rs Arbitration Bar Ass'n v. SEC*, 771 F.3d 1, 3 (D.C. Cir. 2014) (quoting *ACLU v. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011) (brackets in *Pub. Inv'rs. Arbitration Bar Ass'n*.). In general, "'[a]n agency may invoke a FOIA exemption if its justification appears logical or plausible.'" *Osen LLC v. United States Central Command*, 969 F.3d 102, 114 (2d Cir. 2020) (quoting *Am. Civ. Liberties Union v. Dep't of Justice*, 681 F.3d 61, 69 (2d Cir. 2012) ("*ACLU*") (further quotation marks and citation omitted)). "'The agency asserting the exemption bears the burden of proof, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure.'" *Id*. (quoting *Wilner*, 592 F.3d at 69). "'The agency may meet its burden by submitting a detailed affidavit showing that

the information logically falls within the claimed exemptions.'" *Id.* (quoting *Wilner*, 592 F.3d at 68 (further citation omitted)).  "In the national security context, however, we 'must accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record.'"  *ACLU*, 681 F.3d at 69 (emphasis in original) (quoting *Wolf*, 473 F.3d at 374 (italics in *Wolf*)). Further, "[s]ummary judgment is appropriate where the agency affidavits 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  *Osen, LLC.*, 969 F.3d at 114 (quoting *ACLU*, 681 F.3d at 69).

In the instant case, information responsive to Plaintiff's ATF FOIA Request was withheld pursuant to Exemptions 6, 7(C), 7(E), and 7(F), whereas information responsive to Plaintiff's FBI FOIA Request was withheld pursuant to Exemptions 1, 3, 4, 5, 6, 7(A), 7(C), 7(D), and 7(E).  The court addresses the arguments Plaintiff raises with regard to each of these asserted exemptions.[17]

---

[17] The court notes Plaintiff did not challenge the FOIA Exemptions asserted on each possible ground.  For example, although the FBI withheld information pursuant to FOIA Exemption 5 based on the deliberative process privilege which protects deliberative communications, draft material, talking points, and handwritten notes, Plaintiff only challenges the withholding of handwritten notes.  Because the court is not obligated "to perform an independent review of the record to find proof of a factual dispute" before ruling on a summary judgment motion, *Amnesty America v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (citing *Carmen v. San Francisco Unified Sch. Dist.*, 237 .3d 1026, 1030-31 (9th Cir. 2001), nor "to do the work of a party's attorney," *Id.* 288 F.3d at 470-71 (citing *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 405-06 (6th Cir. 1992), the court's review of the instant motions is limited to arguments actually raised by the parties.  Because Defendant also moves for summary judgment, however, the court considers whether for those asserted exemptions not challenged by Plaintiff, Defendant's various declarations submitted in support of Defendant's motions are sufficient to establish the requirements for such asserted privileges are met.

1.     **Exemption 1**[18]

The FBI's *Vaughn* Index shows several Bates-stamped pages were WIF based on FOIA Exemption 1, 5 U.S.C. § 552(b)(1), which shields from disclosure "material that is '(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.'" *Osen*, 969 F.3d at 107 (quoting 5. U.S.C. § 552(b)(1)). "In other words, Exemption 1 protects information about national security that is classified as secret pursuant to an Executive order." *Id*. As relevant, "Executive Order 13,526, information can be classified as secret if 'its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security . . . and it pertains to' certain categories of information including 'military plans, weapons systems, or operations,' and 'vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security.'" *Id*. (quoting Classified National Security Information, Exec. Order No. 13,526 §§ 1.2(2), 1.4(a), (g), 75 Fed. Reg. 707, 709 (Dec. 29, 2009) ("EO 13526")).

Defendant argues the FBI properly WIF information pursuant to Exemption 1 which is under the control of the United States Government, is classified pursuant to EO 13526, and requires a classification marking at the Secret level because the unauthorized disclosure of the information reasonably could be expected to cause serious damage to national security. FBI's Supplemental Memorandum at 15. In opposition, Plaintiff argues the FBI failed to justify withholding information pursuant to Exemption 1 by failing to indicate the date or event that will trigger the declassification of

---

[18] The court notes that Exemption 1 is asserted only with regard to pages the FBI WIF upon reprocessing Plaintiff's FBI FOIA Request and is not addressed in Plaintiff's Memorandum or FBI's Memorandum.

the subject documents withheld as required by EO 13526 § 1.5(a) and § 1.6(2), 75

Fed.Reg. 709 (Dec. 29, 2009).  Plaintiff's Supplemental Memorandum at 3.  In

response, Defendant specifies that information was withheld pursuant to Exemption 1

on three pages, Bates-stamped 2785, 2786, and 2787.  Second Bender Declaration ¶ 1.

Defendant explains that these three pages, which were RIP, constitute a single

document, the first page of which bears a classification stamp ("classification stamp")

indicating the classification reason and date, the date of declassification, as well as the

Unique Employee Identification Number ("UEID") of the FBI employee involved in the

classification review of the document.  *Id*.  According to Defendant, when originally

released, the classification stamp was obscured on Bates 2787 which has since been

reprocessed and the classification stamp is now fully revealed.  *Id*.  The classification

stamp shows the information is classified pursuant to EO 13526 § 1.4(b) pertaining to

foreign government information, § 1.4(c) pertaining to intelligence activities, sources and

methods, and § 1.4(d) pertaining to foreign relations or foreign activities.  *Id*. (citing

Bender Declaration ¶¶ 35-50).  The date of classification is "04-16-2018" with

declassification date "12-31-2026."  *Id*.  The FBI employee's UEID, however, remains

withheld pursuant to Exemptions 6 and 7(C).  *Id*.  Not only has the FBI satisfactorily

explained the withholding of information pursuant to Exemption 1, but Plaintiff does not

further challenge the withholdings.

Summary judgment should be GRANTED as to Defendant and DENIED as to

Plaintiff with regard to the information withheld pursuant to FOIA Exemption 1.

2.      **Exemption 3**

Plaintiff challenges the withholding pursuant to Exemption 3 of numerous pages

of information regarding investigation activity in Portland, Oregon, including pen register

order generated two decades ago.[19]  Plaintiff's Memorandum at 3-4; Plaintiff's

Supplemental Memorandum at 4, 11.  Plaintiff explains that although when processing

Plaintiff's FBI FOIA Request, the FBI checked on the status of pen register orders

emanating from the Western District of New York, there is no indication the FBI

attempted to learn the sealing status of the pen register orders issued by the federal

court in Oregon ("the Oregon pen registers"), calling into question the withholding of

such information pursuant to FOIA Exemption 3.  *Id*.

In opposition, Defendant explains that the information withheld pursuant to

Exemption 3 is subject to a sealing order issued by the United States District Court for

the District of Oregon in Case numbers 3:02-073-MISC-CR, 3:01-61-MISC-CR, and

3:00-48-MISC-CR.  Second Bender Declaration ¶ 13.  According to Bender, prior to

filing the Bender Declaration, the FBI confirmed through the Public Access to Court

Electronic Records ("PACER") system the pertinent records, including pen register

order applications and the subsequently issued orders, remained sealed.  *Id*.  After

Plaintiff's Supplemental Memorandum was filed, the FBI conducted a further search,

including the PACER system and the District of Oregon Clerk of Court Office for any

order establishing the relevant Oregon pen register orders have since been unsealed.

*Id*.  Because no such unsealing orders were located, the FBI assumes the Oregon pen

register orders remain sealed.  *Id*.  The FBI is without any discretion to release sealed

---

[19] Neither Plaintiff nor Defendant references any of the 14,007 particular Bates-stamped pages listed in the FBI's *Vaughn* Index Plaintiff challenges as wrongfully withheld pursuant to Exemption 3.

records or information and, accordingly, the FBI continues to withhold the sealed Oregon pen register orders and related information.  *Id*.  Bender further avers that should the FBI eventually determine the sealing orders are lifted while this litigation is pending, the information contained therein remains exempt from disclosure pursuant to Exemptions 3, 6, 7(C), and 7(E).  *Id*.

Exemption 3 protects from disclosure information protected by statute including, as relevant here, pen registers, if the statute "requires that the matters by withheld from the public in such a manner as to leave no discretion on the issue."  5 U.S.C. § 552(b)(3)(A)(i).  As further relevant here the Pen Register Act, 18 U.S.C. § 3123(d), specifically provides "[a]n order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that * * * the order be sealed until otherwise ordered by the court . . . ."  18 U.S.C.A. § 3123(d)(1).  When reviewing an agency's withholding pursuant to Exemption 3, two questions must be considered including: (1) whether the statute in question is a "withholding statute,"[20] and, if so, (2) whether the withheld material qualifies under that statute.  *CIA v. Sims*, 471 U.S. 159, 167 (1985).

Here, Plaintiff does not dispute that the statute on which Defendant relies in withholding pen register information pursuant to Exemption 3, qualifies as a withholding statute for purposes of FOIA.  Nor does Plaintiff dispute the FBI's explanation that the subject Oregon pen register orders remain sealed.  Plaintiff, however, argues that although the sealed pen register orders themselves may be withheld, not all the

---

[20] A "withholding statute" or "exemption statute" refers to a statute for which Exemption 3 requires "particular types of matters to be withheld."  *Spadaro v. United States Customs & Border Prot.*, 978 F.3d 34, 43 (2d Cir. 2020).

information contained in or associated with such orders may be withheld.  Plaintiff's

Memorandum 4; Plaintiff's Supplemental Memorandum at 4.  Within the context of

national security, courts "'must accord substantial weight to an agency's affidavit

concerning the details of the classified status of the disputed record.'"  *ACLU*, 681 F.3d

at 69 (citing *Wolf*, 473 F.3d at 374).  Significantly, Defendant maintains information has

been WIF pursuant to § 102A(i)(1) of the National Security Act of 1947 ("NSA"), as

amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"),

50 U.S.C. § 3024(i)(1), Bender Declaration ¶¶ 55-58, and Plaintiff has not shown

Bender's averments are made in bad faith, nor come forward with any tangible evidence

showing Exemption 3 does not apply to this additional withheld information.  *See*

*Carney,* 19 F.3d at 812 (requiring plaintiff make a showing of "bad faith on the part of

the agency sufficient to impugn the agency's affidavits or declarations, or provide some

tangible evidence that an exemption claimed by the agency should not apply or

summary judgment is otherwise inappropriate.").  Accordingly, Plaintiff has not shown

that the FBI improperly withheld pursuant to Exemption 3 information pertaining to pen

registers.

Defendant also maintains that even if relevant sealing orders are lifted, the

Oregon pen register orders and the related information would nevertheless be withheld

from disclosure pursuant to Exemptions 6, 7(C) and 7(E).  Although Plaintiff does not

include in his argument challenging the withholding of information pursuant to

Exemption 3 any challenge to the additional FOIA exemptions Defendant asserts as

protecting the Oregon pen register orders, these additional exemptions for withholding

are addressed below.  *See* Discussion, *infra*, at 53-81.

With regard to the remaining information withheld by the FBI pursuant to other provisions of Exemption 3, Bender explains that such information consists of federal grand jury information as protected by Fed. R. Crim. Proc. 6(c), Bender Declaration ¶ 54, information regarding intelligence sources and methods for which unauthorized disclosure is prohibited by NSA § 102A(i)(1), 50 U.S.C. § 3024(i)(1), *id*. ¶¶ 55-58, information concerning the Juvenile Justice and Delinquency Prevention Act, 18 U.S.C § 5038, *id*. ¶ 59, and information specifically exempted pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520.  *Id*. ¶¶ 60-61.  Similar to the Oregon pen register orders, Plaintiff has not shown Bender's averments regarding the applicability of the referenced statutes to the withheld information are made in bad faith, nor come forward with any tangible evidence showing Exemption 3 does not apply to this additional withheld information.  *See Carney,* 19 F.3d at 812.  Defendant thus has established the FBI properly withheld additional information pursuant to Exemption 3, including federal grand jury information, information subject to the NSA, information concerning Juvenile Justice and Delinquency Prevention Act, and information specifically exempted by Title III, as well as the Oregon pen register orders.

Accordingly, summary judgment on the FBI's withholding of information pursuant to Exemption 3 should be GRANTED as to Defendant and DENIED as to Plaintiff.

### 3.    Exemption 4

"Exemption 4 shields from mandatory disclosure 'commercial or financial information obtained from a person and privileged or confidential.'"  *Food Mktg Inst. v. Argus Leader Media*, 588 U.S. __; 139 S. Ct. 2356, 2362 (2019) (quoting 5 U.S.C. §

552(b)(4)).  Plaintiff argues nothing in the FBI's *Vaughn* Index indicates the entity that

provided the withheld information to the FBI received any assurance, either express or

implied, that the information would be kept confidential, requiring the information be

disclosed.  Plaintiff's Supplemental Memorandum at 5-6.  In response, Bender avers

that the FBI reprocessed the information responsive to the FBI FOIA request yet

withheld pursuant to Exemption 4, and no longer asserts Exemption 4.  Second Bender

Declaration ¶ 14.  Accordingly, the FBI's Motion and Supplemental Motion, and

Plaintiff's Supplemental Motion should be DISMISSED as MOOT with regard to

Exemption 4.

### 4.    Exemption 5

Both the FBI's Initial *Vaughn* Index and *Vaughn* Index list several documents

WIF pursuant to FOIA Exemption 5 based on the attorney client privilege and

deliberative process privilege.  With regard to the Initial *Vaughn* Index, Defendant

asserts the attorney client privilege protects confidential communications between FBI

employees seeking legal advice from agency attorneys acting in their capacity as

attorneys.  Defendant's Memorandum at 15 (citing Hardy Declaration ¶ 47).  Defendant

also asserts the deliberative process privilege with regard to recommendations,

analyses, speculation, and other non-factual information prepared in anticipation of

agency decision-making. *Id*. at 16 (citing Hardy Declaration ¶ 48).  Plaintiff argues that

the attorney-client privilege does not apply unless the FBI, as the withholding agency,

demonstrates the withheld documents are information the FBI provided its attorneys

with the expectation of secrecy, and which was not known nor disclosed to any third

party.  Plaintiff's Memorandum at 4.  Plaintiff also argues the deliberative process

privilege does not protect the release of factual information which does not expose the deliberations or opinions of agency personnel.  *Id*. at 4-5.  According to Plaintiff, the FBI has not met its burden to sustain withheld materials pursuant to Exemption 5 based on either the attorney-client or deliberative process privilege.  *Id*. at 5.

After reprocessing the documents responsive to the FBI FOIA Request, the FBI's *Vaughn* Index listed additional documents withheld pursuant to Exemption 5 based on either the attorney-client and deliberative process privileges.[21]   Defendant's Supplemental Memorandum at 23-24 (citing Bender Declaration ¶¶ 68-71).  Plaintiff argues Defendant has failed to sustain its burden of proof under Exemption 5 with regard to either the attorney-client or deliberative process privilege.  Plaintiff's Supplemental Memorandum at 6-7.  In further support of its withholding of information pursuant to Exemption 5, Defendant relies on further detailed explanations for the withholding provided in the Second Bender Declaration.

"FOIA Exemption 5 . . . exempts 'inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency' from the disclosure otherwise required under the Act."  *Brennan Ctr. For Justice v. DOJ*, 697 F.3d 184, 194 (2d Cir. 2012) (quoting 5 U.S.C. § 552b(5)).  "Courts have interpreted Exemption 5 to encompass traditional common-law privileges against disclosure, including the . . . deliberative process and attorney-client privileges."  *Nat'l Council of La Raza v. U.S. DOJ*, 411 F.3d 350, 356 (2d Cir.2005) (citing *Grand Cent. P'ship, Inc.,* 166 F.3d at 481).

---

[21] Neither Plaintiff nor Defendant specifies in the papers which Bates-stamped pages are withheld pursuant to Exemption 5.

The court first addresses the attorney-client privilege which "protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." *Brennan Ctr. for Justice at New York Univ. School of Law v. U.S. Dep't of Just.*, 697 F.3d 184, 207 (2d Cir. 2012) (quoting *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011)).  "The privilege does not allow an agency to withhold a document merely because it is a communication between the agency and its lawyers." *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 267 (D.D.C. 2004).  To prevail on summary judgment, Defendant must submit supporting documentation substantiating five essential elements including

> (1) the holder of the privilege is, or sought to be, a client; (2) the person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) the privilege has been claimed by the client. Additionally, [(5)] a "fundamental prerequisite to the assertion of the privilege" is "confidentiality both at the time of the communication and maintained since."

*Reinhard v. Dep't of Homeland Sec.*, 2019 WL 3037827, at *11–12 (D.D.C. July 11, 2019) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153–54 (D.D.C. 2012)).

It is the defendant's burden to prove through "detailed and specific information," the withheld information is within the attorney-client privilege.  *Id*.  The Government must establish that the communication was made in confidence and that the confidence has been kept.  *Brennan Ctr. for Just. at New York Univ. Sch. of L.*, 697 F.3d at 207 ("As with respect to the lawyer-client privilege in other contexts, it is vital to [such] a claim . . . that the communications between client and attorney were made in confidence and have been maintained in confidence." (internal quotation marks and citation omitted)).

"The agency bears the burden of showing that the information exchanged was confidential.  That is, the agency must show that it supplied information to its lawyers with the expectation of secrecy and was not known by or disclosed to any third party." *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 811 F. Supp. 2d 713, 736 (S.D.N.Y. 2011) (internal quotation marks and citation omitted)).  "[T]he test is whether the information was 'circulated no further than among those members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication.'" *Cause of Action Inst. v. U.S. Dep't of Just.*, 330 F. Supp. 3d 336, 351 (D.D.C. 2018) (quoting *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 863 (D.C.Cir.1980)).  "The privilege also does not apply to "a government attorney's advice on political, strategic, or policy issues." *Austin Sanctuary Network v. U.S. Immigration & Customs Enforcement*, 2022 WL 4356732, at *25 (S.D.N.Y. Sept. 19, 2022 (quoting *Cause of Action Inst. v. U.S. Dep't of Just.*, 330 F. Supp. 3d 336, 347 (D.D.C. 2018)).

As noted above, Discussion, *supra*, at 49 n. 19, neither Plaintiff nor Defendant specifies for which of the 14,007 pages the FBI identified as responsive to Plaintiff's FBI FOIA Request the FBI asserts Exemption 5 based on the attorney-client privilege.  The court's review of the FBI's *Vaughn* Index shows 37 Bates-stamped pages were withheld as protected by the attorney-client privilege.  The FBI's *Vaughn* Index descriptions of such documents are, however, woefully inadequate to sustain Defendant's burden regarding the privilege.  For example, Bates-stamped page 8518 is listed among 39 pages described as "Undated FBI Report concerning investigative efforts in the ALF/ELF investigations."  FBI's *Vaughn* Index, Bates-stamp 8518 (Dkt. 70-1 at 376).

This description does not establish who made the communication, much less that the communication was made to a member of the bar or his subordinate, that the communication relates to any facts of which the attorney was informed by the client, and outside the presence of strangers, that the client claimed any privilege, and any such confidentiality was established when the communication was made, and since maintained.  *Reinhard*, 2019 WL 3037827, at *11–12.

Bender subsequently provides a more detailed explanation for the attorney-client privilege, averring that Bates-stamped pages 8454-67[22] are communications between an FBI Special Agent in Charge ("SAC"), in an FBI field office wherein the SAC submitted an investigative proposal to the field office's Chief Division Counsel ("CDC"), seeking advice as to the proposal's legality, and the CDC, in his role as counsel to the FBI, responded by mail to the SAC with his assessment and recommendations. Second Bender Declaration ¶ 17.  A similarly detailed explanation is provided for the assertion of the attorney-client privilege to Bates-stamped pages 11932-96,[23] *i.e.*, that the documents pertain to FBI Special Agents ("SA"), requests for advice as to the legality of a proposed investigation.  *Id*.  With regard to both sets of Bates-stamped documents, Bender avers the communications seek or provide legal advice, were made between clients and attorneys in confidence, and that such confidence has been maintained.  Second Bender Declaration ¶ 18.  Accordingly, Defendant has established these nine documents are protected by the attorney-client privilege.

---

[22] The court notes that within this tranche of 33 Bates-stamped pages, the attorney-client privilege is asserted only with regard to four pages.  *See* Dkt. 70-1 at 376..

[23] The court notes that within this tranche of 65 Bates-stamped pages, the attorney-client privilege is asserted only with regard to five pages.  See Dkt. 70-1 at 486-87.

Defendant has, however, failed to establish the attorney-client privilege shields from disclosure the remaining 28 documents for which the privilege is asserted. Accordingly, the privilege does not apply to those documents and may not be relied on to withhold such documents from disclosure in response to the FBI FOIA Request.[24]

Summary judgment regarding the assertion FOIA Exemption 5 based on the attorney-client privilege should be GRANTED in part and DENIED in part as to Plaintiff and Defendant.

Defendant withheld other documents pursuant to Exemption 5 based on the deliberative process privilege which "protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA,* 449 F.3d 141, 151 (D.C.Cir.2006). "An inter— or intra-agency document may be withheld pursuant to the deliberative process privilege if it is: (1) 'predecisional,' *i.e.,* 'prepared in order to assist an agency decisionmaker in arriving at his decision,' and (2) 'deliberative,' *i.e.,* "actually ... related to the process by which policies are formulated." *Nat'l Council of La Raza*, 411 F.3d at 356 (quoting *Grand Cent. Partnership, Inc*., 166 F.3d at 482 (internal quotation marks and citations omitted)). "As a general matter, notes taken by government officials often fall within the deliberative process privilege*." Baker & Hostetler LLP v. U.S. Dep't of Com*., 473 F.3d 312, 321 (D.C. Cir. 2006) (citing *Coastal States Gas Corp.*, 617 F.2d at 866 (the deliberative process privilege covers "subjective documents which reflect the personal opinions of the writer rather than the policy of the agency")). "Notes generally are selective and deliberative—and routine public

---

[24] A plain review of the FBI's Vaughn Index establishes that for most of the documents for which Plaintiff asserts the attorney-client privilege Defendant asserts additional FOIA exemptions which may continue to protect the documents from disclosure.

disclosure of meeting notes and other notes would hinder government officials from debating issues internally, deter them from giving candid advice, and lower the overall quality of the government decisionmaking process."  *Id.*, 473 F.3d at 321-22 (citing *Judicial Watch, Inc. v. Clinton,* 880 F.Supp. 1, 13 (D.D.C.1995) ("Disclosure of this type of deliberative material inhibits open debate and discussion, and has a chilling effect on the free exchange of ideas."); *cf. Bureau of Nat'l Affairs, Inc. v. Dep't of Justice,* 742 F.2d 1484, 1494 (D.C.Cir.1984) (recognizing possibility that notes might be withheld under Exemption 5 because of "the potential chilling effect that disclosure of handwritten notes might have on the activities of government employees")).  The privilege does not, however, as a general matter, cover "purely factual" material.  *Hopkins,* 929 F.2d at 85 (citations omitted).  The court thus examines whether the record substantiates Defendant's withholding of materials pursuant to Exemption 5 as protected by the deliberative process privilege.

As with the attorney-client privilege, neither party specifically references or otherwise identifies any of the 14,007 pages listed on the FBI's *Vaughn* Index for which Defendant asserts the deliberative process privilege; the court's perusal of such index establishes the privilege is asserted with regard to 48 separately Bates-stamped pages. Further, although the FBI's *Vaughn* Index indicates the withheld information for which the deliberative process is asserted includes email communications, draft materials, talking points, and handwritten notes, Defendant's Supplemental Memorandum at 24-25, Plaintiff challenges only the withholding of the handwritten notes.  Plaintiff's Supplemental Memorandum at 7.

Defendant argues the materials withheld as protected by the deliberative process privilege include handwritten interview notes of an FBI Special Agent ("SA"). Second Bender Declaration ¶ 19.  According to Defendant, "[h]andwritten notes are inherently deliberative because they by nature represent the first phase in an editing process that may add, excise, or refine raw information captured by an SA during an interview."  *Id*. ¶ 20.  Defendant further explains the release of such draft handwritten interview notes could result in such foreseeable harm as having a chilling effect on an SA's willingness to document thoughts, impressions, interpretations, and investigative strategies thereby hampering preparation of the final official report, resulting in reports that are less comprehensive and thus less helpful to the FBI's investigative process.  *Id*. ¶ 20.  Defendant further avers the release of handwritten notes would reveal an SA's initial deliberations later determined not relevant or effective, as well as create public confusion.  *Id*.  A plain review of the descriptions of the documents listed on the FBI's *Vaughn* Index as protected by the deliberative process privilege, however, shows all such pages are described either as e-mails or other electronic communications.  *See*, *e.g.*, FBI's *Vaughn* Index, Bates-stamped pages 12216, 12218, 12229-22, 12225-28, 12230 (Dkt. 70-1 at 497) (described as "emails" with no mention of interview notes, handwritten or otherwise); Bates-stamped page 12092 (Dkt. 70-1 at 494) ("EC[25] dated 10/24/2003 recommending adding proposed operation to upcoming agenda").

---

[25] "EC" is an acronym for "Electronic Communications" which are described in the glossary accompanying the FBI's Vaughn Index as

   replac[ing] the traditional FBI correspondence (i.e., Memoranda and Letters) as the primary vehicle of correspondence within the FBI.  The purpose of an EC is to communicate within the FBI in a consistent format that can be uploaded by the originating Division or office, transmitted, and downloaded by recipient Divisions or offices within the FBI's internal computer network. These forms are often utilized to record and disseminate intelligence/investigative information and for general investigation administration purposes.

Dkt. 70-1 at 490.

Significantly, none of the Bates-stamped pages listed in the FBI's *Vaughn* Index as withheld pursuant to the deliberative process privilege is described as including any handwritten notes whether of an interview by an FBI SA or otherwise.

Defendant thus has failed to establish any of the Bates-stamped pages to which Defendant asserts the deliberative process privilege applies are indeed protected by such privilege.  Accordingly, summary judgment with regard to the deliberative process privilege asserted pursuant to Exemption 5 should be GRANTED as to Plaintiff and DENIED as to Defendant.

### 5.    FOIA Exemption 7 Threshold

Both ATF and FBI withheld from their respective FOIA Responses "records or information compiled for law enforcement purposes . . .."  pursuant to more than one of the six separate categories of harm exempted from disclosure by 5 U.S.C. § 552(b)(7) ("Exemption 7").  Plaintiff argues the records and information he seeks pertain to a two-year domestic terrorism investigation of Plaintiff by the FBI from 2012 to 2014, which Plaintiff maintains was pretextual to a violation of Plaintiff's exercise of his First Amendment rights.  Plaintiff's Memorandum at 5; Plaintiff's Affidavit ¶3.  According to Plaintiff, the investigation commenced after his former tenants, Upham and Lloyd, who had a vendetta with Plaintiff, contacted the FBI and complained about Plaintiff's lectures and presentations at the book store.  Plaintiff's Memorandum at 5; Plaintiff's Affidavit ¶¶ 6, 9.  Subsequently, Plaintiff was subjected to physical surveillance which included the placement of a mail cover at his residence, and sending undercover agents and informants to the book store to monitor events which were protected by the First Amendment.  Plaintiff's Memorandum at 5.

"The threshold requirement for qualifying under Exemption 7 turns on the purpose for which the document sought to be withheld was prepared." *F.B.I. v. Abramson*, 456 U.S. 615, 624 (1982).  In the instant case, the ATF and FBI assert five of the six harms to justify withholding materials responsive to the ATF and FBI FOIA Requests.  Specifically, ATF asserts Exemptions 7(C), (E) and (F), *see* ATF's Memorandum at 12-17; while FBI asserts Exemptions 7(A), (C), (D), and (E).  FBI's Memorandum at 17-23; FBI's Supplemental Memorandum at 26-34.  Both ATF and FBI assert such withheld documents were compiled for law enforcement purposes. Chisholm Declaration ¶¶ 19-20; Siple Declaration ¶¶ 22-23; Hardy Declaration ¶¶ 49-50; Bender Declaration ¶¶ 72-73.  Accordingly, both ATF and FBI have met the threshold requirement for asserting FOIA Exemption 7.  *See Voinche v. FBI*, 46 F.Sup.2d 26, 31 (D.D.C. 1999) (holding FOIA Exemption 7 threshold requirement met where declarations submitted in support of Exemption 7 stated the withheld records were compiled for law enforcement purposes).

Summary judgment on this argument should be GRANTED in favor of Defendant and DENIED as to Plaintiff.

### a.    Exemption 7(A)

The FBI withheld from disclosure information pursuant to FOIA Exemption 7(A). Exemption 7(A) [26] pertains to any law enforcement record the disclosure of which "could reasonably be expected to interfere with enforcement proceedings . . .."  5 U.S.C. § 552(b)(7)(A).  Exemption 7(A) is intended to "prevent disclosures which might

---

[26] Neither Plaintiff nor Defendant specifies which Bates-stamped pages were withheld pursuant to Exemption 7(A), leaving the court to scour the more than 14,000 pages of the FBI's *Vaughn* Index to locate such pages.

prematurely reveal the government's cases in courts, its evidence and strategies, or the nature, scope, and focus of investigations." *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000).  "Another recognized goal of Exemption 7(A) is to prevent litigants from identifying and intimidating or harassing witnesses." *Id.* (citation omitted). "To properly withhold records under 7(A), the government must first identify either ' 'a concrete prospective law enforcement proceeding' ' or an enforcement proceeding that is 'pending or reasonably anticipated.'" *Anand v. U.S. Dep't of Health & Hum. Servs.*, 2023 WL 2646815, at *16 (D.D.C. Mar. 27, 2023) (quoting *Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 386 (D.C. Cir. 2007) (quoting *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986))).  "Second, the government must show that disclosure 'could reasonably be expected perceptibly to interfere" with the enforcement proceeding.'" *Id*. (quoting *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989)).  *See also Amnesty Int'l USA v. C.I.A.*, 728 F. Supp. 2d 479, 525 - 27 (S.D.N.Y. 2010) ("To fit within Exemption 7(A), 'the government must show that (1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm.'") (quoting *Azmy v. U.S. Dep't of Def.,* 562 F.Supp.2d 590, 605 (S.D.N.Y.2008) (further internal quotation omitted)).

In the instant case, Plaintiff argues FBI improperly asserted Exemption 7(A) because Defendant has not asserted there is an ongoing law enforcement proceeding and has not established any prospective law enforcement proceeding is pending or reasonably anticipated.  Plaintiff's Supplemental Memorandum at 7-8.  In opposition, Defendant relies of Bender's averment that

> The FBI protected investigations in the records at issue which are unknown, meaning not publicly acknowledged by the FBI, and which could be hindered by

the target of the investigation being known.  These investigations are still ongoing and are of continued investigative value to the FBI and the release of this information would reveal non-public information concerning pending law enforcement procedures, to include the existence of non-public investigations or proceedings.  The FBI determined release of any of this material would alert criminals to otherwise non-public ongoing investigations, provide criminals with information about the government's investigation/enforcement strategies in ongoing matters, allow them to predict and potentially thwart these strategies, and/or allow them to discover/tamper with witnesses and/or destroy evidence.  As such, revealing this information could reasonably be expected to interfere with pending enforcement proceedings.

Second Bender Declaration ¶ 23.

Bender's averments, however, are insufficient to support the withholding of information

pursuant to Exemption 7(A).

> "[U]nder exemption 7(A) the government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding.  Rather, federal courts may make generic determinations that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings."

*Radar Online LLC v. F.B.I.*, 2023 WL 6122691, at *10 (S.D.N.Y. Sept. 19, 2023)

(quoting *Radcliffe v. I.R.S.*, 536 F. Supp. 2d 423, 437 (S.D.N.Y. 2008) (quoting *Barney*

*v. I.R.S*., 618 F.2d 1268,1273 (8th Cir.1980)), *aff'd*, 328 F. App'x 699 (2d Cir. 2009)).

"'Because generic determinations are permitted, the government need not justify its

withholdings document-by-document; it may instead do so category-of-document by

category-of-document.  The government may not, however, make its justifications file-

by-file.'"  *Id.* (quoting *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64,

67 (D.C. Cir. 1986) ("Congress did not authorize [a] 'blanket exemption' for 'all records

relating to an ongoing investigation.'") (quoting *Campbell v. Department of Health and*

*Human Services*, 682 F.2d 256 (D.C. Cir.1982)).  In the instant case, a review of the

FBI's Vaughn Index establishes the FBI engaged in a document-by-document review

within each file that is insufficient to support the withholding of information pursuant to Exemption 7(A).

Specifically, the FBI did not identify any particular investigation and Defendant references no caselaw supporting Bender's averment that an "unknown investigation" means "not publicly acknowledged," and the court's research has found none.  Nor has Defendant explained what is considered "investigative value."  Further, as noted, *see* Discussion, *supra*, at 62 n. 26, neither Plaintiff nor Defendant has specified which pages of information were withheld pursuant to Exemption 7(A).  The court's review of the FBI's *Vaughn* Index reveals Bates-stamped page 12 (Dkt. 70-1 at 42), withheld pursuant to Exemption 7(A), is described as "Document describing ARISSA – provides details on the ARISSA organization and its founders (Leslie James Pickering, Jr. and Craig Rosebraugh); dated 2/24/2006."  Significantly, there is no indication in Bender's averments of an ongoing or prospective investigation into the ARISSA organization.  See *Anand*, 2023 WL 2646815, at *16 (discussing need the government to identify a prospective law enforcement proceeding is "concrete," "pending," or "reasonably anticipated").  Other pages include Bates-stamped pages 21 through 25, each of which is described as an "FD-302[27] for a third party," for dates 1/13/2006, 12/10/2005, and 12/22/2005.  Dkt. 70-1 at 42.  In short, these descriptions are woefully inadequate to establish the withheld information would interfere with any prospective or ongoing investigation so as to support their withholding pursuant to Exemption 7(A).  *See*

---

[27] According to the glossary accompanying this portion of the FBI's *Vaughn* Index, "FD-302s are internal FBI forms in which evidence is often documented, usually the results of FBI interviews.  Such evidence and/or interview information may later be used as testimony or evidence in court proceedings/trials.  Additionally, these evidence/interview forms are often incorporated in other FBI documents which disseminate intelligence/investigative information, and can be utilized to set leads in furtherance of the FBI's investigative efforts."  Dkt. 70-1 at 41.

*Campbell v. Department of Health and Human Services*, 682 F.2d 256, 264-65 (D.C.Cir. 1982) (recognizing a requested agency cannot support withholding information pursuant to Exemption 7(A) based on general and conclusory statements regarding the effect of disclosing the information).

Summary judgment with regard to the FBI's assertions of Exemption 7(A) should be GRANTED as to Plaintiff and DENIED as to Defendant.

### 6.     Exemptions 6 and 7(C)

Both the ATF and the FBI withheld information pursuant to FOIA Exemptions 6 and 7(C) which protect against unwarranted invasions of privacy.  ATF *Vaughn* Index, *passim*; FBI's *Vaughn* Index, *passim*.  In support of summary judgment, Defendant argues both the ATF and FBI withheld only records and information pertaining to FBI SAs the release of which was balanced against the public's interest in disclosure which was determined to be outweighed by each SA's individual privacy interests.  ATF's Memorandum at 12-15; FBI's Memorandum at 17-19.  With regard to the information withheld pursuant to Exemptions 6 and 7(C), Plaintiff clarifies he seeks only the names of FBI SAs involved in the domestic terrorism probe against Plaintiff between 2012 and 2014 for which Plaintiff maintains the privacy interests of such SAs do not outweigh the significant public interesting regarding how the FBI handled its investigation of Plaintiff. Plaintiff's Memorandum at 6-8.[28]  Defendant further argues the release of information withheld pursuant to Exemptions 6 and 7(C), including names, social security numbers, driver's license numbers, and dates of birth, as the subject SAs' privacy interest in such information outweighs the public's interest in the same information, would constitute an

---

[28] Plaintiff does not challenge the ATF's withholding of this information.

unwarranted invasion of privacy, and could subject the SAs to violence or other harm.

Defendant's Supplemental Memorandum at 27-30.  In reply, Plaintiff argues that public

interest in the FBI's investigation of Plaintiff remains high as evidenced by Plaintiff being

recently featured on a BBC podcast and under contract for a docuseries, as well as that

Plaintiff continues to make public presentations and speaking events.  Plaintiff's

Supplemental Memorandum at 8.  Plaintiff also maintains Defendant's argument that

the release of information identifying FBI SAs involved in the investigations into Plaintiff

may result in the SAs becoming the targets of violence or other revenge is too

speculative to support the withholding of such information.  *Id*. at   In further opposition

to Plaintiff's Motions and in further support of Defendant's Motions, Defendant relies on

Bender's averments in the Second Bender Declaration giving examples of events where

FBI SAs were the targets of retaliation, violence, or harassment based on their

involvement in FBI investigations, Second Bender Declaration ¶¶ 24-25, and reiterating

that no public interest would be served by disclosing the identities of such agents which

would not significantly increase the public's understanding of operations and activities.

*Id*. ¶ 25.  Bender further avers the release of information identifying an FBI Professional

Staff employee involved in the classification review of the records responsive to

Plaintiff's FBI FOIA Request is similarly unnecessary.  *Id*. ¶¶ 26-27.

       As relevant here, FOIA Exemption 6 exempts from disclosure "personal and

medical files and similar files the disclosure of which would constitute a clearly

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  To determine whether

identifying information may be withheld pursuant to Exemption 6, the court "must: (1)

determine whether the identifying information is contained in 'personnel and medical

files and similar files;' and (2) balance the public need for the information against the individual's privacy interest in order to assess whether disclosure would constitute a clearly unwarranted invasion of personal privacy." *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 291 (2d Cir. 2009) (citing and quoting *Wood v. F.B.I.,* 432 F.3d 78, 86 (2d Cir. 2005)). "The determination of whether Exemption 6 applies requires balancing an individual's right to privacy against the preservation of FOIA's basic purpose of opening agency action to the light of public scrutiny." *Id.* (citing *Dep't of the Air Force v. Rose,* 425 U.S. 352, 372 (1976) ("Exemption 6 does not protect against disclosure every incidental invasion of privacy—only such disclosures as constitute 'clearly unwarranted' invasions of personal privacy.")). "'Only where a privacy interest is implicated does the public interest for which the information will serve become relevant and require a balancing of the competing interests.'" *Id.* (quoting *Fed. Labor Relations Auth. V. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 509 (2d Cir. 1992)). To prevail over the public interest in disclosure, "[a]n invasion of more than a *de minimis* privacy interest protected by Exemption 6 must be shown to be 'clearly unwarranted.'" *Id.* "Under Exemption 6, therefore, the government's burden in establishing the required invasion of privacy is heavier than the burden in establishing invasion of privacy under Exemption 7(C)." *Id.* (quoting *Ray,* 502 U.S. at 172.

FOIA Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . . 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) may be invoked where no public interest would be served by disclosure

of information that implicates privacy interests. *U.S. Dep't of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 775 (1989) ("*RCFP*") (denying disclosure of contents of an FBI rap sheet to third party because the disclosure reasonably could be expected to constitute an invasion of personal privacy within the meaning of FOIA's law enforcement exemption).  In particular, in *RCFP*, the court determined that although there may be "some public interest in providing interested citizens with answers to their questions" about the subject of the FOIA request, such as deciding whether to offer the subject employment, to rent him a house, or to extend him credit, "that interest falls outside the ambit of the public interest that the FOIA was enacted to serve."  *RCFP*, 489 U.S. at 775.  "Thus whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to "the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny,' rather than on the particular purpose for which the document is being requested."  *Id*. at 772 (quoting *Rose*, 425 U.S. at 372).

The Second Circuit Court of Appeals recognizes that government investigative personnel may be subject to harassment or embarrassment if their identities are disclosed.  *Wood*, 432 F.3d at 78 (citing *Halpern v. FBI,* 181 F.3d 279, 297 (2d Cir.1999) (holding that FBI agents and other government employees have an interest against the disclosure of their identities to the extent that disclosure might subject them to embarrassment or harassment in their official duties or personal lives); and *Massey v. FBI,* 3 F.3d 620, 624 (2d Cir.1993) (same)).  Accordingly, "[t]his interest against possible harassment and embarrassment of investigative personnel raises a measurable privacy

concern that must be weighed against the public's interest in disclosure." *Id.*  When

determining the public's interest in disclosure of a government employee's identity,

several factors must be considered "including the employee's rank and whether the

information sought sheds light on government activity."  *Id.* (citing *Perlman v. U.S. Dep't

of Justice*, 312 F.3d 100, 107 (2d Cir. 2002) (applying a five-factor test where the

government employee is the subject of an investigation), *vacated*, 541 U.S. 970 (2004),

*reaffirmed*, 380 F.3d 110 (2d Cir. 2004)).   Further, "where there is a privacy interest

protected by Exemption 7(C) and the public interest being asserted is to show that

responsible officials acted negligently or otherwise improperly in the performance of

their duties, the requester must establish more than a bare suspicion in order to obtain

disclosure.  Rather, the requester must produce evidence that would warrant a belief by

a reasonable person that the alleged Government impropriety might have occurred."

*Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 174 (2004) (citing *Ray*, 502

U.S. at 179).

     Here, Plaintiff references no evidence of government wrongdoing that the subject

FBI SAs, in the course of investigating Plaintiff, were negligent or biased in the

performance of their duties such that releasing information identifying the FBI SAs

involved in the investigations of Plaintiff is not required.  Under these circumstances, the

disclosure, without any indication of wrongdoing, would be a "clearly unwarranted

invasion of privacy," 5 U.S.C. § 552(b)(6), supporting the withholding of the information

pursuant to FOIA Exemption 6.  Further, because under Exemption 6 "the government's

burden in establishing the required invasion of privacy is heavier than the burden in

establishing invasion of privacy under Exemption 7(C)," the determination that

information was properly withheld under Exemption 6 requires finding the same information was properly withheld under Exemption 7(C).  *Associated Press*, 554 F.3d at 291.

Accordingly, summary judgment with regard to identification information of FBI SAs involved in the investigation of Plaintiff from 2012 to 2014 and withheld pursuant to FOIA Exemptions 6 and 7(C) should be GRANTED as to Defendant and DENIED as to Plaintiff.  Further, insofar as Plaintiff does not challenge the withholding of additional information withheld pursuant to Exemptions 6 and 7(C), summary judgment should be GRANTED in favor of Defendant and DENIED as to Plaintiff.

### 7.  Exemption 7(D)

The FBI withheld information pursuant to FOIA Exemption 7(D) which exempts from disclosure

> [R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source . . . .

5 U.S.C. § 552(b)(7)(D).

According to Defendant, the information redacted pursuant to Exemption 7(D) in response to Plaintiff's FBI FOIA Request concerns the second clause, *i.e.*, a criminal investigation conducted by the FBI and includes information provided by confidential sources who, if identified, "would forever eliminate that source as a future means of obtaining information," and would have "a chilling effect on the activities and cooperation of other sources" resulting in the "eliminat[ion of] one of the FBI's most

important means of collecting information and thereby hamper law enforcement efforts

to detect and apprehend individuals engaged in the violation of federal criminal laws."

FBI's Memorandum at 20-22.  In opposition, Plaintiff argues he questions only the

decision to redact the names of Upham and Lloyd and the information they provided the

FBI while acting as Confidential Human Sources ("CHS"), which status Plaintiff

maintains was revealed when Upham cooperated with the media for a story published in

The Buffalo News, such that Upham waived any assurances of confidentiality she and

Lloyd may have received from the FBI.  Plaintiff's Memorandum at 8.  Defendant does

not respond to Plaintiff's argument regarding the redaction of the names of Upham and

Lloyd, but essentially repeats the arguments initially made with regard to the withholding

of information pursuant to Exemption 7(D), other than to assert that the release of one

source's identity can have a "chilling effect" on the cooperation of other sources,

Defendant's Supplemental Memorandum at 30-32 (citing Bender Declaration ¶¶ 95-96),

and that such identifying information extends to, *inter alia*, source symbol numbered

informants, confidential source file numbers, confidential source symbol numbers, and

names as well as information furnished by foreign and local law enforcement

authorities.  *Id*. at 32-33 (citing Bender Declaration ¶¶ 97-119).  In response, Plaintiff

explains that he is not seeking such confidential source symbol and file numbers, and

concedes information furnished by foreign and local law enforcement authorities may be

withheld, but maintains the status of Upham and Lloyd as CHSs is now "open and

notorious" such that their identities and the information they supplied to the FBI must be

released.  Plaintiff's Supplemental Memorandum at 9.  In further support of withholding

information pursuant to Exemption 7(D), Defendant relies on Bender's averment that the

FBI has not withheld any records responsive to Plaintiff's FBI FOIA Request provided by confidential sources previously acknowledged by the FBI.  Second Bender Declaration ¶¶ 28-30.

As discussed, Discussion, *supra*, at 17, affidavits submitted by an agency regarding the agency's search for documents responsive to a FOIA request "are accorded a presumption of good faith" so long as such affidavits "are adequate on their face." *Nat. Res. Def. Council, Inc.*, 36 F. Supp.3d at 398.  Further, once the agency has met its burden, to show that a claimed exemption should not apply or that summary judgment based on the affidavit is otherwise inappropriate, "the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence" contradicting the exemption's application.  *Id.* (citations omitted).  In the instant case, Bender avers the individuals whose identities and the information provided were withheld pursuant to Exemption 7(D) as CHSs was justified by the FBI's need to protect such sources and preserve the FBI's ability to recruit and maintain reliable sources to successfully investigate crimes.  Bender Declaration ¶¶ 95-96; Second Bender Declaration ¶¶ 29-30. Although Plaintiff maintains Upham and Lloyd have waived any confidentiality by communicating with the media, "'the assurance of confidentiality is not waived once information withheld under Exemption 7(D) appears in the public domain.'"  *Ramaci*, 568 F.Supp.3d at 393 (quoting *Heimerle v. U.S. Dep't of Just.*, 1985 WL 372, at *3 (S.D.N.Y. Mar. 5, 1983)).  Nor will an informant's revelation to a requester waive the agency's right to withhold the source's identity as confidential under Exemption 7(D). *Id.* (citing *Reiter v. Drug Enf't Admin*, 1997 WL 470108, at *6 (D.D.C. Aug. 13, 1997),

*aff'd*, 1998 WL 202247 (D.C.Cir. 1998)).  Additionally, Plaintiff has not provided anything contradicting Bender's averments regarding the critical need to withhold such information from disclosure to ensure the FBI continues to have access to information provided by the various confidential sources under express or implied assurances of confidentiality.  *Nat. Res. Def. Council, Inc.*, 36 F. Supp.3d at 398.  Accordingly, summary judgment should be GRANTED in favor of Defendant and DENIED as to Plaintiff based on the FBI's withholding of information regarding Upham and Lloyd pursuant to Exemption 7(D).

### 8. Exemption 7(E)

Both the ATF and the FBI withheld information pursuant to FOIA Exemption 7(E) which exempts

> [R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . .

5 U.S.C. § 552(b)(7)(E).

"Exemption (b)(7)(E) covers investigatory records that disclose investigative techniques and procedures not generally known to the public."  *Doherty*, 775 F.2d at 52 & n. 4. "The Second Circuit has explained that, as used in Exemption 7(E), a 'technique' is 'a technical method of accomplishing a desired aim' and a 'procedure' is 'a particular way of doing something or going about the accomplishment of something.'"  *American Civil Liberties Union Foundation v. Dep't of Homeland Security*, 243 F.Supp.3d 393, 402 (S.D.N.Y. 2017) (quoting *Allard K. Lowenstein Intern. Human Rights Project v. Dep't of Homeland Security*, 626 F.3d 678, 681 (2d Cir. 2010)).  "Accordingly, to invoke

Exemption 7(E) here, the agency must justify its assertion that its practice . . . at issue in this motion actually shows a 'technique' or 'procedure' and that it is not already known to the public."  *Id*.  Nevertheless, "[w]hile the government retains the burden of persuasion that the information is not subject to disclosure under FOIA, 'a party who asserts that the material is publicly available carries the burden of production on that issue.'"  *Inner City Press/Community on the Move v. Board of Governors of the Federal Reserve System*, 463 F.3d 239, 245 (2d Cir. 2006) (quoting *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C.Cir. 1992)).  Somewhere within either the FBI's *Vaughn* Index or Defendant's affidavit, Defendant must provide, "a sufficiently specific link" between disclosing the particular withheld information, *i.e.*, techniques and procedures, and revealing how, and to what extent, the Defendant relies on such information in its investigations.  *Island Film, S.A. v. Dep't of the Treasury*, 869 F.Supp.2d 123, 138 (D.D.C. 212).  "'[I]t is well-established that 'an agency does not have to release all details concerning law enforcement techniques just because some aspects of them are known to the public.'"  *Kuzma v. U.S. Dep't of Justice*, 2016 WL 9446868, at *12 (W.D.N.Y. Apr. 18, 2016) (quoting *Bishop*, 45 F.Supp.3d at 391).  Moreover, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding" and "only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law."  *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011) (internal quotation marks, brackets, and citation omitted).

In the instant case, Defendant argues in support of summary judgment that the ATF's Disclosure Division withheld "sensitive, non-public surveillance techniques related

to how ATF conducts explosion investigations."  ATF's Memorandum at 16 (citing Chisholm Declaration ¶¶ 35-36).  According to the ATF, the withheld information includes the circumstances and requirements under which these types of law enforcement techniques were used, the timing of their use, and the specific locations where they are employed which, if disclosed, would reveal the ATF's strategy in implementing such techniques, thereby reducing their effectiveness and place law enforcement and the public in danger.  *Id*.  Plaintiff has not provided anything contradicting Chisholm's averments regarding the critical need to withhold such information from disclosure to ensure the continued effectiveness of such techniques. *Nat. Res. Def. Council, Inc.*, 36 F. Supp.3d at 398.  Accordingly, summary judgment on this issue should be GRANTED in favor of Defendant and DENIED as to Plaintiff.

With regard to the FBI, Defendant similarly asserts that the FBI withheld responsive documents pursuant to Exemption 7(E) containing information "applied to non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement and intelligence gathering missions, and also to non-public details about techniques and procedures that are otherwise known to the public."  FBI's Memorandum at 22-23 (citing Hardy Declaration ¶¶ 84-100).  Plaintiff asserts no challenge to the ATF's withholding of information pursuant to Exemption 7(E), but with regard to the FBI, Plaintiff argues he does not contest the FBI's decision to withhold information about specific law enforcement and intelligence gathering techniques, but only the FBI's reliance on Exemption 7(E) "to redact its use of database search results located through non-public databases, targets of pen register/trap and trace devices, names of FBI squads and units, and monetary payments."  Plaintiff's Memorandum at 9.

According to Plaintiff, insofar as the FBI relied on public database search results to gather information, such information gathering techniques are not protected from disclosure pursuant to Exemption 7(D), *id*. at 10, nor are the targets of pen register/trap and trace devices, as well as the names of FBI squads and units, and monetary payments related to the types of investigative techniques exempt under 7(E).  *Id*. at 10-11.  In response, Defendant argues Exemption 7(E) excludes any documents that were both compiled for law enforcement purposes, and either would disclose law enforcement investigation or prosecution techniques and procedures or guidelines which disclosure could reasonably be expected to risk circumvention of the law. Defendant's Supplemental Memorandum at 22-24 (citing *Knight First Amend. Inst. at Columbia Univ.*, 30 F.4th at 327, and Bender Declaration ¶¶ 121-48).  Plaintiff responds these arguments by Defendant are neither logical nor plausible because the asserted arguments address only "sensitive law enforcement techniques and procedures used for criminal and national security investigations and monetary amounts requested by FBI personnel and/or paid by the FBI in order to implement particular investigative techniques," which Plaintiff maintains is information not within the scope of Exemption 7(E).  Plaintiff's Supplemental Memorandum at 9-10.  Defendant relies on Bender's averments that despite Plaintiff's arguments to the contrary, "the FBI asserted Exemption b(7)(E) to protect information that relates to investigative techniques and procedures or would reveal [protected] techniques and procedures if released."  Second Bender Declaration ¶ 32.

With regard to the FBI's non-public database search results, Bender specifically avers in support of summary judgment that the FBI withheld the identities of sensitive

investigative databases and database search results obtained by querying non-public databases used by the FBI for official law enforcement purposes, and that releasing the identities of the databases or the search results would impede the FBI's effectiveness and potentially aid criminals in circumventing investigative techniques.  Second Bender Declaration ¶¶ 33-34 (citing Bender Declartion ¶¶ 133-37).  The court finds that Defendant, through Benders Declarations, provides a sufficient explanation linking disclosure of the non-public databases and results of searches of such databases to the risk of circumventing the law such that the FBI properly withheld such information pursuant to Exemption 7(E).

Insofar as Plaintiff challenges the withholding of non-public details regarding the targets of FBI pen registers/trap and trace devices, Bender avers such devices "enable prospective collection of information associated with wire and electronic communications" such as phone numbers dialed or messages sent from or to a particular telephone which the FBI used in this case in furtherance of its investigation into incidences of domestic terrorism.  Second Bender Declaration ¶ 35.  According to Bender, releasing such information would diminish the utility of such investigative technique and allow criminals to circumvent the law.  *Id*. ¶ 36 (citing Bender Declaration ¶ 138).  Plaintiff has not countered with a showing of bad faith as to these averments which "are accorded a presumption of good faith" so long as such affidavits "are adequate on their face."  *Nat. Res. Def. Council, Inc.*, 36 F. Supp.3d at 398.  The FBI's withholding of information pertaining to FBI pen registers/trap and trace devices pursuant to Exemption 7(E) was thus proper.

Regarding the FBI's withholding of the identity and location of joint units, squads, and divisions, Bender explains that such groups, "whether they focus on domestic terrorism, counterterrorism, white collar crime, etc., have specific and specialized techniques associated with their specialty," which provide "insight as to the FBI's area of interest or focus" within a particular investigation. Second Bender Declaration ¶ 37. A squad or unit's location during an investigation can likewise inform outside parties as to the progression or movement of an investigation including the possible targets. *Id*. The disclosure of such groups could thus reveal the location of an investigation's interest and targets, as well as the type of crimes that is the focus of the investigation. *Id*. ¶ 38 (citing Bender Declaration ¶¶ 140-41). Because Plaintiff has failed to counter with a showing of bad faith, these averments which "are accorded a presumption of good faith" so long as such affidavits "are adequate on their face." *Nat. Res. Def. Council, Inc.*, 36 F. Supp.3d at 398. The FBI's withholding of the identity and location of joint units, squads, and divisions pursuant to Exemption 7(E) was thus proper.

With respect to the monetary payments requested by FBI personnel and paid by the FBI to implement particular investigative techniques, Bender avers the FBI SAs are trained and subjected to standard operating procedures regarding the types of operation expenses that may be approved for funding an investigation and that such resources are allocated to a particular investigative scope or area. Second Bender Declaration ¶ 39. According to Bender, revealing the amount of money the FBI has allocated to implement certain investigative procedures would reveal the FBI's level of focus on certain types of law enforcement and intelligence gathering efforts, thereby revealing the FBI's strategic allocation of its limited resources and identify the FBI's priorities,

strengths, and weaknesses within the spectrum of illegal activities the FBI investigates. *Id*. ¶ 40.  While such information may, in isolation, be insignificant, disclosure of the amount of funds allocated to investigative priorities could, in combination with other information released to the public, allow the assembly of a more complete understanding of the FBI's priorities and investigative scope, thereby enabling criminals to circumvent the law.  *Id*.   Here, Defendant has met the "low bar" of showing that disclosure of monetary payment information would create the risk of circumvention of law such that the monetary payment information was properly withheld under Exemption 7(E).  *See Mermerlstein*, 2021 WL 3455314, at *15 (citing *Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018) (information reflecting monetary payments for investigative techniques were properly withheld under Exemption 7(E)).  Accordingly, the court finds the FBI properly withheld information pursuant to Exemption 7(E).

Summary judgment regarding information withheld by both the ATF and the FBI pursuant to Exemption 7(E) should therefore be GRANTED as to Defendant and DENIED as to Plaintiff.

### 9.    Exemption 7(F)

ATF withheld information identifying an individual mentioned in the investigation, pursuant to Exemption 7(F) which protects "any individual" for whom disclosure of information "could reasonably be expected to endanger [his] life or physical safety," 5 U.S.C. § 552(b)(7)(F), because the investigation of Plaintiff "includes a dangerous criminal enterprise with the propensity for violence," such that "there is a very real potential of jeopardizing this individual's life and safety."  ATF's Memorandum at 16-17;

Chisholm Declaration ¶¶ 37-38.  Plaintiff challenges the withholding of such information in the absence of any evidence showing a reasonable concern for the subject individual's safety in light of the ATF's failure to establish that Plaintiff is prone to any violence.  Plaintiff's Memorandum at 11.  In further regard to this argument, Siple avers that agencies are permitted to withhold information for which there is a reasonable possibility that its disclosure could cause harm to someone, Siple Declaration ¶ 39, and IPGD invoked Exemption 7(F) because the investigation of the Plaintiff at issue "includes a dangerous criminal enterprise with the propensity for violence," for which "there is a very real potential of jeopardizing the individual's life and safety.  *Id*. ¶ 40.

   "The withholding of individuals' identities who are unknown to the requester are routinely upheld [pursuant to Exemption 7(F)] where there is some showing of a reasonable concern for safety."  *Trupei v. Huff*, 1998 WL 8986, at *5 (D.D.C. Jan. 7, 1998) (citing cases).  In the instant case, the ATF withheld the identity of one individual because a "dangerous criminal enterprise with the propensity for violence" is asserted to be involved in the investigation such that "there is a very real potential of jeopardizing the individual's life and safety."  Siple Declaration  *Id*. ¶ 40.  Not only is this assertion conclusory and not supported with sufficient detail for the court to determine whether Exemption 7(F) was properly invoked, but Defendant has not established that Plaintiff is prone to violence or that he has threatened informants in the past.  See *Trupei*, 1998 WL 8986, at * 5 (finding similar averments inadequate to support withholding of an individual's identity pursuant to Exemption 7).

Summary judgment on the withholding of information pursuant to Exemption 7(F) should be GRANTED in favor of Plaintiff and DENIED as to Defendant.[29]

### 10.   *Glomar* Responses

In connection with the FBI's Supplemental Motion, FBI asserts a so-called *Glomar* response whereby the FBI neither acknowledges the existence or non-existence of certain categories of responsive records so as to avoid admitting certain responsive records exist.  FBI's Supplemental Memorandum at 35-38 (citing Bender Declaration ¶¶ 159-62).  Plaintiff argues that by failing to raise the *Glomar* response in either the answer or the initial FBI's Motion, Defendant has waived the response. Plaintiff's Supplemental Memorandum at 1-2.  Plaintiff further maintains that during a September 11, 2014 scheduling conference before the undersigned, AUSA Cercone stated there were "tens of thousands of documents concerning Mr. Pickering," thereby waiving Defendant's ability to assert any *Glomar* response.  *Id*. at 2 (citing Kuzma Affidavit ¶ 9).   As its further argument on this issue, Defendant relies on the Supplemental Bender Declaration in which Bender's averments explain the FBI's reliance on *Glomar* to maintain the FBI's credibility and effectiveness where an admission as to whether responsive records exists would be interpreted as an admission that such records do exist, thus compromising national security and divulge intelligence sources and methods.

"The *Glomar* doctrine originated in a FOIA case concerning records pertaining to the Hughes Glomar Explorer, an oceanic research vessel."  *Wilner v. Nat'l Sec. Agency*,

---

[29] The court notes the ATF's *Vaughn* Index (Dkt. 18) establishes that each record withheld, either in full or in part, pursuant to Exemption 7(F) is also withheld pursuant to at least one other Exemption such that the insufficiency of Siple's averments may be of no consequence.

592 F.3d 60, 67 (2d Cir. 2009) (citing *Phillippi v. CIA,* 546 F.2d 1009 (D.C.Cir.1976)).  In

*Phillippi,* the Central Intelligence Agency ("CIA"), believing that the "existence or

nonexistence of the requested records was itself a classified fact exempt from

disclosure under . . . FOIA," responded to a FOIA request that "in the interest of national

security, involvement by the U.S. government in the activities which are the subject

matter of [plaintiff's] request can neither be confirmed nor denied."  *Phillipi*, 546 F.2d at

1012.  The principle "that an agency may, pursuant to FOIA's statutory exemptions,

refuse to confirm or deny the existence of certain records in response to a FOIA request

- has since become known as the *Glomar* doctrine."  *Wilner*, 592 F.3d at 67.

        In the instant case, Plaintiff does not challenge whether the FBI's *Glomar*

response was proper but, rather, Plaintiff's challenge to the FBI's *Glomar* response is

limited to its argument that such response was waived either because it was not timely

asserted or because AUSA Cerrone revealed the existence of such documents;

Defendant has not addressed either argument.  Nevertheless, Plaintiff's waiver

argument based on Defendant's failure to assert a *Glomar* response in either the

answer or in connection with the initial FBI Motion overlooks the fact that the bulk of the

14,007 pages listed in the FBI's *Vaughn* Index were not included in the FBI's Initial

*Vaughn* Index which lists only 1155 responsive Bates-stamped pages.  The court thus

presumes that prior to the FBI's reprocessing of approximately 13,000 additional pages,

there was no basis for the FBI to assert any *Glomar* response and thus the agency did

not waive such response by failing to earlier assert the response.

        Insofar as Kuzma avers that AUSA Cerrone, at a September 11, 2014 scheduling

conference before the undersigned, asserted on the record that "there are tens of

thousands of FBI documents concerning Mr. Pickering," Kuzma Affidavit ¶ 9, thereby waiving any *Glomar* response by admitting additional documents exist, Plaintiff's Supplemental Memorandum at 2, Mr. Kuzma's conclusory and self-serving averment is unsupported.  Plaintiff does not reference, nor does the court's research reveal, any case law recognizing that the statement Plaintiff maintains Cerrone made at the September 11, 2014 scheduling conference was anything more than an off-the-cuff remark which does not even arise to an inadvertent disclosure sufficient assuming such would be enough to waive the right to assert a *Glomar* response.  Accordingly, there is no merit to this argument.

Summary judgment on Plaintiff's argument that Defendant waived its right to assert a *Glomar* response should thus be DENIED.

### E.    Attorney Fees

Plaintiff seeks an award of attorney fees and costs incurred in connection with this action.  Plaintiff's Memorandum at 15.  Defendant maintains any award of attorney fees prior to a judgment on the merits of Plaintiff's claims is premature.  Defendant's Reply at 2-3.

As relevant, FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  The term "substantially prevailed" is defined to mean the plaintiff has "obtained relief through either - - (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)()ii).  Nevertheless,

a district court's discussion of attorney fees is premature where summary judgment is not yet resolved.  *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 37 n. 18 (D.C.Cir. 1998).

At present, the instant case is before the undersigned for a report and recommendation which does not resolve the parties' arguments with regard to the responses to the ATF's and FBI's FOIA Requests.  Accordingly, the court does not consider whether Plaintiff is entitled to an award of attorney fees at this time.


## <u>CONCLUSION</u>

Based on the foregoing, ATF's Motion (Dkt. 23) should be GRANTED in part and DENIED in part; FBI's Motion (Dkt. 27) should be DISMISSED as MOOT; Plaintiff's Motion (Dkt. 33) should be GRANTED in part, and DENIED in part; FBI's Supplemental Motion (Dkt. 62) should be GRANTED in part, DENIED in part, and DISMISSED as MOOT in part; ATF's Supplemental Motion (Dkt. 63) should be DISMISSED as MOOT; Plaintiff's Supplemental Motion (Dkt. 67) should be GRANTED in part, DENIED in part, and DISMISSED as MOOT in part.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        September 29, 2023
                   Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72(b).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 29, 2023
            Buffalo, New York