UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LESLIE JAMES PICKERING,

                              Plaintiff,

        v.

                                                              14-CV-330

U.S. DEPARTMENT OF JUSTICE,

                              Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS TO THE REPORT AND RECOMMENDATION

### INTRODUCTION

This Memorandum of Law is submitted on behalf of defendant United States Department of Justice ("DOJ") in support of its Objections to Magistrate Judge Leslie G. Foschio's September 29, 2023 Report and Recommendation ("R & R").  Dkt. # 71.

### PROCEDURAL HISTORY

This case concerns requests made by Plaintiff under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Federal Bureau of Investigation ("FBI") and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), both of which are components of DOJ.  A complete recitation of the facts and procedural history relevant to this motion can be found in the Declaration of David M. Hardy (Dkt. # 29) ("Hardy Dec."), the Declaration of Peter J. Chisholm (Dkt. # 26) ("Chisholm Dec."), the Declaration of Joseph E. Bender, Jr. (Dkt. # 62-1) ("Bender Dec."), the Supplemental Declaration of Joseph E. Bender, Jr. (Dkt. # 62-3) ("Supplemental Bender Dec."), the Reply Declaration of Joseph E. Bender, Jr. (Dkt.

# 70-1) ("Reply Bender Dec."), and the Reply Declaration of Adam C. Siple (Dkt. # 70-2)

("Siple Dec.").  A summary is contained below.

**A.    Administrative History of Plaintiff's FOIA Request to FBI From January 16, 2014 to January 2, 2018**

By letter dated January 16, 2014, plaintiff submitted a FOIA request to FBIHQ requesting:

> a complete and thorough search of all filing systems and locations for all records maintained by your agency pertaining to me, including but not limited to files and documents captioned in, or whose captions include my name in the title.  Please search the Central Records System (CRS), Electronic Surveillance Records (ELSUR), and Electronic Case File (ECF).  I specifically request that you conduct a text search of the ECF to identify all potentially responsive main and cross-reference files. This request includes "main" files and "see references," including but not limited to numbered and lettered subfiles, 1A envelopes, enclosures behind files (EBF's), Bulky Exhibits, control files, and "JUNE" files.
>
> In addition to the above, I am interested in receiving copies of records maintained by your agency's Field Offices in Anchorage, Alaska; Phoenix, Arizona; Los Angeles, California; Sacramento, California; San Francisco, California; Denver, Colorado; New Haven, Connecticut; Washington, District of Columbia; North Miami Beach, Florida; Honolulu, Hawaii; Chicago, Illinois; Indianapolis, Indiana; Boston, Massachusetts; Minneapolis, Minnesota; Los Vegas, Nevada; Albuquerque, New Mexico; Albany, New York; Buffalo, New York; New York, New York; Charlotte, North Carolina; Cincinnati, Ohio; Cleveland, Ohio; Portland, Oregon; Philadelphia, Pennsylvania; Pittsburg, Pennsylvania; San Juan, Puerto Rico; Columbia, South Carolina; El Paso, Texas; Salt Lake City, Utah and Seattle, Washington.

Hardy Dec., ¶ 5, Exh. A.

In a letter dated January 31, 2014, the FBI acknowledged receipt of plaintiff's request. The FBI informed Plaintiff it had assigned the request FOIA Request Number 1251014-000 and was conducting a search of the indices to the Central Records System to locate responsive records.  Hardy Dec., ¶ 6, Exh. B.

2

By letter dated March 5, 2014, Plaintiff filed an appeal with the DOJ Office of Information Policy ("OIP"). Hardy Dec., ¶ 7, Exh. C. In a letter dated March 28, 2014, OIP acknowledged receipt of plaintiff's appeal and assigned it appeal number AP-2014-02203. Hardy Dec., ¶ 8, Exh. D. By letter dated April 18, 2014, OIP advised plaintiff that since no adverse determination had yet been made by the FBI, there was no action to consider on appeal. Hardy Dec., ¶ 9, Exh. E. OIP advised Plaintiff the FOIA authorizes requesters to file a lawsuit when an agency takes longer than the statutory time period to respond. Hardy Dec., ¶ 9, Exh. E.

Per Court Scheduling Order filed October, 16, 2014, the Court ordered the FBI to release non-exempt documents responsive to Plaintiff's FOIA request through rolling production every 120 days commencing on November 30, 2014. Dkt. # 17. By letter dated October 28, 2014, Plaintiff provided privacy waivers, in the form of Certification of Identity forms (DOJ-361), for multiple third-party individuals. Hardy Dec., ¶ 11, Exh. F. By letter dated November 26, 2014, pursuant to court order, the FBI provided Plaintiff with a processing status update. The FBI also informed Plaintiff it was reprocessing records already processed, prior to receipt of Plaintiff's privacy waivers. Hardy Dec., ¶ 12, Exh. G. By letter dated March 30, 2015, pursuant to court order, the FBI provided Plaintiff with a processing status update. Hardy Dec., ¶ 13, Exh. H.

By letter dated July 30, 2015, the FBI made an interim release of records to Plaintiff. Hardy Dec., ¶ 14, Exh. I. The FBI advised it reviewed 554 pages of records and it was releasing 375 pages of records in full or in part. Hardy Dec., ¶ 14, Exh. I. The FBI withheld information pursuant to FOIA Exemptions (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Hardy Dec., ¶ 14, Exh. I. Additionally, the FBI informed Plaintiff it located cross-

references wherein responsive material was located in files concerning another individual, organization, event, activity, or the like. Hardy Dec., ¶ 14, Exh. I. Within these documents, the FBI only processed pages responsive to Plaintiff's subject and any pages providing context. Furthermore, the FBI informed Plaintiff two documents potentially responsive to his request could not be located. Hardy Dec., ¶ 14, Exh. I. The FBI advised Plaintiff he could appeal the FBI's determination by filing an administrative appeal with OIP within sixty (60) days. Hardy Dec., ¶ 14, Exh. I.

By letter dated November 30, 2015, pursuant to court order, the FBI provided Plaintiff with a processing status update. Hardy Dec., ¶ 15, Exh. J.

By letter dated March 30, 2016, the FBI made an interim release of records to Plaintiff. Hardy Dec., ¶ 16, Exh. K. The FBI advised it reviewed 601 pages of records and it was releasing 268 pages of records in full or part. Hardy Dec., ¶ 16, Exh. K. The FBI withheld information pursuant to FOIA Exemptions (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Hardy Dec., ¶ 16, Exh. K. Additionally, the FBI informed Plaintiff it located cross-references wherein responsive material was located in files concerning another individual, organization, event, activity, or the like. Hardy Dec., ¶ 16, Exh. K. Within these documents, the FBI only processed pages responsive to Plaintiff's subject and any pages providing context. Hardy Dec., ¶ 16, Exh. K. The FBI advised Plaintiff he could appeal the FBI's determination by filing an administrative appeal with OIP within sixty (60) days. Hardy Dec., ¶ 16, Exh. K.

By letter dated July 30, 2016, pursuant to court order, the FBI provided Plaintiff with a processing status update. Hardy Dec., ¶ 17, Exh. L. By letter dated November 30, 2016, pursuant to court order, the FBI provided Plaintiff with a processing status update. Hardy

Dec., ¶ 18, Exh. M.  By letter dated March 30, 2017, pursuant to court order, the FBI provided Plaintiff with a processing status update.  Hardy Dec., ¶ 19, Exh. N.  By letter dated July 28, 2017, pursuant to court order, the FBI provided Plaintiff with a processing status update. Hardy Dec., ¶ 20, Exh. O.  By letter dated November 30, 2017, pursuant to court order, the FBI provided Plaintiff with a processing status update.  Hardy Dec., ¶ 21, Exh. P.

By letter dated January 2, 2018, pursuant to court order, the FBI provided Plaintiff the final processing status update.  Hardy Dec., ¶ 22, Exh. Q.   The FBI informed Plaintiff it completed processing and all additional responsive material was exempt pursuant to FOIA Exemption (b)(7)(A), which pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings.  Hardy Dec., ¶ 22, Exh. Q.

**B.     Administrative History of Plaintiff's FOIA Request to ATF From January 16, 2014 to January 2, 2018**

On August 16, 2013, the ATF Disclosure Division received a FOIA request dated August 9, 2013 that requested all records related to Mr. Leslie J. Pickering.  Included with the FOIA request is a Certification of Identity, FORM DO J -361, signed on August 5, 2013 by Leslie James Pickering, which authorized the ATF to release information about himself directly to Michael Kuzma, his attorney.  Chisholm Dec., ¶ 3, Exhs. A and B.  By letter dated October 18, 2013, ATF acknowledged receipt of Plaintiff's FOIA request and assigned it reference number 13-1413.  Chisholm Dec., ¶ 4, Exh. C.

Based on the information provided in Plaintiff's FOIA request, the Disclosure Division conducted a search of the NFORCE database by entering his clients first and last name: "Leslie Pickering" as requested in the FOIA request and located case file 787030-01-0015.  Chisholm Dec., ¶ 5.  NFORCE is ATF's official case file of record for documenting

investigative activity and information. A case management system designed to support ATF law enforcement operations, NFORCE acts as a single-point of data entry and enables users to store, utilize, and query investigative information, and to prepare investigative documents. Chisholm Dec., ¶ 6. Each criminal investigation opened by a case user in NFORCE is assigned a unique case number, and a user can run queries in the system based on information regarding an individual, including name, date of birth, or Social Security number. The system can also be queried by property or vehicles associated with an individual, or through a full text search that identifies specific words found in ATF's Reports of Investigation (ROI) which are contained in the database. Each case is identified by a closed or open status and in some instances, may have restricted access due to Federal Rule of Criminal Procedure 6(e)—Grand Jury Information. Chisholm Dec., ¶ 7.

Based on the search of NFORCE, referenced in ¶ 4, the Disclosure division obtained information indicating that the case file originated in the Seattle Field Division. On October 13, 2013, the Disclosure division transmitted a search request for case file 787030-01-0015 to the Special Agent in Charge, Seattle Field Division. Chisholm Dec., ¶ 8. On October 20, 2013, the Seattle Field Division responded to this request by alerting the Disclosure Division that the investigation into case 787030-01-0015 was still open. Chisholm Dec., ¶ 9. On October 22, 2013, the Chief, Disclosure Division responded to Plaintiff's FOIA request by informing him that his request for access to information relating to Leslie J. Pickering was denied pursuant to 5 U.S.C. § 552(b)(7)(A) because an investigation associated with him was still open. Chisholm Dec., ¶ 10, Exh. D.

By letter dated November 14, 2013, Plaintiff appealed the Disclosure Division's denial of his FOIA request pursuant to 5 U.S.C. §552(b)(7)(A) by submitting an administrative

appeal to OIP.  Chisholm Dec., ¶ 11, Exh. E.  On January 24, 2014, OIP affirmed ATF's decision to withhold the requested records pursuant to 5 U.S.C. § 552(b)(7)(A).  Chisholm Dec., ¶ 12, Exh. F.

On December 23, 2014, during the course of this litigation, ATF processed 187 pages of documents. A total of 62 pages were released in full, 66 pages released in part, and 59 pages were non-responsive material.  In addition, audio tapes were withheld in full, as ATF determined it was not possible to separate the voices as they are too intertwined. The information was withheld pursuant to FOIA exemptions 5 U.S.C. § 552(b)(6), 5 U.S.C. § 552(b)(7)(C), 5 U.S.C. § 552(b)(7)(E) and 5 U.S.C. § 552(b)(7)(F).  Chisholm Dec., ¶ 13, Exh. G.  By letter dated February 5, 2015, Plaintiff stated that ATF redacted/withheld the names of certain individuals for which he provided original Certification of Identity forms, DOJ-361, from Elaine Dale Close, Jeffrey Michael Luers, Daniel Gerard McGowan, Craig Scott Rosebraugh and a copy of a November 13, 2009 obituary from The Oregonian for Bruce Harlan Clark. He stated that this additional documentation will permit ATF to release information relating to these five individuals.  Chisholm Dec., ¶ 14, Exh. H.  By letter dated March 31, 2015, the Disclosure division provided a letter to Plaintiff explaining that on February 5, 2015, he provided properly completed Form DOJ-361s, Certification of Identity, from Elaine Close and Craig Rosebraugh. Plaintiff also provided the same forms to ATF for Jeffrey Luers and Daniel McGowan; however, they were not properly completed to authorize disclosure to Plaintiff. The Disclosure Division also acknowledged the obituary of Bruce Clark. As such, based on the releases that provided, ATF was able to release one page in full that was previously released in part, thus, bringing the total to 63 pages released in full. The other 65 pages were still released in part although we removed some redactions based on the

releases he provided. The number of nonresponsive material remained the same.  Chisholm Dec., ¶ 15, Exh. I.

**C.      Summary Judgment Motions in April and May 2018**

On April 27, 2018, the FBI and the ATF moved for summary judgment.  Dkt. # 23-30.  On May 31, 2018, Plaintiff opposed the motions and he also moved for summary judgment.  Dkt. # 33-38.

**D.      Stay of Proceedings from August 2018 to January 2023**

Following the filing of the FBI's motion for summary judgment, the FBI determined that FOIA Exemption (b)(7)(A), previously asserted to protect pending investigative files, had lapsed.  Bender. Dec. ¶ 5.  The FBI then conducted a segregability review.  Bender. Dec. ¶ 5. That review revealed approximately thirteen thousand pages which could be processed in response to Plaintiff's request. Bender. Dec. ¶ 5.

Upon being alerted to this information by the FBI, undersigned counsel notified Plaintiff's counsel and the Court of same at a conference on August 6, 2018.  Dkt. #  41-42. At the conference, the Court stayed briefing on the pending motions for summary judgment for a period of 15 months and required the parties to file a status report by November 6, 2019. Dkt. # 42.  The status report indicated that the FBI was processing the additional tranche of documents and requested a follow-up conference in November 2020.  Dkt. # 43.  At a status conference on November 10, 2020, the Court directed the Government to file a status report within 30 days.  Dkt. # 46.  On December 11, 2020, the Government filed a status report proposing a summary judgment deadline of September 30, 2021.  Dkt. # 47.  The FBI subsequently filed four motions for extension of the dispositive motion deadline.  Dkt. # 49-

59.  On January 30, 2023, the Court set the dispositive motion deadline of March 17, 2023.

Dkt. # 59.

**E.    Administrative History of Plaintiff's FOIA Request From September 28, 2018 to October 31, 2022**

After determining that FOIA Exemption (b)(7)(A) had lapsed, the FBI subsequently made twenty-nine additional releases to Plaintiff from September 28, 2018 to October 31, 2022.  Bender. Dec. ¶ 5.

**F.    2023 Summary Judgment Motions**

On March 17, 2023, the FBI and ATF filed supplemental summary judgment motions. Dkt. # 62-63.  Plaintiff filed a supplemental summary judgment motion on May 8, 2023.  Dkt. # 67.  FBI and ATF filed replies on July 21, 2023.  Dkt. # 70.

**G.    The R & R**

On September 29, 2023, Magistrate Judge Foschio rendered the R & R.  Dkt. # 71.  In the R & R, Magistrate Judge Foschio recommended that: (1) summary judgment should be granted to the FBI and ATF on Plaintiff's Privacy Act claim (p. 23); (2) summary judgment should be granted to FBI and ATF on the adequacy of their respective searches (pp. 24-34); (3) summary judgment should be granted to the FBI on the issue of segregability (pp. 34-45); (4) on the issue of segregability, summary judgment should be granted to the ATF except that ATF "should … be directed to either fully explain why the asserted exempt voices cannot be segregated either by transferring the audiotapes to another medium that would permit such segregation, or provide a transcript of the audiotapes on which the exempt portions are redacted;" (pp. 34-45, 36); (5) summary judgment should be granted to the FBI with respect to FOIA Exemption 1 (pp. 47-48); (6) summary judgment should be granted to the FBI with respect to FOIA Exemption 3 (pp. 49-52); (7) with respect to FOIA Exemption 4, the FBI's

motion is moot (pp. 52-53); (8) summary judgment should be denied to the FBI as to 28 pages for which FOIA Exemption 5 (attorney-client privilege) was claimed (the Court notes that these documents were withheld under additional exemptions as well) but granted as to the remaining records for which FOIA Exemption 5 (attorney-client privilege) was asserted (pp. 53-58); (9) summary judgment should be denied to the FBI as to 48 pages for which FOIA Exemption 5 (deliberative process privilege) was claimed (pp. 58-61); (10) summary judgment should be granted to the FBI as to the FOIA Exemption 7 threshold (pp. 61-62); (11) summary judgment should be denied to the FBI as to FOIA Exemption 7(A) (pp. 63-66); (12) summary judgment should be granted to the FBI and the ATF as to FOIA Exemption 6 and 7(C) (pp. 66-71); (13) summary judgment should be granted to the FBI as to FOIA Exemption 7(D) (pp. 71-74); (14) summary judgment should be granted to the FBI and the ATF as to FOIA Exemption 7(E) (pp. 74-80); (15) summary judgment should be denied to the ATF as to FOIA Exemption 7(F) (pp. 80-82); (16) summary judgment should be granted to the FBI as to its Glomar response (pp. 82-84); and  (17) the issue of attorney's fees should be deferred (pp. 84-85).  In sum, Magistrate Judge Foschio recommends granting FBI and ATF's motions except as to five issues: (1) as to ATF, on the issue of segregability of certain audio tapes; (2) as to FBI with respect to 28 pages for which FOIA Exemption 5 (attorney-client privilege) was claimed; (3) as to the FBI with respect to 48 pages for which FOIA Exemption 5 (deliberative process privilege) was claimed; (4) as to the FBI on the issue of FOIA Exemption 7(A); and (5) as to the ATF on the issue of FOIA Exemption 7(F).

On October 10, 2023, the Court extended the time to file objections to the R & R to November 9, 2023.  Dkt. # 73.  FBI and ATF herein object to the R & R on all five grounds listed in the paragraph above.

## ARGUMENT

**Standard of Review on a Summary Judgment Motion**

"Summary judgment will be granted if the record demonstrates that 'there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Rosinski v. American Axle & Mfg., Inc., 663 F.Supp.2d 197, 203 (W.D.N.Y. 2009), aff'd, No. 09-4569-cv, 2010 WL 3402984 (2d Cir. Aug. 31, 2010) (quoting Fed.R.Civ.P. 56(c) and citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "The party seeking summary judgment 'bears the initial responsibility of informing the district court of the basis for its motion,' and identifying which materials 'it believes demonstrate the absence of a genuine issue of material fact.'" Klumpp v. Bandit Industries, Inc., 113 F.Supp.2d 567, 570 (W.D.N.Y. 2000) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"In order to defeat a summary judgment motion properly supported by evidence in admissible form, the non-movant must offer comparable evidence demonstrating the existence of a genuine issue of material fact." Rosinski, 663 F.Supp.2d at 203 (citing Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir.1996)). "The non-movant must present more than a "'scintilla of evidence.'" Rosinski, 663 F.Supp.2d at 203 (quoting Del. & Hudson Ry. Co. v. Cons. Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990) and Anderson, 477 U.S. at 252). The non-movant may not rely on "some metaphysical doubt as to the material facts." Rosinski, 663 F.Supp.2d at 203 (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir.1993)). Nor may the non-movant "rely on the allegations in his or her pleadings, conclusory statements, or 'mere assertions that affidavits supporting the motion are not credible.'"

11

Rosinski, 663 F.Supp.2d at 203 (quoting Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir.1996)).

**Summary Judgment in FOIA Cases**

Under FOIA, "every federal agency is required . . . to make its records 'promptly available to any person' upon receipt of a reasonably articulated request." Kuzma v. U.S. Dep't of Justice, No. 12-CV-807S, 2014 WL 4829315, at *2 (W.D.N.Y. Sept. 29, 2014) (quoting Phillips v. Immigration & Customs Enforcement, 385 F. Supp. 2d 296, 301 (S.D.N.Y. 2005) and 5 U.S.C. § 552(a)(3)). "The FOIA embodies Congress's desire that an open government allow for 'an informed citizenry to hold the governors accountable to the governed.'" Kuzma, 2014 WL 4829315, at * 2 (quoting Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999); Phillips, 385 F. Supp. at 301 ("FOIA reflects a strong Congressional policy of requiring full public disclosure of documents and records maintained by federal agencies."). "To that end, the FOIA requires the fullest possible public disclosure of government-kept records yet at the same time maintains the confidentiality of sensitive information based on narrowly tailored exemptions intended to protect certain interests." Kuzma, 2014 WL 4829315, at * 2.

"Federal courts are required to conduct de novo review of an agency's decision to withhold requested records under the FOIA." Kuzma, 2014 WL 4829315, at * 2 (citing Massey v. FBI, 3 F.3d 620, 622 (2d Cir. 1993)). "The preferred method of doing so is by summary judgment." Kuzma, 2014 WL 4829315, at * 2 (citing Fox News Network, LLC v. U.S. Dep't of the Treasury, 739 F. Supp. 2d 515, 532 (S.D.N.Y. 2010); Jones-Edwards v. Appeal Bd. of NSA, 352 F. Supp. 2d 420, 423 (S.D.N.Y. 2005)).

In a FOIA case, a plaintiff is entitled to summary judgment "when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." New York Times Co. v. U.S. Dep't of Defense, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007). A federal agency is entitled to summary judgment "when it has thoroughly searched for responsive records and has articulated reasonably detailed explanations why any withheld documents fall within an exemption." Kuzma, 2014 WL 4829315, at * 2 (citing Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994); Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 69 (2d Cir. 2009)). "To carry its burden, the defending agency may rely on a *Vaughn* index, which consists of 'affidavits to the court that describe with reasonable specificity the nature of the documents at issue and the justification for nondisclosure; the description provided in the affidavits must show that the information logically falls within the claimed exemption.'" Kuzma, 2014 WL 4829315, at * 2 (quoting Lesar v. United States Dep't of Justice, 636 F.2d 472, 481 (D.C. Cir. 1980); Halpern v. Fed. Bureau of Investigation, 181 F.3d 279, 291 (2d Cir. 1999) (citing Lesar).

The Vaughn Index has three functions: "(1) it forces the government to analyze carefully any material withheld, (2) it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and (3) it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court." Kuzma, 2014 WL 4829315, at * 2 (quoting Halpern, 181 F.3d at 291; Keys v. United States Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987)). "Agency affidavits, including the *Vaughn* index, are presumed to have been made in good faith." Kuzma, 2014 WL 4829315, at * 2 (citing Carney, 19 F.3d at 812). "This presumption is not rebutted by bare allegations or speculative claims that additional documents exist." Kuzma, 2014 WL

13

4829315, at * 2 (citing Grand Cent., 166 F.3d at 489).  "If the agency's submissions are facially adequate, summary judgment is warranted unless the plaintiff can make a showing of bad faith on the part of the agency or present evidence that the exemptions claimed by the agency should not apply."  Garcia v. United States Dep't of Justice, Office of Info. & Privacy, 181 F.Supp.2d 356, 366 (S.D.N.Y. 2002) (citing Carney, 19 F.3d at 812); Center for Constitutional Rights v. C.I.A., 765 F.3d 161, 166 (2d Cir. 2014).

**Standard of Review on Objections to a Report and Recommendation**

A district judge reviews *de novo* a report and recommendation made by a magistrate judge on a dispositive motion.  Fed. R. Civ. P. 72(b)(3).

**OBJECTION # 1**

**THE R & R WAS IN ERROR ON THE ISSUE OF SEGREGABILITY WITH RESPECT TO AUDIO TAPES IN THE POSSESSION OF ATF**

FOIA requires that government agencies disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  "Non-exempt portions of a record may be withheld only if they are 'inextricably intertwined' with the exempt portions."  Kuzma, 2014 WL 4829315, at * 5 (quoting Inner City Press/Cmty. on the Move v. Bd. of Governors of the Fed. Reserve Sys., 463 F.3d 239, 249 n. 10 (2d Cir. 2006)).  "If an agency determines that non-exempt portions of a record are not segregable, it must justify that determination in detail."  Kuzma, 2014 WL 4829315, at * 5 (citing Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977)). "In this regard, an agency is entitled to a presumption that it complied with the FOIA's segregability requirements."  Kuzma, 2014 WL 4829315, at * 5 (citing Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007)).  "A district court 'must make specific findings of

segregability regarding the documents to be withheld' before ruling that an asserted FOIA exemption is applicable." Kuzma, 2014 WL 4829315, at * 5 (quoting Sussman at 1116).

Here, in the R & R, Magistrate Judge Foschio made the following recommendation regarding segregability and the subject audio tapes:

> Insofar as Defendant maintains the audiotapes were withheld in their entirety because Plaintiff would be able to identify the voices of the persons speaking, Defendant has not explained why the audiotapes, which Defendant equivocally states "may" be degraded and fragile and for which the equipment needed to begin to segregate voices "may" no longer exist, ATF's Memorandum at 11 (citing Chisholm Declaration ¶ 40), cannot be copied or transferred to another medium that would allow for the segregation of any voices belonging to persons whose identity is exempt from disclosure under FOIA, nor why the audiotapes cannot be transcribed. *See Washington Post Companny v. Special Inspector General for Afghanistan Reconstruction*, [486 F.Supp.3d 141, 163] (D.D.C. 2020) (requested party's conclusory assertion that providing audio recordings would permit the plaintiff to identify interviewees by their voices failed to establish the requested party had performed its duty to segregate and produce releasable information from the audio recordings). Defendant should thus be directed to either fully explain why the asserted exempt voices cannot be segregated either by transferring the audiotapes to another medium that would permit such segregation, or provide a transcript of the audiotapes on which the exempt portions are redacted.

Dkt. # 71, p. 36.

The R & R, thus, recommends that ATF be required to transfer the audio tapes to another medium or create transcripts in order to facilitate segregation of exempt and non-exempt information. However, it is well-established that FOIA does not require agencies to create documents "that do not exist." Am. C.L. Union Immigrants' Rts. Project v. United States Immigr. & Customs Enf't, 58 F.4th 643, 653 (2d Cir. 2023); Hall & Assocs. v. E.P.A., 846 F. Supp. 2d 231, 243 (D.D.C. 2012) ("It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request.") (citations omitted); Jud. Watch, Inc. v. Dep't of State, 177 F. Supp. 3d 450, 456 (D.D.C. 2016), aff'd

sub nom. Jud. Watch, Inc. v. United States Dep't of State, 681 F. App'x 2 (D.C. Cir. 2017) (citing Krohn v. Dep't of Justice, 628 F.2d 195, 197–98 (D.C.Cir.1980) Moore v. Bush, 601 F.Supp.2d 6, 15 (D.D.C.2009)).   Accordingly, the R & R's recommendation plainly contravenes FOIA as interpreted by both the Second and D.C. Circuits.

Moreover, Washington Post, relied upon by the R & R, does not support its recommendation.   In Washington Post, the Court required the federal agency to redact exempt information from the recordings or to provide the requester with copies of transcripts or notes.   486 F. Supp. 3d at 163.   Importantly, transcripts and notes actually existed with respect to some of the audio tapes.   486 F.Supp.3d at 149 ("The agency reported that given all of those circumstances, it possessed only seventeen recorded interviews, and only nine of those were transcribed.").   Therefore, the Court in Washington Post did not direct the agency to create anything new but merely to provide documents the agency already possessed.   By contrast here, the R & R recommends that the ATF be required to create whole new documents and segregate protected information from those new documents.   This recommendation is contrary to FOIA and Second Circuit caselaw and it should be rejected.[1]

## OBJECTIONS # 2 AND # 3

## THE R & R WAS IN ERROR WITH RESPECT TO FOIA EXEMPTION 5

FOIA § 552(b)(5) exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency

---

[1] Undersigned counsel has been advised by the ATF that 16 of the 18 audio cassette tapes, that were initially located in 2014 in response to Plaintiff's FOIA request, are missing from the ATF's file. They were apparently lost or misplaced during the move of ATF's office space which has occurred three times since 2014.  Of the two remaining audio tapes, the ATF has advised that they were very fragile and water damaged.  The ATF has further advised that, in an attempt to comply with the R & R by transferring the tapes to a usable electronic medium, they were inadvertently destroyed due to their poor condition.  Given this state of facts, the ATF asserts that this issue has become moot.

16

in litigation with the agency."  FOIA Exemption 5 "allows an agency to withhold those materials that would be privileged from discovery in civil litigation."  Tax Analysts v. I.R.S., 294 F.3d 71, 76 (D.C. Cir. 2002).  This exemption has been construed to exempt documents protected by the attorney-client privilege, the attorney work product privilege and the deliberative process privilege.  See e.g., Amnesty Int'l USA v. C.I.A., 728 F. Supp. 2d 479, 519 (S.D.N.Y. 2010).

**A.    Objection # 2: The R & R Erred With Respect to FOIA Exemption 5 and the Attorney-Client Privilege**

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance."  United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011).  "The attorney-client privilege is of significant import in the governmental context, because '[i]t is crucial that government officials, who are expected to uphold and execute the law ... be encouraged to seek out and receive fully informed legal advice.'"  Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency, 811 F. Supp. 2d 713, 743 (S.D.N.Y. 2011), amended on reconsideration (Aug. 8, 2011) (quoting In re County of Erie, 473 F.3d 413, 419 (2d Cir.2007).  "Attorneys may provide advice on a broad range of matters, but '[s]o long as the predominant purpose of the communication is legal advice,' the communication is privileged."  Nat'l Day Laborer, 811 F. Supp. 2d at 743 (quoting County of Erie, 473 F.3d at 420).

Here, with respect to FOIA Exemption 5 and the attorney-client privilege, the R & R correctly recommends holding that the FBI established the applicability of FOIA Exemption

17

5 as it relates to attorney-client privilege for nine pages within the range numbered 8454-8467[2] and five pages in the range numbered 11932-11996. Dkt. # 71, p. 58. The R & R bases its recommendation on the fact that the FBI laid out, in the Bender Reply Declaration, a more fulsome explanation for why the privilege applied to these pages, all of which concerned investigative proposals. Dkt. # 70-1, ¶ 17.

The R & R recommends holding, however, that the privilege should be found not to apply to the remaining 28 pages for which the FBI claimed the privilege.[3] The R & R made two errors in its analysis. First, the R & R neglected to point out that the more fulsome explanation provided in the Bender Reply Declaration, for the 14 pages which the R & R recommends finding exempt, was provided by the FBI in direct response to Plaintiff's questioning whether the documents relating to investigative proposals were protected by the attorney-client privilege. Dkt. # 70-1, ¶ 17; Dkt. # 67-4, p. 6 ("Plaintiff questions the propriety of keeping the investigation proposal [protected by the privilege]."). The FBI did not provide a similar more fulsome explanation in the Bender Reply Declaration for the application of the privilege to the remaining documents for the simple reason that Plaintiff did not challenge them in his motion. Dkt. # 67-4, p. 6. Second, the R & R ignores the FBI's initial declaration (Bender Declaration, Dkt. # 62-1) which sets forth in detail the basis for the applicability of the attorney-client privilege with respect to the 14 pages already discussed and the remaining pages to which the privilege should be found to apply. Specifically, in addition to discussing

---

[2] The R & R states that there are only four documents within this range for which attorney-client privilege is claimed. But a close look at the FBI's Vaughn Index shows that the privilege was claimed with respect to nine pages (8454-8457, 8485, 8518, 8559, 8565, 8567), not four. Thus, the R & R's recommendation should be upheld but with respect to these nine pages not just four pages as the R & R states.

[3] Per footnote 1, since an additional five pages are covered by the attorney-client privilege, that leaves 23 pages for which the R & R recommends holding that the privilege does not apply.

investigative proposals, the Bender Declaration also mentions "[a]gents additionally sought the advice of counsel to develop itinerary for meetings and for assistance and applications for permission to schedule meetings with law enforcement partners."  Dkt. # 62-1, ¶ 68 (emphasis added).  Thus, the Bender Declaration clearly set out an additional and sufficient description of the privileged documents other than those that concerned investigative proposals. Plaintiff did not challenge this aspect of DOJ's motion nor did the R & R mention it.  For this reason, the R & R should not be adopted, in part, and the Court should find that FOIA Exemption 5 protects all of the attorney-client documents from release.

Alternatively, the Court should permit the FBI to make a supplemental submission to show the applicability of the attorney-client privilege.  See e.g., Hall v. CIA, 668 F.Supp.2d 172, 188–93 (D.D.C.2009) (permitting federal agency to submit a "supplemental filing" in support of its invocation of certain FOIA exemptions, including attorney-client privilege and deliberative process privilege).

**B.      Objection # 2: The R & R Erred With Respect to FOIA Exemption 5 and the Deliberative Process Privilege**

"To qualify for the deliberative process privilege, a document must be both 'predecisional' and 'deliberative.'"  Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999) (quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184, (1975).  "A document is predecisional when it is prepared in order to assist an agency decisionmaker in arriving at his decision."  Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d at 482 (citations and internal quotation marks omitted).  "The privilege protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  Id. at 482 (citations and internal quotation marks omitted).  "A document is deliberative when it is

19

actually ... related to the process by which policies are formulated." Id. at 482 (citations and internal quotation marks omitted).

In opposition to the FBI's assertion of FOIA Exemption 5 as it relates to the deliberative process privilege, Plaintiff's sole challenge was to the applicability of the privilege to FBI notes.[4] Dkt. # 67-4, p. 7; Dkt. # 71, p. 59 ("Plaintiff challenges only the withholding of the handwritten notes."). In the R & R, the Court determined that a "plain review of the descriptions of the documents listed on the FBI's Vaughn Index as protected by the deliberative process privilege, however, shows all such pages are described either as e-mails or other electronic communications." Dkt. # 71, p. 60. Thus, the Court stated, "none of the Bates-stamped pages listed in the FBI's Vaughn Index as withheld pursuant to the deliberative process privilege is described as including any handwritten notes whether of an interview by an FBI SA or otherwise." Dkt. # 71, p. 61. The Court then concluded that the FBI "thus has failed to establish any of the Bates-stamped pages to which Defendant asserts the deliberative process privilege applies are indeed protected by such privilege." Dkt. # 71, p. 61.

The R & R's conclusion is illogical and in error. If Plaintiff's sole challenge to the applicability of the deliberative process privilege was to any notes and there were, in fact, no notes among the FBI's documents, then the issue is moot because there would be notes to release (assuming no other FOIA exemption applied). Moreover, the absence of notes does not mean that the FBI's claimed exemption is meritless. To the contrary, the FBI clearly spelled out in its moving papers the basis for the privilege as it applies to "internal deliberative communications, email communications and deliberative information located within FOIA

---

[4] Undersigned counsel has been advised by the FBI that, upon further review of the 49 pages for which the deliberative process privilege was claimed, there were, in fact, no notes.

processing records." Bender Dec., ¶ 70. Accordingly, this portion of the R & R should not be adopted by the Court.

Alternatively, the Court should permit the FBI to make a supplemental submission to show the applicability of the deliberative process privilege. See e.g., Hall, 668 F.Supp.2d at 188–93 (permitting federal agency to submit a "supplemental filing" in support of its invocation of certain FOIA exemptions, including attorney-client privilege and deliberative process privilege).

## OBJECTION # 4

## THE R & R WAS IN ERROR CONCERNING FOIA EXEMPTION 7(A)

FOIA Exemption 7(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (A) could reasonably be expected to interfere with enforcement proceedings …." 5 U.S.C. § 552(b)(7)(A). The burden is on the government to "demonstrate that (1) a law enforcement proceeding is pending or prospective, and (2) release of the information could reasonably be expected to cause some articulable harm to the proceeding." Voinche v. F.B.I, 46 F.Supp.2d 26, 31 (D.D.C. 1999). The principal purpose of this exemption is to "prevent disclosures which might prematurely reveal the government's cases in courts, its evidence and strategies, or the nature, scope, and focus of investigations." Maydak v. U.S. Dep't of Justice, 218 F.3d 760, 762 (D.C. Cir. 2000). "Another recognized goal of Exemption 7(A) is to prevent litigants from identifying and intimidating or harassing witnesses." Id. (citation omitted).

The R & R recommends that the FBI's assertion of FOIA Exemption 7(A) be rejected because "the FBI did not identify any particular investigation" that was active. Dkt. # 71, p.

21

65.   The Court also stated that the descriptions in the <u>Vaughn</u> index were "woefully inadequate." <u>Id.</u>

However, in the Bender Reply Declaration, the FBI explained in greater detail the basis of FOIA Exemption 7(A) in this case:

> The FBI protected investigations in the records at issue which are unknown, meaning not publicly acknowledged by the FBI, and which could be hindered by the target of the investigation being known. These investigations are still ongoing and have continued investigative value to the FBI and the release of this information will reveal non-public information concerning pending enforcement procedures, to include the existence of non-public investigations or proceedings.

Dkt. # 70-1, ¶ 23.  Given that "[a]gency affidavits … are presumed to have been made in good faith," <u>Kuzma</u>, 2014 WL 4829315, at * 2, the R & R was in error for not accepting the FBI's explanation that records exempted "protected investigations … which are … not publicly acknowledged by the FBI, and which could be hindered by the target of the investigation being known."  Dkt. # 70-1, ¶ 23.

The Second Circuit's decision in <u>Kuzma v. United States Dep't of Just.</u>, 692 F. App'x 30 (2d Cir. 2017) (summary order) is instructive on this point.  In <u>Kuzma</u>, the FBI "withheld information from three pages of responsive records, explaining the withheld information would disclose information about a pending investigation of an individual other than the subject of Kuzma's FOIA request."  <u>Id.</u> at 35.  The FBI asserted that "revealing the name of the individual under investigation, or the details of the investigation, would interfere with that investigation—including by tipping off the subject of the investigation."  <u>Id.</u>  In affirming the grant of summary judgment to the FBI, the Second Circuit held that "Kuzma's unsupported personal opinion" that it was unlikely that such an investigation existed was insufficient "to overcome the presumption of good faith we afford the government's declarations."  <u>Id.</u>  Like

Kuzma, the Court here should presume that the FBI's declaration was made in good faith and accept its unchallenged statements concerning the application of this exemption.

The R & R was also in error because requiring the FBI to divulge more specific information could undermine the very purpose of protecting such information under FOIA Exemption 7(A).  Maydak, 218 F.3d at 762 (the purpose of FOIA Exemption 7(A) is to avoid harm to government investigations and to prevent the intimidation or harassment of witnesses).

Alternatively, given the seriousness of the matter, the Court should permit the FBI to make a supplemental submission to show the applicability of FOIA Exemption 7(A).  See e.g., Hall v. CIA, 668 F.Supp.2d at 188–93 (permitting supplemental submission to show the applicability of FOIA exemptions).

## **OBJECTION # 5**

## **THE R & R WAS IN ERROR CONCERNING FOIA EXEMPTION 7(F)**

Exemption (b)(7)(F) provides protection to "any individual" where disclosure of information about him "could reasonably be expected to endanger [his] life or physical safety."  5 U.S.C. § (b)(7)(F).  FOIA Exemption 7(F) does not require an agency to "name the individual or individuals whose safety is endangered, but must provide a description with reasonable specificity."  Gonzalez v. United States Citizenship & Immigr. Servs., 475 F. Supp. 3d 334, 352–53 (S.D.N.Y. 2020) (citations and internal quotation marks omitted). However, "[a]n agency's burden to prove that disclosure would result in the endangerment of life or physical safety is a low one. "  Gonzalez, 475 F. Supp. 3d at 352–53 (citations and internal quotation marks omitted).

23

Here, the R & R recommends holding that the ATF's explanation for withholding information under FOIA Exemption 7(F) was "conclusory." Dkt. # 71, p. 81. The ATF explained that it withheld an individual's name because "there is a very real potential of jeopardizing this individual's life and safety." Chisholm Dec., ¶ 38. While the ATF acknowledges that additional detail could have assisted the Court in better evaluating the risk to the unnamed individual, the Court should have accorded the ATF's declaration a presumption of good faith, Kuzma, 2014 WL 4829315, at * 2, and erred on the side of caution to protect the unnamed individual.

Alternatively, given the seriousness of the matter, the Court should permit the ATF to make a supplemental submission to show the applicability of FOIA Exemption 7(F). See e.g., Hall v. CIA, 668 F.Supp.2d at 188–93 (permitting supplemental submission to show the applicability of FOIA exemptions).

## **CONCLUSION**

The R & R should not be adopted on the issues discussed above, and Defendant's motion for summary judgment should be granted in its entirety.

DATED:  Buffalo, New York, November 9, 2023

TRINI E. ROSS
United States Attorney

BY:    s/MICHAEL S. CERRONE
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5851
michael.cerrone@usdoj.gov

24