UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LESLIE JAMES PICKERING,

                        Plaintiff,

    v.
                                                    14-CV-330

U.S. DEPARTMENT OF JUSTICE,

                        Defendant.


## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

## INTRODUCTION

This Memorandum of Law is submitted on behalf of defendant United States Department of Justice ("DOJ") in opposition to Plaintiff Leslie Pickering's ("Pickering") Objections to Magistrate Judge Leslie G. Foschio's September 29, 2023 Report and Recommendation ("R & R"). Dkt. # 71.

## ARGUMENT

## POINT I

## THE R & R SHOULD BE ADOPTED WITH RESPECT TO THE FBI'S ASSERTION OF FOIA EXEMPTION 7(D)

FOIA Exemption 7(D) exempts from disclosure:

> [R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security

> intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). Where the requested records concern a criminal investigation conducted by the FBI, the second clause of Exemption 7(D) applies. Ferguson v. F.B.I., 957 F.2d 1059, 1069 (2d Cir. 1992). Thus all information furnished by a "confidential source" may be withheld. Id. ("Once it is shown that information was provided by a confidential source, the information itself is protected from disclosure...."). Under Exemption 7(D), "[a] source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes." United States Dep't of Justice v. Landano, 508 U.S. 165, 174, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). Exemption 7(D) ensures that confidential sources are protected in order to prevent harm to them and loss of a source of information. United Techs. v. NLRB, 777 F.2d 90, 94 (2d Cir.1985). A source is deemed confidential if he "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." Landano, 508 U.S. at 172, 113 S.Ct. 2014 (citation and internal quotation marks omitted).

In his Objections, Pickering contends that two individuals, Amy Upham ("Upham") and Selena Lloyd ("Lloyd"), who Pickering contends are FBI confidential human sources ("CHS"), waived any confidentiality protection by publicly disclosing their roles in published news stories. Dkt. # 75, p. 2.

The R & R rejected this argument and reasoned as follows:

> In the instant case, [FBI official Joseph E. Bender, Jr. ("Bender")] avers the individuals whose identities and the information provided were withheld pursuant to Exemption 7(D) as CHSs was justified by the FBI's need to protect such sources and preserve the FBI's ability to recruit and maintain reliable sources to successfully investigate crimes.

Bender Declaration ¶¶ 95-96; Second Bender Declaration ¶¶ 29-30. Although Plaintiff maintains Upham and Lloyd have waived any confidentiality by communicating with the media, "'the assurance of confidentiality is not waived once information withheld under Exemption 7(D) appears in the public domain.'" *Ramaci*, 568 F.Supp.3d at 393 (quoting *Heimerle v. U.S. Dep't of Just.*, 1985 WL 372, at *3 (S.D.N.Y. Mar. 5, 1983)). Nor will an informant's revelation to a requester waive the agency's right to withhold the source's identity as confidential under Exemption 7(D). *Id.* (citing *Reiter v. Drug Enf't Admin*, 1997 WL 470108, at *6 (D.D.C. Aug. 13, 1997), aff'd, 1998 WL 202247 (D.C.Cir. 1998)). Additionally, Plaintiff has not provided anything contradicting Bender's averments regarding the critical need to withhold such information from disclosure to ensure the FBI continues to have access to information provided by the various confidential sources under express or implied assurances of confidentiality. *Nat. Res. Def. Council, Inc.*, 36 F. Supp.3d at 398.

Dkt. # 71, pp. 73-74.

There are several problems with Pickering's objection. First, his argument herein is merely a repetition of what he argued before Magistrate Judge Foschio. Cf. Dkt. # 67-4, p. 15 with Dkt. # 75, p. 2. Where "a plaintiff makes only general objections to the R&R or reiterates the original arguments, the Court will review the R&R for clear error." Travelers Cas. & Sur. Co. of Am. v. DiPizio Constr. Co., Inc., No. 14-CV-576-FPG, 2018 WL 1805551, at *2 (W.D.N.Y. Apr. 17, 2018). Under this standard of review, the R & R's recommendation should easily be adopted. Second, this Court has already ruled in favor of the FBI on the issue of the applicability of FOIA Exemption 7(D) as it relates to Upham and Lloyd in a case brought by Pickering's business partner, Nathaniel Buckley. Buckley v. U.S. Dep't of Just., No. 19-CV-319F, 2021 WL 5371463, at *16 (W.D.N.Y. Nov. 18, 2021). Like in Buckley, this Court should find that the FBI properly asserted FOIA Exemption 7(D). Third, while Pickering claims that Upham and Lloyd's alleged role as CHSs was revealed in the print media by way of articles in The Buffalo News and The Public (Dkt. # 75, p. 2), the R & R was correct in holding that an assurance of confidentiality cannot be waived merely because

3

information about an alleged CHS appears in the public domain.  Dkt. # 71, p. 73 (quoting Ramaci v. Fed. Bureau of Investigation, 568 F. Supp. 3d 378, 392 (S.D.N.Y. 2021)).  Fourth, while Pickering contends that "Upham cooperated with Adam Federman for the story that appeared in The Buffalo News," Dkt. # 75, p. 2, neither Upham nor Lloyd are named in the Buffalo News article (Dkt. # 38-1), and Federman's own affidavit (Dkt. # 36) does not even mention Upham let alone establish that Upham "cooperated" with him on his reporting.  Thus, there is no factual basis to suggest that Upham and Lloyd somehow "waived" any assurances of confidentiality.   Fifth, the cases relied upon by Pickering are easily distinguishable.  In Hidalgo v. FBI, 2005 U.S. Dist. LEXIS 46753 (D.D.C. Sept. 29, 2005), the Government publicly acknowledged the existence of the CHS when he testified in court as an informant in a number of cases whereas Pickering has not asserted that Upham and Lloyd have testified in open court or that they have been officially acknowledged as CHSs.  Also, in Hidalgo, the Court rejected the FBI's sole reliance on a Glomar response under FOIA Exemption 7(D) and held that the FBI "may seek a specific 7(D) exemption" by providing "an appropriate *Vaughn* index."  Here, by contrast, while the FBI made a Glomar response under FOIA Exemption 7(D) (Dkt. # 62-3), it also provided a detailed explanation of its withholding of names and information under Exemption 7(D) in its Vaughn index and declaration.  Dkt. # 62-1, pp. 56-59.  Pickering also relies on Ramaci but the Court therein rejected the FOIA plaintiff's assertion that a CHS waived confidentiality by acknowledging his role in print articles.  Ramaci, 568 F. Supp. 3d at 392.  Upham and Lloyd, by contrast, have not acknowledged that they were CHSs.  Thus, Pickering's waiver argument here is even weaker than the argument which was rejected in Ramaci.

Pickering also argues that the R & R neglected to address whether the FBI properly withheld information received from local law enforcement under FOIA Exemption 7(D). Dkt. # 75, pp. 2-3.  However, there is a good reason why the R & R did not address this point: Pickering in his own May 8, 2023 brief stated that he was not challenging that issue.  Dkt. # 67-4, p. 15 (Pickering "recognizes that the Second Circuit has held that information furnished by foreign and local law enforcement authorities may be withheld. See Halpern v. FBI, 181 F. 3d 279, 299 (2nd Cir. 1999).").

In sum, Pickering has provided no basis for rejecting the R & R on this issue and the Court should adopt its recommendation concerning FOIA Exemption 7(D).

## POINT II

## THE R & R SHOULD BE ADOPTED WITH RESPECT TO THE FBI'S ASSERTION OF FOIA EXEMPTION 7(E)

Exemption 7(E) protects "records or information compiled for law enforcement purposes," that, if disclosed, "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  Exemption 7(E) "excludes documents from FOIA's disclosure requirement if an agency satisfies two conditions.  Knight First Amend. Inst. at Columbia Univ. v. United States Citizenship & Immigr. Servs., 30 F.4th 318, 327 (2d Cir. 2022).  "First, the agency must show that the records were "compiled for law enforcement purposes."  Knight First Amend. Inst., 30 F.4th at 327 (quoting 5 U.S.C. § 552(b)(7)). "Second, the agency must show that the records either (1) 'would disclose techniques and procedures for law enforcement investigations or prosecutions'; or (2) 'would disclose guidelines for law enforcement investigations or prosecutions' and 'such disclosure

could reasonably be expected to risk circumvention of the law.'" Knight First Amend. Inst., 30 F.4th at 327 (quoting 5 U.S.C. § 552(b)(7)(E)).  Records containing information about law enforcement techniques and procedures are "categorically exempt from FOIA disclosure, 'without need for demonstration of harm.' " Mermerlstein v. United States Dep't of Just., Fed. Bureau of Investigation, No. 19CV00312GRBJMW, 2021 WL 3455314, at *13 (E.D.N.Y. Aug. 4, 2021), report and recommendation adopted sub nom. Mermelstein v. United States Dep't of Just., Fed. Bureau of Investigation, No. 19-CV-00312, 2021 WL 11628214 (E.D.N.Y. Aug. 19, 2021) (quoting Iraq Refugee Assistance Project v. Dep't of Homeland Sec., No. 12-cv-3461, 2017 WL 1155898, at *5 (S.D.N.Y. Mar. 27, 2017). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding" and "only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law." Blackwell v. F.B.I., 646 F.3d 37, 42 (D.C. Cir. 2011) (internal quotation marks, brackets, and citation omitted).

In his Objections, Pickering contends that the FBI's monetary payments are not covered by FOIA Exemption 7(E). Dkt. # 75, pp. 3-4.  On this issue the R & R reasoned as follows:

> With respect to the monetary payments requested by FBI personnel and paid by the FBI to implement particular investigative techniques, Bender avers the FBI SAs are trained and subjected to standard operating procedures regarding the types of operation expenses that may be approved for funding an investigation and that such resources are allocated to a particular investigative scope or area. Second Bender Declaration ¶ 39. According to Bender, revealing the amount of money the FBI has allocated to implement certain investigative procedures would reveal the FBI's level of focus on certain types of law enforcement and intelligence gathering efforts, thereby revealing the FBI's strategic allocation of its limited resources and identify the FBI's priorities, strengths, and weaknesses within the spectrum of illegal activities the FBI investigates. Id. ¶ 40. While such information may, in isolation, be insignificant, disclosure of the amount of funds allocated to investigative

6

priorities could, in combination with other information released to the public, allow the assembly of a more complete understanding of the FBI's priorities and investigative scope, thereby enabling criminals to circumvent the law. *Id.* Here, Defendant has met the "low bar" of showing that disclosure of monetary payment information would create the risk of circumvention of law such that the monetary payment information was properly withheld under Exemption 7(E). See *Mermerlstein*, 2021 WL 3455314, at *15 (citing *Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018) (information reflecting monetary payments for investigative techniques were properly withheld under Exemption 7(E)). Accordingly, the court finds the FBI properly withheld information pursuant to Exemption 7(E).

Dkt. # 71, pp. 79-80. The reasoning of the R & R is sound and should be adopted by the Court. Moreover, the cases cited by Pickering are inapposite. Kansas ex rel. Schmidt v. United States Dep't of Def., 320 F. Supp. 3d 1227, 1246 (D. Kan. 2018) concerned costs for the possible closure of Guantanamo Bay and not monetary payments requested by FBI personnel and/or paid by the FBI in order to implement particular investigative techniques, as we have here. Hidalgo concerned payments to a confidential informant, an issue not present here. Hidalgo, 541 F. Supp. 2d at 253. The Court in Hidalgo also construed FOIA Exemption 7(E) to require agency proof that disclosure of information "significantly" risks circumvention of the law, Hidalgo, 541 F. Supp. 2d at 253[1], whereas Second Circuit law requires only agency proof of a reasonable risk. Knight First Amend, 30 F.4th at 330; see also Blackwell, 646 F.3d at 42 (requiring showing of reasonable risk and construing agency's burden as a "low bar"). Accordingly, the Court should adopt the well-reasoned analysis of the R & R.

---

[1] Hidalgo principally relied on Crooker v. ATF, 670 F.2d 1051, 1074 (D.C.Cir.1981) (en banc) which was overruled by the Supreme Court in Milner v. Dep't of Navy, 562 U.S. 562 (2011).

## POINT III

### THE R & R SHOULD BE ADOPTED WITH RESPECT TO THE FBI'S RELIANCE ON A *GLOMAR* RESPONSE

An agency's decision to neither confirm nor deny the existence of responsive records is "called a 'Glomar response,' taking its name from the Hughes Glomar Explorer, a ship built (we now know) to recover a sunken Soviet submarine, but disguised as a private vessel for mining manganese nodules from the ocean floor."  Bassiouni v. CIA, 392 F.3d 244, 246 (7th Cir. 2004).  A Glomar response is appropriate where, as here, confirming or denying whether responsive records exist would itself cause harm implicated by the FOIA's exemptions.  Wilner v. National Sec. Agency, 592 F.3d 60 (2d Cir. 2009) (endorsing validity of a Glomar response); Bassiouni, 392 F.3d at 246 ("Every appellate court to address the issue has held that the FOIA permits the [agency] to make a 'Glomar response' when it fears that inferences ... or selective disclosure could reveal classified sources or methods of obtaining foreign intelligence."); Minier, 88 F.3d at 800 ("[A] government agency may issue a 'Glomar Response,' that is, refuse to confirm or deny the existence of certain records, if the FOIA exemption would itself preclude the acknowledgment of such documents."); Gardels v. CIA, 689 F.2d 1100, 1103 (D.C. Cir. 1982) ("[A]n agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception.").

Pickering claims that the FBI waived its right to assert a Glomar response because it was not asserted in its answer or the initial 2018 summary judgment motion, and because Pickering alleges that Government counsel stated that there were tens of thousands of documents pertaining to Pickering.  Dkt. # 75, pp. 4-5.

On this point, the R & R rejected Pickering's position:

> Plaintiff's waiver argument based on Defendant's failure to assert a Glomar response in either the answer or in connection with the initial FBI Motion overlooks the fact that the bulk of the 14,007 pages listed in the FBI's Vaughn Index were not included in the FBI's Initial Vaughn Index which lists only 1155 responsive Bates-stamped pages. The court thus presumes that prior to the FBI's reprocessing of approximately 13,000 additional pages, there was no basis for the FBI to assert any Glomar response and thus the agency did not waive such response by failing to earlier assert the response.
>
> Insofar as Kuzma avers that AUSA Cerrone, at a September 11, 2014 scheduling conference before the undersigned, asserted on the record that "there are tens of thousands of FBI documents concerning Mr. Pickering," Kuzma Affidavit ¶ 9, thereby waiving any Glomar response by admitting additional documents exist, Plaintiff's Supplemental Memorandum at 2, Mr. Kuzma's conclusory and self-serving averment is unsupported. Plaintiff does not reference, nor does the court's research reveal, any case law recognizing that the statement Plaintiff maintains Cerrone made at the September 11, 2014 scheduling conference was anything more than an off-the-cuff remark which does not even arise to an inadvertent disclosure sufficient assuming such would be enough to waive the right to assert a Glomar response. Accordingly, there is no merit to this argument.

Dkt. # 71, pp. 83-84.

First, Pickering argues that the FBI has waived its ability to assert a Glomar defense because it did not assert a Glomar response with respect to the first tranche of documents that was the subject of the 2018 summary judgment motions. As the R & R correctly states, however, the FBI first asserted a Glomar response with respect to the second group of documents that is the subject of the 2023 summary judgment motion because this was the first time that a Glomar response was appropriate. Moreover, the cases cited by Pickering are inapposite because they were all appellate cases which held that FOIA exemptions cannot be claimed for the first time on appeal. Ryan v. DOJ, 617 F.2d 781, 792 (D.C. Cir. 1980) ("an agency must identify the specific statutory exemptions relied upon, and do so at least by the

time of the district court proceedings."). Since the FBI asserted a <u>Glomar</u> response before the district court, the cases cited by Pickering simply do not apply.

Second, Pickering asserts that the FBI somehow waived its right to assert a <u>Glomar</u> response because undersigned counsel allegedly made an off the cuff remark about the estimated number of responsive documents in this case. Undersigned counsel has no recollection of ever making such a statement and Pickering offers no proof that it was made. Moreover, even if counsel made a generalized remark about the potential number of records to be processed in response to a FOIA request, such a remark is clearly insufficient to waive a <u>Glomar</u> response. A waiver can only occur if "the existence or nonexistence of the specific records sought by the FOIA request has been the subject of an official public acknowledgment, i.e., ***the government has admitted that a specific record exists***, then the government agency is precluded from later making a *Glomar* response regarding whether that same record exists or not." <u>Buckley v. U.S. Dep't of Just.</u>, No. 19-CV-319F, 2021 WL 5371463, at \*16 (W.D.N.Y. Nov. 18, 2021) (emphasis added; citations omitted). The alleged statement that Pickering cites did not refer to any "specific record" but rather a generic estimate of the number of records that may need to be processed. Under these facts, the R & R should be adopted and Pickering's waiver argument rejected.

## POINT IV

### IT IS PREMATURE TO LITIGATE ATTORNEY'S FEES

It is well-settled that a request for attorney's fees made before a judgment on the merits is premature. <u>See, e.g.</u>, <u>Batton v. Evers</u>, 598 F.3d 169, 184 (5th Cir. 2010) (determining that "issue of plaintiff's entitlement to fees and costs is not yet ripe for review"); <u>Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.</u>, 760 F. Supp. 2d 4, 9 n. 5 (D.D.C. 2011) (resolution of

entitlement to attorney's fees is "premature" at summary judgment stage); Beltranena v. Clinton, 770 F. Supp. 2d 175, 187 (D.D.C. 2011) (finding request for fees "premature" where plaintiff has "not articulated any need for an interim award of fees"); Coven v. OPM, No. 07-1831, 2009 WL 3174423, at *20 (D. Ariz. Sept. 29, 2009) (deciding that motion for costs premature when final judgment not yet entered); Hussain v. DHS, 674 F. Supp. 2d 260, 272-73 (D.D.C. 2009) (concluding motion for fees premature where final judgment not yet entered and plaintiff gave no reason for need of interim award); Potomac Navigation, Inc. v. U.S. Maritime Administration, No. 09-217, 2009 WL 5030710 (D. Md. Dec. 15, 2009) (determining motion for attorney fees "not ripe").

Accordingly, the Court should adopt the R & R and reject Pickering's request for fees as premature.

## POINT V

## PLAINTIFF IS NOT ELIGIBLE NOR IS HE ENTITLED TO AN AWARD OF ATTORNEY'S FEES

"Evaluating FOIA fee applications is a three-step process." New York Times Co. v. Cent. Intelligence Agency, 251 F. Supp. 3d 710, 713 (S.D.N.Y. 2017). "First, the court determines whether the applicant has shown 'eligibility' for fees by showing that it 'substantially prevailed' in the litigation." New York Times Co., 251 F. Supp. 3d at 713 (quoting Pietrangelo v. U.S. Army, 568 F.3d 341, 343 (2d Cir. 2009) (per curiam). Second, if a FOIA plaintiff has established an eligibility for attorney's fees by having "substantially prevailed" within the meaning of the FOIA, the court must then determine whether the plaintiff is "entitled" to fees by weighing the following four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for

withholding requested information." Pietrangelo, 568 F.3d at 343.  The third step, the amount of fees that a plaintiff may be entitled to, New York Times Co., 251 F. Supp. 3d at 713, is not currently in issue until the Court determines whether Plaintiff is eligible and entitled to fees.

**A.      Plaintiff is Not Eligible For Fees Because He Has Not Substantially Prevailed.**

Under the FOIA, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C.A. § 552(a)(4)(E)(i); Warren v. Colvin, 744 F.3d 841, 845 (2d Cir. 2014).  The FOIA statute defines "substantially prevailed" as meaning that the claimant has "obtained relief through either-- (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C.A. § 552(a)(4)(E)(ii).  "Under prong (I), 'plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" Ctr. for Popular Democracy v. Bd. of Governors of Fed. Rsrv. Sys., No. 16CV5829NGGVMS, 2021 WL 4452202, at *4 (E.D.N.Y. Sept. 29, 2021) (quoting Edmonds v. F.B.I., 417 F.3d 1319, 1326 (D.C. Cir. 2005) and Farrar v. Hobby, 506 U.S. 103, 109 (1992)). "Where the benefit sought includes the production of records, a judicial order requiring disclosure can qualify as relief sufficient for a party to substantially prevail under 5 U.S.C. § 552(a)(4)(E)(ii)." Ctr. for Popular Democracy, 2021 WL 4452202, at *4 (citations and internal quotation marks omitted). "Under prong (II), referred to as the 'catalyst theory' of fee eligibility, a plaintiff must show[ ] that the lawsuit was reasonably necessary and the litigation substantially caused the requested records to be released." Ctr. for Popular Democracy, 2021 WL 4452202, at *4

(citations and internal quotation marks omitted). "[T]he mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." Grand Canyon Tr. v. Bernhardt, 947 F.3d 94, 97 (D.C. Cir. 2020) (internal quotation & citation omitted). "[T]he plaintiff has the burden of showing that it is more probable than not that the government would not have performed the desired act absent the lawsuit." Id. (internal quotation & citation omitted). "Courts have determined that the causation requirement is missing when disclosure results not from the suit but from delayed administrative processing." Ctr. for Popular Democracy, 2021 WL 4452202, at *4 (citations and internal quotation marks omitted).

Here, it is undisputed that Pickering has not prevailed in the litigation. The Court has not ruled in Pickering's favor on any issue to date nor has it ordered the release of any records to Pickering. Accordingly, Pickering cannot satisfy prong (I) of § 552(a)(4)(E)(ii).

Plaintiff argues, under prong (II), that the filing of this action was the catalyst for the FBI's release of records. Dkt. # 75, pp. 5-6. However, as stated above, it is well settled that "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." Grand Canyon Tr., 947 F.3d at 97 (citations and internal quotation marks omitted). Moreover, the FBI's processing and partial release of the second tranche of documents had nothing to do with this lawsuit but rather occurred because the FBI "determined FOIA Exemption (b)(7)(A), previously asserted to protect pending investigative files, had lapsed." Dkt. # 61-2, ¶ 5. Accordingly, Pickering has not satisfied his burden of proving that the filing of the lawsuit was the catalyst for the release of records.

**B.      Plaintiff Is Not Eligible For Fees**

If a FOIA plaintiff has established an eligibility for attorney's fees by having "substantially prevailed" within the meaning of the FOIA, the court must then determine whether the plaintiff is "entitled" to fees by weighing the following four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information." Pietrangelo, 568 F.3d at 343; Schwartz v. United States Drug Enforcement Administration, No. 13-CV-5004, 2019 WL 1299192, *2 (E.D.N.Y. March 1, 2019), Report and Recommendation adopted by, No. 13-CV-5004, 2019 WL 1299660 (E.D.N.Y. March 21, 2019).  "No one factor is dispositive, although the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure."  Davy v. C.I.A., 550 F.3d 1155, 1159 (D.C. Cir. 2008) "Because this provision also requires that a claim not be 'insubstantial,' fees are prohibited if a defendant can 'satisfy the summary judgment standard by showing that there are no genuine issues of material fact in dispute and that the government was justified as a matter of law in refusing the plaintiff's FOIA request.'" Century Found. v. Devos, No. 18-CV-1128(PAC), 2018 WL 3084065, at *2 (S.D.N.Y. June 22, 2018) (quoting Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 526 (D.C. Cir. 2011)).  "Regarding the first factor, in order to have a public benefit, the agency records at issue must be 'likely to add to the fund of information that citizens use in making vital political choices.'"  Ctr. for Popular Democracy, 2021 WL 4452202, at *6 (quoting Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 218 F. Supp. 3d 27, 44 (D.D.C. 2016) (additional citations and internal quotation marks omitted).  "This requires consideration of both the effect of the litigation for which fees are requested and the public

14

value of the information derived from the case." Ctr. for Popular Democracy, 2021 WL 4452202, at *6. "The second and third factors—the commercial benefit to the plaintiff and the nature of plaintiff's interest—are often considered together. Ctr. for Popular Democracy, 2021 WL 4452202, at *6 (citations omitted). "The second factor considers the commercial benefit to the plaintiff, while the third factor considers the plaintiff's interest in the records." Davy, 550 F.3d at 1160. The third factor — the nature of the plaintiff's interest in the records — militates against awarding fees in cases where the plaintiff had an adequate personal incentive to seek judicial relief. See e.g., Maydak v. DOJ, 579 F. Supp. 2d 105, 109 (D.D.C. 2008) (refusing to award litigation costs where plaintiff requested records pertaining to himself). "These factors also favor non-profit organizations ... which 'aim to ferret out and make public worthwhile, previously unknown government information—precisely the activity that FOIA's fees provision seeks to promote.' " Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec., 999 F. Supp. 2d 61, 69 (D.D.C. 2013) (quoting Davy, 550 F.3d at 1160). "The fourth factor—the agency's reasonable basis for withholding requested information— 'considers whether the agency's opposition to disclosure had a reasonable basis in law, and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." Ctr. for Popular Democracy, 2021 WL 4452202, at *6 (quoting Davy, 550 F.3d at 1162 (internal quotations & citations omitted)).

Here, in balancing the four factors, Pickering is not entitled to such fees. With regard to the first factor, the public benefit in releasing the records is minimal. The last media article about Pickering occurred, by his own admission, over seven years ago. Dkt. # 38, ¶ 5. There is no indication that the public or media has any further interest in Pickering, this litigation, or the records disclosed by the FBI as a result of Plaintiff's FOIA request. With respect to the

15

second factor, it appears that Pickering has or will attempt to derive commercial benefit from the records released by way of public lectures and a publishing contract.  Dkt. # 38, ¶¶ 6-7. Concerning the third factor, Pickering requested records concerning himself and his desire to obtain said records is purely personal, thus militating against an award of fees.  Maydak, 579 F. Supp. 2d at 109 (refusing to award litigation costs where plaintiff requested records pertaining to himself).  Accordingly, the Court should exercise its discretion and find that Pickering is not entitled to an award of attorney's fees.

## **CONCLUSION**

For the foregoing reasons, Pickering's Objections to the R & R should be rejected.

DATED:  Buffalo, New York, December 12, 2023

TRINI E. ROSS
United States Attorney

BY:   s/MICHAEL S. CERRONE
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5851
michael.cerrone@usdoj.gov