UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LESLIE JAMES PICKERING,                                        REPORT
                                                                              and
                                    Plaintiff,                   RECOMMENDATION
                     v.
                                                                    14-CV-330-RJA-LGF
U.S. DEPARTMENT OF JUSTICE,

                                    Defendant.

_____

APPEARANCES:            HISCOCK & BARCLAY LLP
                                   Attorneys for Plaintiff
                                   JOSEPH M. FINNERTY, of Counsel
                                   1100 M&T Center
                                   Three Fountain Plaza
                                   Buffalo, New York  14203-1486

                                   MICHAEL KUZMA, ESQ.
                                   Attorney for Plaintiff
                                   1893 Clinton Street
                                   Buffalo, New York  14206

                                   TRINI E. ROSS
                                   UNITED STATES ATTORNEY
                                   Attorney for Defendant
                                   MICHAEL S. CERRONE
                                   Assistant United States Attorney, of Counsel
                                   Federal Centre
                                   138 Delaware Avenue
                                   Buffalo, New York  14202


**JURISDICTION**

On May 14, 2024, District Judge Richard J. Arcara remanded this case to the

undersigned for further proceedings consistent with Judge Arcara's May 14, 2024

Decision and Order (Dkt. 82 at 27).  The matter is presently before the court for

consideration of papers filed by Defendant in further support of its previously filed motions for summary judgment (Dkts. 23 and 27).

## BACKGROUND and FACTS[1]

Plaintiff Leslie James Pickering ("Plaintiff" or "Pickering"), and one Nathaniel J. Buckley ("Buckley") are proprietors of Burning Books, a bookstore ("the bookstore") located in Buffalo, New York ("Buffalo"), which offerings include print material pertaining to social justice struggles and asserted incidents of state repression. Plaintiff maintains that because of his involvement in First Amendment protected activities, he has been the target of more than three dozen investigations by the Federal Bureau of Investigation ("FBI"), including a federal eco-terrorism conspiracy investigation based on profiling and false information provided by two informants identified as tenants with mental health histories who resided from April through November 2011, in an apartment located above the bookstore ("conspiracy investigation"). The FBI closed the conspiracy investigation in 2014.

By letter dated August 9, 2013, Plaintiff, pursuant to Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 ("§ 552 __"), requested from the Bureau of Alcohol, Tobacco and Firearms ("ATF") copies of all records pertaining to himself ("ATF FOIA Request"). By letter dated January 16, 2014, Plaintiff, pursuant to FOIA § 552, requested from the FBI copies of all records related to himself. ("FBI FOIA Request"). Although ATF and FBI released to Plaintiff some of the records and information requested in the ATF FOIA

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

Request and the FBI FOIA Request (together, "the FOIA Requests"), other information was withheld either in full or in part based on various asserted FOIA exemptions.

This action, commenced on May 1, 2014, pertains to Plaintiff's attempts to obtain documents pursuant to FOIA relating to the conspiracy investigation which Plaintiff maintains will assist Plaintiff with his books and lectures, and increase the public's awareness of how the FBI handles investigations into political dissidents, including the disclosure and release of agency records pertaining to Plaintiff and withheld by Defendant United States Department of Justice ("DOJ" or "Defendant"), and its components FBI and ATF, responsive to Plaintiff's administrative FOIA Requests.  All the requested information pertains to Plaintiff.  Defendant filed its answer on July 2, 2014 (Dkt. 6).

In the October 16, 2014 Scheduling Order (Dkt. 17), ATF was directed both to release non-exempt documents responsive to Plaintiff's FOIA Requests and to file the relevant *Vaughn* Index[2] for the documents withheld either in full or in part, and the FBI was directed to release non-exempt documents responsive to Plaintiff's FBI FOIA request through rolling production every 120 days with the relevant *Vaughn* Index to be filed with the final rolling production release.  Accordingly, on February 3, 2015, ATF filed a *Vaughn* Index relative to Plaintiff's ATF FOIA request.  (Dkt. 18) ("ATF's *Vaughn* Index").  On December 27, 2017, FBI filed a *Vaughn* Index relative to Plaintiff's FBI FOIA Request (Dkt. 20) ("FBI's Initial *Vaughn* Index").  Each of the *Vaughn* Indices lists

---

[2] The "*Vaughn* Index" refers to an index prepared by the agency upon whom a FOIA request is made setting forth all materials otherwise responsive to the FOIA request but which the agency withholds as exempt from disclosure under FOIA as well as the exemptions asserted as justifying the withholdings. *See Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C.Cir. 1973) (requiring government agency, in responding to a FOIA request, prepare a list of documents withheld as exempt, either in full or in part, and furnish detailed justification for the asserted exemptions), *cert. denied*, 415 U.S. 977 (1974).

the documents and page numbers of information located by each agency responsive to Plaintiff's respective FOIA Request, as well as the specific FOIA Exemption asserted for withholding information either in full or in part.

On April 28, 2018, DOJ filed a motion for summary judgment on behalf of ATF (Dkt. 23) ("ATF's Motion").  DOJ also filed on April 28, 2018, a motion for summary judgment on behalf of the FBI (Dkt. 27) ("FBI's Motion").  On May 31, 2018, Plaintiff moved for summary judgment (Dkt. 33) ("Plaintiff's Motion").  Because the FBI was still processing documents responsive to Plaintiff's FOIA Request, the pending summary judgment motions were held in abeyance until the FBI produced all responsive documents and filed a supplemental *Vaughn* Index listing any further responsive documents that were either released in part ("RIP") or withheld in full ("WIF"), and Defendant filed further dispositive motions regarding the FBI FOIA Request.

Accordingly, on March 17, 2023, Defendant filed a supplemental motion for summary judgment on behalf of the FBI (Dkt. 62) ("FBI's Supplemental Motion"), incorporating the arguments raised in the FBI's Motion, thereby rendering the FBI's Motion moot.  The accompanying FBI's Supplemental *Vaughn* Index ("FBI's Supplemental Vaughn Index"), filed as FBI's Supplemental Exhibit EE (Dkt. 62-2 at 142-647), contains Bates-stamped page numbers ("Bates-numbered"), and lists the documents and Bates-numbered pages of information the FBI located responsive to Plaintiff's FBI FOIA Request, as well as the specific FOIA Exemptions asserted for withholding information either in full or in part.  Defendant also filed on March 17, 2023, a supplemental motion for summary judgment on behalf of ATF (Dkt. 63) ("ATF's Supplemental Motion").  On May 8, 2023, Plaintiff filed a supplemental motion for

summary judgment (Dkt. 67) ("Plaintiff's Supplemental Motion").  On July 21, 2023, Defendant filed with regard to the FBI FOIA Request an updated *Vaughn* Index which includes some information missing from the Supplemental *Vaughn* Index.  (Dkt. 70-1 at 38-548) ("FBI's *Vaughn* Index").[3]

In a report and recommendation filed September 29, 2023 (Dkt. 71) ("R&R"), the undersigned observed that the FBI's Supplemental Motion incorporated the same arguments asserted in the FBI's Motion, thereby rendering the FBI's Motion moot.  R&R at 5.  ATF's Supplemental Motion did not request any further relief, *id*. at 5, and thus was recommended to be dismissed as moot.  *Id*. at 6, 85.  Although initially the FBI withheld information responsive to the FBI FOIA Request pursuant to FOIA Exemption 4, the FBI subsequently reprocessed such information and determined Exemption 4 did not apply, thereby rendering moot the FBI's Motion and Supplemental Motion and Plaintiff's Supplemental Motion with regard to Exemption 4.  R&R at 52-53.  The undersigned recommended Plaintiff's Motion be granted in part and denied in part, Plaintiff's Supplemental Motion be granted in part, denied in part, and dismissed as

---

[3] Although the FBI's *Vaughn* index consists of 509 pages and lists more than 14,000 pages of information responsive to Plaintiff's FBI FOIA Request, broken into 14 tranches that accompanied the FBI's interim releases of documents responsive to Plaintiff's FBI FOIA Request, there is no synopsis of the specific Bates-numbered pages that were withheld from disclosure, either in full or in part, for the various reasons asserted by the FBI.  Moreover, many of the 509 pages of the FBI's *Vaughn* Index do not include headings containing the asserted FOIA exemptions, which vary among the tranches.  With most, if not all of the pages containing at least 20 vertical columns, and often many more, and presented in a relatively small font, it is very difficult to ascertain which exemptions were asserted as to each of the withheld Bates-numbered pages.  Nor are the columns tallied at the end of each of the interim released tranches to inform the court as to the total Bates-numbered pages to which the individual exemptions assertedly apply for that tranche.  Accordingly, to determine which exemptions are asserted to the individually Bates-numbered pages, the reader must engage in an unwieldly task that includes locating in the header of the first page of the index pertaining to a tranche the specific exemption at issue, counting to how many columns from the edge of the table that exemption applies, then follow that column through all the index pages in the tranche and locate the check marks on the lines in the column indicating which Bates-numbered page on those lines have been withheld pursuant to the particular exemption.

moot in part, ATF's Motion be granted in part and denied in part, ATF's Supplemental Motion be dismissed as moot, FBI's Motion be dismissed as moot, and FBI's Supplemental Motion be granted in part, denied in part, and dismissed as moot in part. R&R at 85. The undersigned also declined to consider Plaintiff's request for an award of attorney fees at that time because the request was premature prior to resolution of the summary judgment motions. *Id*.

In a Decision and Order filed May 14, 2024 (Dkt. 82) ("D&O"), Judge Arcara adopted the R&R in part, remanding the case to the undersigned for further proceedings consistent with the D&O. In particular, Judge Arcara directed further assessment of ATF's assertion that voices contained on certain audiotapes are not reasonably segregable, D&O at 24-25, ATF's withholding of documents pursuant to FOIA Exemption 7(F) (law enforcement records which disclose techniques and procedures used in law enforcement investigations or prosecutions), *id*. at 27, FBI's withholding of documents pursuant to FOIA Exemption 5 (attorney-client privilege), *id*. at 25, and FBI's withholding of documents pursuant to FOIA Exemption 7(A) (law enforcement records which could interfere with enforcement proceedings). *Id*. at 26. Judge Arcara also allowed Defendant 60 days to provide additional documentation permitting the court to properly assess the asserted reasons the subject information and records were withheld. *Id*. at 24-27. Accordingly, on July 12, 2024, Defendant filed the Supplemental Declaration of Peter J. Chisholm, Information and Privacy Governance Division, Bureau of Alcohol, Tobacco, Firearms and Explosives (Dkt. 83) ("Chisholm Declaration"), in further support of ATF's Moton and ATF's Supplemental Motion, and the Declaration of

Michael G. Seidel (Dkt. 84) ("Seidel Declaration"), in further support of FBI's Motion and FBI's Supplemental Motion.  Oral argument was deemed unnecessary.

Based on the following, ATF's Motion should be GRANTED; FBI's Motion should be DISMISSED as moot; Plaintiff's Motion should be DENIED in part and GRANTED in part; FBI's Supplemental Motion should be GRANTED in part, DENIED in part, and DISMISSED as moot in part; ATF's Supplemental Motion should be DISMISSED as moot, and Plaintiff's Supplemental Motion should be DENIED in part, GRANTED in part, and DISMISSED as moot in part.[4]

## **DISCUSSION**

### 1.     **Summary Judgment**

Fed.R.Civ.P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party, *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011), and summary judgment may not be granted based on a credibility assessment.  *See Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51, 55 (2d Cir. 2017) ("Adverse parties commonly advance conflicting versions of the events throughout a course of litigation.  In such instances on summary judgment, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." (citations,

---

[4] The issues before the undersigned on this remand from Judge Arcara concern matters raised only in ATF's Motion, Plaintiff's Motion, FBI's Supplemental Motion, and Plaintiff's Supplemental Motion. Because Judge Arcara did not address the recommendation that the remaining two motions, including the FBI's Motion and the ATF's Supplemental Motion, be dismissed as moot, they are again recommended to be dismissed as moot for the same reasons as stated in the original R&R.  *See* R&R at 5-6, 53, 85.

quotation marks, and brackets omitted)).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."  *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues

for trial." *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

"An issue of fact is genuine and material if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Cross Commerce Media, Inc. v.

Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) (citing *SCR Joint Venture L.P. v.

Warshawsky*, 559 F.3d 133,137 (2d Cir. 2009)).

## 2.    FOIA Overview

"The Freedom of Information Act adopts as its most basic premise a policy

strongly favoring public disclosure of information in the possession of federal agencies."

*Halpern v. F.B.I.*, 181 F.3d 279, 286 (2d Cir. 1999) (citing cases).  "As noted by the

Supreme Court, under FOIA, 'federal jurisdiction is dependent on a showing that an

agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.''" *Grand Cent.

Partnership, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quoting *United States

Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1980) (quoting *Kissinger v.

Reporters Comm. for Freedom of Press*, 445 U.S. 136, 150 (1980))).  "Only when each

of these criteria is met may a district court 'force an agency to comply with the FOIA's

disclosure requirements.'" *Id*.

"[T]he strong presumption in favor of disclosure places the burden on the agency

to justify the withholding of any requested documents." *United States Dep't of State v.

Ray,* 502 U.S. 164, 173 (1991).  The agency has the initial burden to show it conducted

an adequate search for responsive records. *Carney v. United States Dep't of Justice*,

19 F.3d 807, 812 (2d Cir.), *cert. denied*, 513 U.S. 823 (1994).  A search is considered

adequate if it was reasonably calculated to uncover all relevant documents, yet

reasonableness does not demand perfection, and a reasonable search need not uncover every document extant.  *Grand Cent. Partnership, Inc.,* 166 F.3d at 489.

"The FOIA requires that agency records be made available promptly upon a request that 'reasonably describes such records and ... is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed.'" *Ruotolo v. Dep't of Justice, Tax Division*, 53 F.3d 4, 9 (2d Cir. 1995) (quoting 5 U.S.C. § 552(a)(3)).  FOIA, however, exempts from disclosure nine categories of information. 5 U.S.C. § 552(b)(1) through (9) ("Exemption (b)(__)").  "Accordingly, to prevail on a summary judgment motion in a FOIA case, an agency must demonstrate 'that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements.'" *Ruotolo*, 53 F.3d at 9 (quoting *Nat'l Cable Television Ass'n Inc. v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).  Furthermore, "'to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate.'" *Id*. (quoting *Carney*, 19 F.3d at 812).

"'Affidavits submitted by an agency are accorded a presumption of good faith; accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face.'" *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 36 F. Supp. 3d 384, 398 (S.D.N.Y. 2014) (quoting *Carney,* 19 F.3d at 812 (citation omitted)).  "In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed

10

by the agency should not apply or summary judgment is otherwise inappropriate." *Id.* (citations omitted).

"Summary judgment is the preferred procedural vehicle for resolving FOIA disputes." *Bloomberg, L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 649 F.Supp.2d 262, 271 (S.D.N.Y. 2009).  "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney*, 19 F.3d at 812.  In contrast, "'[s]ummary judgment in favor of [a] FOIA plaintiff is appropriate when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption.'" *Nat. Res. Def. Council, Inc.*, 36 F.Supp.3d at 398 (quoting *NY. Times Co. v. U.S. Dep't of Def.*, 499 F.Supp.2d 501, 509 (S.D.N.Y. 2007)).  In resolving a summary judgment motion in a FOIA action, the district court conducts a *de novo* review of an agency's response to a FOIA request including any government records which the agency claims are exempt from disclosing. *See Lee v. F.D.I.C.*, 923 F.Supp.  451, 453 (S.D.N.Y. 1996) (citing 5 U.S.C. § 552(a)(4)(B); and *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361-62 (1976) (recognizing that FOIA creates a judicially enforceable right to secure information from what may be "unwilling official hands").  Such "*de novo* review requires the court to reweigh the evidence compiled by the agency to determine whether the agency's findings are correct, not just whether they are reasonable." *Id*. at 453-54.  Although FOIA authorizes *in camera* inspection of the documents in question, it is not required. *Id*. (citing 5 U.S.C. § 552(a)(4)(B)).

11

At issue here is whether ATF and FBI properly withheld records based on segregability as well as based on various FOIA exemptions. The court addresses each in turn.

### A.    Segregability

Judge Arcara granted summary judgment in favor of Defendant with regard to ATF and FBI as to information withheld because it is "inextricably intertwined" with the exempt portions of the responsive documents, except for certain audiotapes identified by ATF for which Defendant argued it was not possible to segregate voices of persons whose identity is exempt from disclosure. In connection with Plaintiff's Motion, Plaintiff objected to ATF's withholding of the audiotapes based on an inability to segregate voices of those persons who are protected from disclosure under FOIA. *See* Dkt. 34 at 13.

Under FOIA, any "reasonably segregable" information in a responsive record must be released. *Ramaci v. Federal Bureau of Investigation*, 568 F.Supp.3d 378, 396 (S.D.N.Y. 2021) (citing 5 U.S.C. § 552(b)). "Non-exempt information is not reasonably segregable, however, when it is 'inextricably intertwined' with the exempt information in a record 'such that disclosure would compromise the confidentiality of [exempt] information that is entitled to protection.'" *Id*. (quoting *Hopkins v. U.S. Dep't of Housing and Urban Dev.*, 929 F.2d 81, 85 (2d Cir. 1991) (bracketed material in *Hopkins*)). In analyzing segregability issues, an agency is "entitled to a presumption that it complied with its obligation to disclose reasonably segregable material." *Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 393-94 (S.D.N.Y. 2014). "Moreover, 'disclosure is not required when, after segregation, all that is left is 'a few nuggets of non-intertwined'

12

information.'" *Ramaci*, 568 F.Supp.3d at 396 (quoting *ACLU v. U.S. Dep't of Justice*, 252 F. Supp.3d 217, 227 (S.D.N.Y. 2017) (collecting cases and citing *Doherty v. United States Dep't of Justice*, 775 F.2d 49, 53 (2d Cir. 1985)).

In support of summary judgment, Defendant initially argued that providing Plaintiff with the requested audiotapes would reveal the identity of interviewees by their voices which could not be segregated from the audiotapes and that the identities of such interviewees are subject to FOIA Exemption.[5]  The undersigned recommended denying ATF's motion because Defendant failed to explain why ATF could not segregate the asserted exempt voices either by transferring the audiotapes to another medium that allowed for segregation or by providing a transcript of the audiotapes with the exempted portions redacted, and also speculated that the audiotapes may be in poor condition and the necessary equipment for segregating the recordings may no longer exist.  R&R at 35-36.  In objecting to the R&R, Defendant argued 16 of the 18 audiotapes are missing and the remaining two were in very poor condition and "were inadvertently destroyed" while attempting to transfer the tapes to another usable medium.  Dkt. 74 at 16, n. 1.  Judge Arcara nevertheless determined Plaintiff was entitled to a sworn declaration describing what happened to the tapes.  D&O at 13.  Accordingly, Defendant filed on behalf of ATF the Chisholm Declaration providing the requested explanation.  Dkt. 83.

In his Declaration, Chisholm avers that as Team Lead in the ATF's Information and Privacy Governance Division ("IPGD"), Chisholm is responsible for processing FOIA records requests made to the ATF and, thus, is familiar with the procedures

---

[5] The court notes Defendant did not specify which FOIA Exemption shielded the interviewees' identities from disclosure.

13

followed by IPGD in responding to such requests.  Chisholm Declaration at ¶¶ 1-2.

According to Chisholm, upon receipt of Plaintiff's ATF FOIA Request, ATF determined it

possessed 18 cassette audiotapes containing investigative interviews responsive to

Plaintiff's ATF FOIA Request, Chisholm Declaration ¶ 3, but the audiotapes were

withheld based on segregability grounds because the voices of exempt persons on the

tapes were so intertwined that it was not possible to segregate them.  *Id*. at 4.  In

response to Judge Arcara's D&O, Chisolm reviewed ATF's file and gathered the

audiotapes to attempt to transfer the information to a useable electronic format, but 16

of the 18 audiotapes were missing from the file.  *Id*. ¶¶ 8-9.  Chisolm avers he believes

the audiotapes were lost during one of the IPGD's three moves in location since 2014.

*Id*. ¶ 10.  There are only a limited number of physical files in IPGD which now processes

FOIA requests electronically and the missing audiotapes were not located despite a

thorough search of the remaining physical files.  *Id*. ¶¶ 11-12.  The two remaining

audiotapes are in very poor condition because they are 22 years old, were stored in an

unknown manner in a field office for 10 or more years, were missing their protective

cases, and sustained water damage.  *Id*. ¶¶ 13-16.  Because Chisholm did not process

the original ATF FOIA Request, Chisholm is unable to say whether ATF's IPGD's office

received the audiotapes in poor condition, but the IPGD office did move three times in

ten years and the office did sustain water damage from flooding in one its previous

buildings.  *Id*. ¶¶ 17-18.  Chisholm further explains that although cassette audiotapes

generally last 30 years if properly stored away from heat, humidity, and UV rays, the

audiotapes relevant to the instant action were not maintained in perfect conditions such

that the two remaining audiotapes are very fragile and water damaged.  *Id*. ¶¶ 19-21.

14

Nevertheless Chisholm, in attempting to comply with the R&R, inserted one of the audiotapes into a cassette player, but the audiotape "became twisted within the cassette deck and 'snapped' almost immediately upon playing." *Id*. ¶¶ 22-23.  Chisholm then attempted to record the contents of the second audiotape by using a cassette player containing a USB "flash drive" plug-in which could record the audiotape's contents to a USB flash drive, but the audiotape became wound up in the cassette player. *Id*. ¶¶ 25-28.  Chisholm unwound the tape and tried three more times to record the second audiotape's content onto a flash drive, but each time the audiotape became wound up in the cassette player with no audio from the second audiotape ever transferred to the USB flash drive. *Id*. ¶¶ 29-32.

Because the requested agency is "entitled to a presumption that it complied with its obligation to disclose reasonably segregable material," *Bishop*, 45 F. Supp. 3d at 393-94, the court finds Chisholm's more thorough explanation at to the fate of the audiotapes sufficient to meet ATF's burden of explaining why the audiotapes were never produced to Plaintiff.  Accordingly, with regard to the segregability of the audiotapes, ATF's Motion should be GRANTED; Plaintiff's Motion should be DENIED.

## B.     FOIA Exemptions

The balance of Plaintiff's arguments regarding the DOJ's FOIA Responses are predicated on the so-called "FOIA Exemptions" set forth in 5 U.S.C. § 552(b) as the basis for redacting information from responsive documents or withholding their release altogether and "'whether the agency has sustained its burden of demonstrating that the documents requested are . . . exempt from disclosure [ ] under FOIA.'"  *Pub. Inv'rs Arbitration Bar Ass'n v. SEC*, 771 F.3d 1, 3 (D.C. Cir. 2014) (quoting *ACLU v. Dep't of*

*Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011) (brackets in *Pub. Inv'rs. Arbitration Bar Ass'n*.).

In general, "'[a]n agency may invoke a FOIA exemption if its justification appears logical

or plausible.'" *Osen LLC v. United States Central Command*, 969 F.3d 102, 114 (2d Cir.

2020) (quoting *Am. Civ. Liberties Union v. Dep't of Justice*, 681 F.3d 61, 69 (2d Cir.

2012) ("*ACLU*") (further quotation marks and citation omitted)). "'The agency asserting

the exemption bears the burden of proof, and all doubts as to the applicability of the

exemption must be resolved in favor of disclosure.'" *Id*. (quoting *Wilner v. National Sec.*

*Agency*, 592 F.3d 60, 69 (2d Cir. 2009)). "'The agency may meet its burden by

submitting a detailed affidavit showing that the information logically falls within the

claimed exemptions.'" *Id*. (quoting *Wilner*, 592 F.3d at 68 (further citation omitted)). "In

the national security context, however, we 'must accord *substantial weight* to an

agency's affidavit concerning the details of the classified status of the disputed record.'"

*ACLU*, 681 F.3d at 69 (emphasis in original) (quoting *Wolf*, 473 F.3d at 374 (italics in

*Wolf*)). Further, "[s]ummary judgment is appropriate where the agency affidavits

'describe the justifications for nondisclosure with reasonably specific detail, demonstrate

that the information withheld logically falls within the claimed exemption, and are not

controverted by either contrary evidence in the record nor by evidence of agency bad

faith.'" *Osen, LLC*., 969 F.3d at 114 (quoting *ACLU*, 681 F.3d at 69).

In the instant case, information responsive to Plaintiff's ATF FOIA Request was

withheld pursuant to Exemptions 6, and 7(F), whereas information responsive to

Plaintiff's FBI FOIA Request was withheld pursuant to Exemptions 5 and 7(A). As

relevant to this remand, 5 U.S.C. § 552(b)(5) ("Exemption 5") exempts privileged

information, including "inter-agency or intra-agency memorandum or letters which would

not be available by law to a party other than an agency in litigation with the agency," 5

U.S.C. § 552(b)(6) ("Exemption 6") exempts "personnel and medical files . . . the

disclosure of which would constitute a clearly unwarranted invasion of privacy," 5 U.S.C.

§ 552(b)(7) exempts information compiled for law enforcement purposes is exempt from

disclosure provided the information, as relevant, "could reasonably be expected to

interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A) ("Exemption 7(A)"), or

"could reasonably be expected to endanger the life or physical safety of any individual."

5 U.S.C. § 552(b)(7)(F) ("Exemption 7(F) ").

### 1.     Exemption 5

The FBI withheld pursuant to FOIA Exemption 5 ("Exemption 5") several Bates-

numbered pages based on the attorney-client privilege, in accordance with the

undersigned's recommendation, R&R at 58, that Defendant had failed to establish the

attorney-client privilege shields 22 pages[6] from disclosure, Judge Arcara ordered that

Defendant be granted an additional opportunity to submit additional papers establishing

FOIA Exemption 5 applies to the 22 pages.  D&O at 14-15.  Accordingly, Defendant

---

[6] There are several errors regarding the number of pages withheld by the FBI pursuant to Exemption 5. In the R&R, the undersigned initially refers to 37 pages withheld, for which sufficient explanations were later provided as to nine of the pages, but that Defendant failed to establish the remaining 28 pages were properly withheld pursuant to FOIA Exemption 5.  R&R at 56-58.  In further support of summary judgment, Seidel correctly observes that the R&R overlooked that sufficient explanations were provided as to a total of 14, rather than nine Bates-numbered pages, leaving 23 at issue.  Seidel Declaration ¶ 5 n. 1.  Upon revisiting this issue, only 36, rather than 37, Bates-numbered pages were withheld, including Bates-numbered pages 8454-57, 8485, 8518, 8559, 8565, 8567, 11598, 11635, 11652, 11932, 11943, 11959, 11978, 11996, 12090-91, 12106-07, 12146, 12151, 12155, 12157, 12159, 12161-63, 12165, 12226, 12228, 12323-24, 12397, and 12403.  Deducting the 14 pages for which sufficient explanations were provided, including Bates-numbered pages 8454-57, 8485, 8518, 8559, 8565, 8567, 11932, 11943, 11959, 11978, 11996, there remain 22 pages for which sufficient explanations were not provided, *i.e.*, Bates-numbered pages 11598, 11635, 11652, 12090-91, 12106-07, 12146, 12151, 12155, 12157, 12159, 12161-63, 12165, 12226, 12228, 12323-24, 12397, and 12403.  The difficulty encountered in determining the correct number of Bates-numbered pages withheld is attributed to the challenging nature of the FBI's *Vaughn* index.  *See* Background and Facts, *supra*, at 5 n. 3.

filed the Seidel Declaration to explain why the 22 pages at issue are protected by FOIA Exemption 5.

"FOIA Exemption 5 . . . exempts 'inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency' from the disclosure otherwise required under the Act," *Brennan Ctr. For Justice at New York Univ. School of Law v. U.S. Dep't of Just.*, 697 F.3d 184, 194 (2d Cir. 2012) (quoting 5 U.S.C. § 552b(5)), and encompasses "traditional common-law privileges against disclosure, including the . . . attorney-client privilege[ ]." *Nat'l Council of La Raza v. U.S. DOJ*, 411 F.3d 350, 356 (2d Cir.2005) (citing *Grand Cent. P'ship, Inc.,* 166 F.3d at 481). It is the defendant's burden to prove through "detailed and specific information," the withheld information is within the attorney-client privilege. *Reinhard v. Dep't of Homeland Sec.*, 2019 WL 3037827, at *11–12 (D.D.C. July 11, 2019). To prevail on summary judgment, Defendant must submit supporting documentation substantiating five essential elements including

> (1) the holder of the privilege is, or sought to be, a client; (2) the person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) the privilege has been claimed by the client. Additionally, [(5)] a "fundamental prerequisite to the assertion of the privilege" is "confidentiality both at the time of the communication and maintained since."

*Reinhard v. Dep't of Homeland Sec.*, 2019 WL 3037827, at *11–12 (D.D.C. July 11, 2019) (brackets in *Reinhard*) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153–54 (D.D.C. 2012)).

"The agency bears the burden of showing that the information exchanged was confidential. That is, the agency must show that it supplied information to its lawyers with the expectation of secrecy and was not known by or disclosed to any third party."

18

*Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 811 F. Supp. 2d 713, 736 (S.D.N.Y. 2011) (internal quotation marks and citation omitted)).  "[T]he test is whether the information was 'circulated no further than among those members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication.'"  *Cause of Action Inst. v. U.S. Dep't of Just.*, 330 F. Supp. 3d 336, 351 (D.D.C. 2018) (quoting *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 863 (D.C.Cir.1980)).

In the instant case, Defendant relies on the averments in the Seidel Declaration regarding FOIA Exemption 5's applicability to 20 Bates-numbered pages in the FBI's *Vaughn* Index including Bates-numbered pages 11598, 12090, 12091, 12106, 12107, 12146, 12151, 12155, 12157, 12159, 12161, 12162, 12163, 12165, 12226, 12228, 12323, 12324, 12397, and 12403 ("the subject Bates-numbered pages").[7]  Seidel Declaration ¶ 5.  Seidel avers that as Section Chief of the Record/Information Dissemination Section of the FBI's Information Management Division, he has experience with, as well as oversight and agency counsel responsibility for FBI FOIA and Privacy Act ("FOIPA") litigation cases nationwide, and with the FBI's procedures in responding to FOIA requests.  Seidel Declaration ¶¶ 1-3.  With regard to the 20 pages of documents responsive to Plaintiff's FBI FOIA request, but withheld pursuant to FOIA Exemption 5, Seidel explains that all the relevant pages represent communications between the FBI's Portland Field Office and FBI General Counsel related to the drafting, presentation, and review of a single undercover operation ("the proposed operation") that must be reviewed and approved by the FBI's counsel.  *Id*. ¶¶ 5-6.  According to

---

[7] Defendant provides no argument for the other two Bates-numbered pages, *i.e.*, 11635 and 11652.

Seidel, Bates-numbered page 11598 contains an e-mail between Portland Field Office and FBI counsel regarding the legal considerations affecting the proposed operation. *Id*. ¶ 6.  Bates-numbered pages 12090, 12091, 12323, and 12324 are copies of electronic communications containing the proposed operation written by the FBI's Portland Division and submitted to the United States Attorney seeking legal review and recommendations.  *Id*.  Bates-numbered page 12397 is from a revised version of the proposed operation with recommendations from an attorney in the FBI's Office of the General Counsel regarding essential elements and legal guidance to ensure the proposed operation's compliance with constitutional standards.  *Id*.  Bates-numbered pages 12106, 12107, 12146, 12151, 12155, 12157, 12159, 12161, 12162, 12163, 12165, 12226, 12228, and 12403 contain copies of e-mails and memorialize conversations between FBI counsel and the FBI's Portland Division discussing the development of an undercover terrorism enterprise investigation ("proposed investigation"), including summaries of telephone calls with FBI attorneys and an Assistant United States Attorney, during which the FBI and DOJ attorneys collaborated in drafting portions of the proposed investigation, discussed redrafting of operational language for the proposal's presentation, asked questions regarding logistics, and proposed revisions.  *Id*.  Seidel explains that "the investigations at issue were developed with the intent to gain evidence in support of bringing charges against an individual and in support of subsequent litigation."  *Id*.

With regard to the first and second element for attorney-client privilege relevant to FOIA Exemption 5, Seidel avers the FBI protected confidential communications between FBI and DOJ counsel and their clients, *i.e.*, FBI employees, that reflect the

20

seeking and/or provision of legal advice pertaining to the development of an undercover operation. Seidel Declaration ¶ 7. In satisfaction of the third, fourth and fifth elements of the privilege, Seidel explains the communications on the withheld subject pages were made in confidence, were not shared with nor circulated to individuals outside the attorney-client relationship, and were made for the purpose of securing legal assistance or advice in relation to the government's legal positions. *Id*. Seidel further avers that release of the withheld information would call into question the FBI's commitment to withhold confidential information shared between agency clients and attorneys which could dissuade agency attorneys and their clients from fully sharing such information and interfere with agency attorneys' ability to provide the best possible legal representation to their clients, which in turn could prove advantageous to individuals seeking legal redress against the government and those targeted for prosecution by the government. *Id*. Accordingly, release of information traditionally shielded by the attorney-client privilege would "disrupt the adversarial process of litigation by providing access to information related to the government's potential legal strategies." *Id*.

Defendant thus has established these 20 subject Bates-numbered pages are protected by the attorney-client privilege and thus are exempt from disclosure pursuant to FOIA Exemption 5. Defendant, however, fails to offer any additional argument as to why the remaining two Bates-numbered pages, 11635 and 11652, were properly withheld pursuant to FOIA Exemption 5. Although the FBI's *Vaughn* Index indicates all 22 pages pertain to Case File 100U-PD-47236-EMAIL, the explanations differ from those addressed by Seidel, including that the communications were made on different dates. Further, while some of the document descriptions indicate the documents are e-

mails pertaining to "administrative handling of investigative operations," others are described as "original operational proposal attachments with email dates . . . ." Accordingly, Seidel's averments do not cover Bates-numbered pages 11635 and 11652.

Therefore, as to the two Bates-numbered pages withheld, Bates-numbered pages 11635 and 11652, for which Defendant has not provided any further argument in support of the applicability of Exemption 5, Plaintiff's Motion and Plaintiff's Supplemental Motion should be GRANTED and FBI's Supplemental Motion should be DENIED; as to the 20 Bates-numbered pages for which Defendant has established FOIA Exemption 5 applies, Plaintiff's Motion and Plaintiff's Supplemental Motion should be DENIED and FBI's Supplemental Motion should be GRANTED.

### 2.     FOIA Exemption 7 Threshold

Records or information responsive to both the ATF FOIA Request and the FBI FOIA Request were withheld pursuant to separate categories of harm exempted from disclosure by 5 U.S.C. § 552(b)(7) ("Exemption 7"), two of which remain at issue including records withheld by the FBI pursuant to 5 U.S.C. § 552(b)(7)(A) ("Exemption 7A"), and by the ATF pursuant to 5 U.S.C. § 552(b)(7)(F) ("Exemption 7(F)").  "The threshold requirement for qualifying under Exemption 7 turns on the purpose for which the document sought to be withheld was prepared." *F.B.I. v. Abramson*, 456 U.S. 615, 624 (1982).  In the R&R, the undersigned determined the papers filed by Defendant in support of summary judgment sufficiently established the records withheld by both ATF and FBI pursuant to FOIA Exemption 7 were compiled for law enforcement purposes. R&R at 62.  Nevertheless, the undersigned recommended, and Judge Arcara agreed, that summary judgment could not be granted in favor of Defendant with regard to

22

records withheld by the FBI pursuant to Exemption 7(A), and by ATF pursuant to

Exemption 7(F), and Judge Arcara granted Defendant an opportunity to file a

supplemental declaration explaining why the asserted exemptions applied.  D&O at 18-

19.  Accordingly, the undersigned now considers whether, based on such supplemental

declarations from Seidel and Chisholm, the applicability of Exemptions 7(A) and 7(F)

has been established.

### a.    Exemption 7(A)

Exemption 7(A) pertains to any law enforcement record the disclosure of which

"could reasonably be expected to interfere with enforcement proceedings . . .," 5 U.S.C.

§ 552(b)(7)(A), and is intended to "prevent disclosures which might prematurely reveal

the government's cases in courts, its evidence and strategies, or the nature, scope, and

focus of investigations," *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir.

2000), as well as "to prevent litigants from identifying and intimidating or harassing

witnesses." *Id.* (citation omitted).  "To properly withhold records under 7(A), the

government must first identify either ' 'a concrete prospective law enforcement

proceeding' ' or an enforcement proceeding that is 'pending or reasonably anticipated.'"

*Anand v. U.S. Dep't of Health & Hum. Servs.*, 2023 WL 2646815, at *16 (D.D.C. Mar.

27, 2023) (quoting *Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 386 (D.C.

Cir. 2007) (further quotation omitted)).  "Second, the government must show that

disclosure 'could reasonably be expected perceptibly to interfere" with the enforcement

proceeding.'" *Id*. (quoting *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989)).

> "[U]nder exemption 7(A) the government is not required to make a specific
> factual showing with respect to each withheld document that disclosure would
> actually interfere with a particular enforcement proceeding.  Rather, federal
> courts may make generic determinations that, with respect to particular kinds of

enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings."

*Radar Online LLC v. F.B.I.*, 2023 WL 6122691, at *10 (S.D.N.Y. Sept. 19, 2023) (quoting *Radcliffe v. I.R.S.*, 536 F. Supp. 2d 423, 437 (S.D.N.Y. 2008) (quoting *Barney v. I.R.S.*, 618 F.2d 1268,1273 (8th Cir.1980)), *aff'd*, 328 Fed.Appx. 699 (2d Cir. 2009)). "'Because generic determinations are permitted, the government need not justify its withholdings document-by-document; it may instead do so by category-of-document. The government may not, however, make its justifications file-by-file.'" *Id*. (quoting *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986) ("Congress did not authorize [a] 'blanket exemption' for 'all records relating to an ongoing investigation.'") (quoting *Campbell v. Department of Health and Human Services*, 682 F.2d 256, 259 (D.C. Cir.1982)).

In the instant case, Defendant initially relied in support of summary judgment with regard to Exemption 7(A) on the Second Declaration of Joseph E. Bender, Jr. ("Bender") ("Bender Declaration") (Dkt. 70-1), the Acting Section Chief of the FBI's Record/Information Dissemination Section, Information Management Division.  Bender Declaration ¶ 1.  In the Bender Declaration, Bender averred that the FBI withheld pursuant to Exemption 7(A) information related to ongoing investigations which could be hindered if the withheld, non-public information were revealed.  *Id*. ¶ 23.  Judge Arcara agreed with the undersigned that the supporting affidavits submitted in support of the FBI's motion, although presumed to be made in good faith, failed to identify which of the "14,000 pages in FBI's *Vaughan* [*sic*] Index were withheld based upon Exemption 7(A)" and the declaration submitted by the FBI provided only an "exceedingly vague and amorphous characterization of any prospective law enforcement proceeding" such that

24

it was "impossible for this Court to assess whether application of such presumption is, in fact, warranted here."  D&O at 18.  Rather than order Defendant to provide to Plaintiff the records withheld pursuant to Exemption 7(A), Judge Arcara afforded Defendant additional time to file supplemental papers identifying the Bates-numbered pages for which Exemption 7(A) was asserted and providing further details regarding the applicability of Exemption 7(A) to those pages; Defendant filed the Seidel Declaration in response.

In further support of the applicability of Exemption 7(A), Seidel first clarifies that although the FBI initially withheld 396 documents pursuant to Exemption 7(A), it has since released an additional 153 because further review revealed Exemption 7(A) was inadvertently asserted as to three documents, Seidel Declaration ¶ 9 & n. 2 (listing the three specific Bates-numbered pages), through reprocessing of the withheld records the FBI identified 12 Bates-numbered pages to which Exemption 7(A) no longer applies, *id*. ¶ 10 & n. 3 (listing the 12 specific Bates-numbered pages), and also identified 138 Bates-numbered pages to which Exemption 7(A) no longer applies, but which remain exempt from disclosure because the information that is not protected by Exemption 7(A) is not segregable from other information that is protected from disclosure pursuant to other FOIA Exemptions.  *Id*. ¶ 11 & n. 4 (listing the specific 138 Bates-numbered pages).  Seidel further avers the FBI has identified 243 Bates-numbered pages ("243 pages") for which the FBI continues to assert Exemption 7(A) applies because all 243 pages pertain to open and ongoing FBI investigations.  *Id*. ¶ 12 & n. 5 (listing the specific 243 Bates-numbered pages).

Seidel explains that the FBI confirmed with the relevant case manager that as of June 11, 2024, investigations concerning an indicted fugitive who is at large and is wanted in relation to domestic terrorism crimes remained open ("the open fugitive investigation").[8]  Seidel Declaration ¶ 12.  According to Seidel, because Exemption 7(A) exempts from disclosure information related to ongoing investigations, the FBI protected records pertaining to the open fugitive investigation after determining the release of such records would hinder the successful capture and prosecution of such fugitive.  *Id*. The withheld records thus are of continued investigative value to the FBI because their release would reveal non-public information concerning pending law enforcement proceedings.  *Id*.  Further, releasing the records "could alert criminals to any ongoing investigative efforts, provide criminals with information about the government's investigation/enforcement strategies in ongoing matters, allow them to predict and potentially thwart these strategies, and/or allow them to discover/tamper with witnesses and/or destroy evidence."  *Id*.  Siedel particularly warned that releasing the records about the open fugitive investigation "would enable this individual to change their strategy to continue to escape law enforcement detection and prosecution and, thus interfere with pending enforcement proceedings."  *Id*.

Seidel thus provides the two critical elements missing from the Bender Declaration including the specific documents the FBI withheld pursuant to Exemption 7(A), and a more definitive explanation of the asserted ongoing investigation including that the investigation pertains to an at-large indicted fugitive who is wanted with regard to domestic terrorism.  Having provided the missing information, Defendant has

---

[8] There is no indication in the record whether the "indictment" remains sealed.

26

established the application of Exemption 7(A).  Accordingly, insofar as Plaintiff and the

FBI dispute whether the FBI properly withheld information pursuant to Exemption 7(A),

Plaintiff's Motion and Plaintiff's Supplemental Motion should be DENIED, and FBI's

Supplemental Motion should be GRANTED.

### b.    Exemption 7(F)

Exemption 7(F) protects "any individual" for whom disclosure of information

"could reasonably be expected to endanger [his] life or physical safety."  5  U.S.C. §

552(b)(7)(F).  "The withholding of individuals' identities who are unknown to the

requester are routinely upheld [pursuant to Exemption 7(F)] where there is some

showing of a reasonable concern for safety."  *Trupei v. Huff*, 1998 WL 8986, at *5

(D.D.C. Jan. 7, 1998) (citing cases).  This exemption "has been invoked to protect the

identities of informants, sources, and law enforcement personnel."  *Michael v. U.S.

Dep't of Just.*, 2018 WL 4637358, at *12 (D.D.C. Sept. 27, 2018) (citing cases).

In the instant case, ATF, relying on averments in a declaration by Adam C. Siple

("Siple"), Chief of the ATF's Information and Privacy Governance Division (Dkt. 70-2)

("Siple Declaration"), explains that some records responsive to Plaintiff's ATF FOIA

Request were withheld pursuant to Exemption 7(F)[9] to protect from disclosure the name

and identifying information of an individual mentioned in the ATF's investigation of

Plaintiff that originated out of ATF's Portland, Oregon field office under the Seattle,

Washington Field Division.  Siple Declaration ¶¶ 8-9, 22, 40.  According to Siple,

because the investigation related to Plaintiff "includes a dangerous criminal enterprise

with the propensity for violence, there is a very real potential of jeopardizing this

---

[9] According to the ATF's *Vaughn* Index, 51 pages of documents and the audiotapes were withheld pursuant to FOIA Exemption 7(F).

individual's life and safety." *Id*. ¶ 40.  In the D&O, Judge Arcara agreed with the undersigned's determination that this assertion is conclusory and not supported with sufficient detail to ascertain whether Exemption 7(F) applies, especially whether the disclosure about the individual "'could reasonably be expected to endanger [his or her] life or physical safety,'" but agreed with Defendant's request for an opportunity to file a supplemental declaration or affidavit providing the details necessary to determine whether Exemption 7(F) is applicable.  D&O at 19.  Accordingly, Defendant filed the Chisholm Declaration addressing the deficiencies regarding Exemption 7(F).

In particular, Chisholm explains that the ATF case associated with the search of Plaintiff's name relates to the arson of an SUV dealership in 2001 for which the suspected perpetrators were suspected of having ties to or an association with the Environmental Liberation Front ("ELF"), "a group of autonomous individuals, or covert cells, who, according to ELF's Press Office, use[s] economic sabotage and guerilla warfare to stop the exploitation and destruction of the environment."  Chisholm Declaration ¶ 36.  According to Chisholm, ELF was once regarded by law enforcement as a "domestic terrorist threat," which "employed explosives and arson to further their objectives." *Id*. ¶ 37.  Between 1997 and 2002, Plaintiff was the ELF's Press Office spokesperson and "has written extensively about this experience." *Id*.  Chisholm further avers that ATF withheld records that would reveal the identity of an "individual whose life and physical safety the ATF reasonably believed would be in danger if disclosed due to the terroristic activities of ELF," *id*. ¶ 38, particularly because the individual "served as a confidential informant . . .  for ATF during its investigation of ELF," *id*. ¶ 41, and "was

28

formally enrolled by ATF as a confidential informant," *id*. ¶ 42, "with the understanding that his or her identity would remain confidential." *Id*. ¶ 43.[10]

The withholding pursuant to FOIA Exemption 7(F) of the identity of an individual who has served as a confidential informant has been held to apply to confidential informants with regard to law enforcement investigations. *See*, *e.g.*, *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, 2022 WL 4598537, at * 9 (D.D.C. Sept. 30, 2022) (upholding DOJ's withholding pursuant to Exemption 7(F) the identities of individuals who assisted in the investigation of alleged election interference based on a reasonable expectation of danger to the individuals' lives and physical safety, and citing *Hammouda v. U.S. Dept. of Justice Office of Information Policy*, 920 F.Supp.2d 16, 26-27 (D.D.C. 2013) (finding the FBI properly invoked Exemption 7(F) "to redact identifying information of an individual who provided information to the FBI about alleged criminal activities, which if disclosed could reasonably be expected to endanger his/her life and/or physical safety." (internal quotation marks omitted))).  Similarly, in the instant case, Chisholm has sufficiently explained that the ATF withheld the identify of an individual who acted as a confidential informant with regard to ATF's investigation of a group with ties to domestic terrorism including the use of arson and explosives, and that the disclosure of that individual's

---

[10] Alternatively, Chisholm urges that should the court reject ATF's FOIA Exemption 7(F), the name of the individual should be withheld under FOIA Exemption 7(D), 5 U.S.C. § 552(b)(7)(D), which, as relevant here, exempts from disclosure "records or information compiled for law enforcement purposes . . . that could reasonably be expected to disclose the identify of a confidential source . . . which furnished information on a confidential basis . . . in the course of a criminal investigation . . . ."  Chisholm Declaration ¶ 44.  Because this is a newly asserted argument to which Plaintiff has not had the opportunity to respond, the court does not address it.

identity could reasonably be expected to subject the individual to danger to his or her physical safety or life.

Therefore, with regard to the withholding of information pursuant to Exemption 7(F), Plaintiff's Motion should be DENIED, and ATF's Motion should be GRANTED.

**3.    Attorney Fees**

In connection with his original motion, Plaintiff requested an award of attorney fees and costs incurred in connection with this action.  Plaintiff's Memorandum (Dkt. 34) at 15.  As relevant, FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  The term "substantially prevailed" is defined to mean the plaintiff has "obtained relief through either - - (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)()ii).  Nevertheless, a district court's discussion of attorney fees is premature where summary judgment is not yet resolved.  *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 37 n. 18 (D.C.Cir. 1998).

At present, the instant case is before the undersigned for a report and recommendation which does not resolve the parties' arguments with regard to the responses to Plaintiff's ATF and FBI FOIA Requests.  Accordingly, whether Plaintiff should be awarded attorney fees must await Judge Arcara's decision of the instant Report and Recommendation, and the court does not consider whether Plaintiff is entitled to an award of attorney fees at this time.

**CONCLUSION**

Based on the foregoing, ATF's Motion (Dkt. 23) should be GRANTED; FBI's Motion (Dkt. 27) should be DISMISSED as MOOT; Plaintiff's Motion (Dkt. 33) should be DENIED in part and GRANTED in part; FBI's Supplemental Motion (Dkt. 62) should be GRANTED in part, DENIED in part, and DISMISSED as MOOT in part; ATF's Supplemental Motion (Dkt. 63) should be DISMISSED as MOOT; Plaintiff's Supplemental Motion (Dkt. 67) should DENIED in part, GRANTED in part, and DISMISSED as MOOT in part.[11]  The matter should be referred back to the undersigned for resolution of Plaintiff's request for attorney's fees including permitting the parties to submit legal memoranda and affidavits regarding whether Plaintiff can be considered to have substantially prevailed in this FOIA action.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      December 2, 2024
            Buffalo, New York

---

[11] Plaintiff's Motion and Plaintiff's Supplemental Motion should be granted only as to the two Bates-numbered pages withheld by the FBI pursuant to Exemption 5, and FBI's Supplemental Motion should be DENIED only as to those same two pages.  *See* Discussion, *supra*, at 22.

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72(b).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    December 2, 2024
          Buffalo, New York